# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JAMES FICKEN, trustee,
SUNCOAST FIRST TRUST; and
SUNCOAST FIRST TRUST,

      Plaintiffs,

      vs.

CITY OF DUNEDIN, FLORIDA;
DUNEDIN CODE ENFORCEMENT BOARD;
MICHAEL BOWMAN, in his official capacity as Code
Enforcement Board Chairman; LOWELL SUPLICKI,
in his official capacity as Code Enforcement Board
Vice-Chair; ARLENE GRAHAM, in her official
capacity as a member of the Code Enforcement Board;
KEN CARSON, in his official capacity as a member
of the Code Enforcement Board; WILLIAM
MOTLEY, in his official capacity as a member
of the Code Enforcement Board; DAVE PAULEY,
in his official capacity as a member of the Code
Enforcement Board; and BUNNY DUTTON, in
her official capacity as a member of the Code
Enforcement Board,

      Defendants.

_____/

Case No.: 8:19-cv-01210
State Court Case No.: 19-003181-CI

## PLAINTIFFS' MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES

Andrew H. Ward (NY Bar No. 5364393)**
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: andrew.ward@ij.org

*\*Admitted Pro Hac Vice*

Ari S. Bargil (FL Bar No. 71454)*
INSTITUTE FOR JUSTICE
2 S. Biscayne Boulevard, Suite 3180
Miami, FL 33131
Tel: (305) 721-1600
Fax: (305) 721-1601
Email: abargil@ij.org

*\*Trial Counsel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. iii

I.    INTRODUCTION ...................................................................................... 1

II.   BACKGROUND ......................................................................................... 1

III.    ARGUMENT .............................................................................................. 3

   A.  RFP 5 and Interrogatory 6—Harms of Long Grass ............................ 3

   B.  RFP 3—The City's Own View of Its Code-Enforcement System ..................... 6

   C.  Interrogatory 4—The City Could Have Just Mowed the Lawn .......................... 8

   D.  Interrogatories 8 and 9—What Happened That Summer ..................... 9

   E.  RFP 4 and Interrogatory 1—Other Fines ........................................ 11

   F.  Interrogatory 7—Profit Incentive ................................................... 12

   G.  RFP 6—Code-Inspector Employment Records ............................... 13

IV.   CONCLUSION AND REQUEST FOR ORAL ARGUMENT ....................... 15

# TABLE OF AUTHORITIES

**Cases**

*Cassidy v. Madoff*,
No. 818CV00394BKSDJS, 2020 WL 554529 (N.D.N.Y. Feb. 4, 2020) ..................................9

*Farina v. Metro. Transp. Auth.*,
409 F. Supp. 3d 173 (S.D.N.Y. 2019)......................................................................................9

*Moss v. GEICO Indem. Co.*,
No. 5:10-CV-104-OC-10TBS, 2012 WL 682450 (M.D. Fla. Mar. 2, 2012)..........................13

*United States v. Bajakajian*,
524 U.S. 321 (1998)..............................................................................................4, 6, 8

*United States v. One Parcel Prop. Located at 427 & 429 Hall St.*,
74 F.3d 1165 (11th Cir. 1996) .................................................................................................4

*Timbs v. Indiana*,
139 S. Ct. 682 (2019).................................................................................................12, 13

*Whitney v. Esurance Ins. Co.*,
No. 13-61329-CIV, 2013 WL 12092069 (S.D. Fla. Oct. 18, 2013) .......................................14

*Wright v. Riveland*,
219 F.3d 905 (9th Cir. 2000) ..................................................................................................9

**Rules**

Fed. R. Civ. P. 26(b)(1)............................................................................................................3

Fed. R. Civ. P. 33(a)(2) ...........................................................................................................8

Fed. R. Civ. P. 36(a)(1)(A) ......................................................................................................8

Fed. R. Evid. 401(a).................................................................................................................14

Fed. R. Evid. 801(d)(2) ...........................................................................................................10

**Other Authorities**

Calvin, Giordano & Assocs., Assessment of Dunedin's Code Enforcement Process
(Jan. 10, 2020), https://legistarweb-production.s3.amazonaws.com/uploads/attachment/pdf/
514885/CODE_ENFORCEMENT_PROCESSES_-DUNEDIN_-revision_1-10-2020.pdf .....7, 13

## I.      INTRODUCTION

Jim Ficken filed this lawsuit against the City of Dunedin after it imposed about $30,000 in fines and threatened to foreclose on his home for having long grass. There are two overarching issues: (1) whether the fines and foreclosure are excessive and (2) whether they offend due process, mainly because Jim did not receive sufficient notice of the violations.[1] The parties are now concluding discovery. Unfortunately, the City has refused to provide routine information as basic as how serious it is to have long grass. Much of the City's argument is that, because Jim has not argued that the City can *never* fine people for tall grass, he cannot get discovery about his specific case. But this and the City's other objections are wrong. Jim is now forced to ask the Court to intervene and compel responses to ten outstanding discovery requests.

## II.      BACKGROUND

On July 5, 2018, a City code inspector noticed that the grass at Jim Ficken's house was taller than ten inches. Dunedin Code Enforcement Bd., Sept. 4, 2018 minutes 19 (ECF 34-1, Ex. E). At the time, and for the next few weeks, Jim was out of town in South Carolina; the grass was too long because the man he had hired to mow it had died. Ficken Depo. 132:1–13, 134:4–9, 137:9–17 (ECF 33-1); *see also* Am. Compl. ¶¶ 68–70 (ECF 22). But, Jim alleges, it was not until nearly two months had passed, on August 20, that the City told him that it would be fining him. Am. Compl. ¶¶ 74–78. Jim promptly cut the grass. ECF 34-1 at 19. Nonetheless, the City applied a "repeat offender" provision to fine Jim $500 per day of violation, including for another ten alleged days starting on August 31. *Id.* The total came to $28,500 (plus fees). This was the first

---

[1] The City's Motion to Dismiss on these issues (ECF 24) is pending.

1

time the City had ever fined Jim for anything. Nevertheless, it assessed him the maximum daily penalty allowed by law. *See* 30(b)(6) Depo. 109:5–8 (Ex. A).[2]

Jim sued under the Excessive Fines and Due Process clauses (and their Florida analogues). *See* Am. Compl. ¶¶ 102–52. His discovery requests have been modest—just 17 requests total. But of those 17 requests, the City has refused to provide answers to six of the nine interrogatories. And the City has refused to produce documents for four of the eight requests for production (and two of the document requests are still pending). *See* City's Resp to Pls.' Requests for Produc. (Ex. B); City's Answers Pls.' 1st Interros. (Ex. C). Even though the proportionality of fines is fact-specific, the City asserts that key information about Jim and the code-enforcement system is irrelevant. That information falls into seven categories, each of which Jim discusses in turn below:

A.  Information about the seriousness of having long grass,

B.  The City's audits of its own code-enforcement system,

C.  Information about the City's ability to mow overgrown lawns,

D.  Details of what happened in the summer of 2018,

E.  Information about other code-enforcement fines in the City,

F.  Information about the City's financial motive to impose large fines, and

G.  Employment records for relevant code inspectors.

---

[2] All exhibits cited are attached to the accompanying Declaration of Andrew Ward.

Jim and the City have sent each other letters and emails about the dispute, have conferred in good faith, and cannot agree on the resolution of this motion.[3]

## III.    ARGUMENT

Under Fed. R. Civ. P. 26(b)(1), Jim "may obtain discovery regarding any nonprivileged matter that is relevant to" his claims, so long as that discovery is "proportional to the needs of the case." The City's objections concern relevance, *see* Ex. E, not proportionality (or privilege), so Jim now explains exactly why each of the ten requests is relevant. In Section A, Jim also rebuts the City's specific relevance objection that he cannot receive discovery because he has not challenged the City's entire ability to fine people for having long grass.

### A.  RFP 5 AND INTERROGATORY 6—HARMS OF LONG GRASS

Jim begins with the heart of the case: how bad it is to have long grass. In Request for Production 5, he sought:

> All Documents reflecting any negative effects of overgrown lawns, including possible negative effects on surrounding property values, neighborhood aesthetics, and human health.

> [Answer: Objection. This request is not reasonably calculated to lead to the discovery of admissible evidence. There is no claim or defense in this case challenging the validity of the City's regulation of overgrown grass or the rationale for adopting an ordinance regulating the height of grass.]

Ex. B at 3. Similarly, in Interrogatory 6, he asked the City to

> Identify and explain what, if any, evidence Dunedin has of any negative effects of overgrown lawns, including possible negative effects on surrounding property values, neighborhood aesthetics, and human health.

---

[3] Undersigned counsel certifies this as required by Local Rule 3.01(g). Copies of the correspondence between counsel are attached as Exhibits D, E, and F. Counsel also conferred in person on February 19, 2020.

[Answer: Objection. This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. There is no claim or defense in this case directed toward the validity of the provision of the City's Code of Ordinances governing growth of weeds, grass, or turf.]

Ex. C at 4.

These requests are plainly relevant to the excessiveness claims. Whether fines are excessive turns on whether they are grossly disproportionate to the offense. And although "[t]he relevant factors will necessarily vary from case to case," "the core of proportionality review is a comparison of the severity of the fine *with the seriousness of the underlying offense*." *United States v. One Parcel Prop. Located at 427 & 429 Hall St.*, 74 F.3d 1165, 1172 (11th Cir. 1996) (emphasis added); *see also United States v. Bajakajian*, 524 U.S. 321, 334 (1998) (defining excessiveness through "the gravity of the … offense"). Indeed, the City "recognize[s] that the gravity of a defendant's offense is a crucial part of the analysis under the Eighth Amendment." Ex. E at 2.

That alone should resolve these objections. The harms of overgrown grass directly relate to how serious it is to have overgrown grass for a few weeks. If the City has evidence that overgrown lawns are harmful, or that Jim's lawn was harmful, it can say so, and Jim's offense will tend to be more serious than without that evidence. If the City does not have evidence, Jim should know that so he can prove his offense is less serious.

This is precisely how the analysis worked in *Bajakajian*, the leading Excessive Fines case. *Bajakajian* concluded that it was excessive for the government to keep about $350,000 that someone had failed to declare at the border. 524 U.S. at 324. That was because the crime of not declaring cash "was solely a reporting offense" that caused only "minimal" harm. *Id.* at 337–39. It "affected only one party, the Government, and in a relatively minor way." *Id.* at 339. Similarly,

4

the Court here will eventually do the same analysis for the offense of having long grass. To do

so, it will need to consider the evidence (if there is any) of who is harmed by long grass and how

much they are harmed. So information about that is relevant.

Based on its correspondence, the City does not dispute this line of reasoning. Instead, its

relevance objection (here and elsewhere) seems to be that the fines are authorized by the City

code and Florida statute, and Jim is not challenging everything about the code and statute:

> Moving to request number 5 and interrogatory number 6, the City stands by its
> objection. Your client has not brought a challenge to the validity or
> constitutionality of the City's ordinances regulating overgrown grass. *While I
> recognize that the gravity of a defendant's offense is a crucial part of the analysis
> under the Eighth Amendment*, the "negative effects" of overgrown lawns are a
> matter of legislative judgment set forth in ordinances which have not been
> challenged.

Ex. E at 2 (emphasis added). The City thus accepts that "a crucial part of the analysis" is the

"gravity of the offense." It then refuses to provide information directly relevant to the gravity of

the offense. This is because, the City argues, Jim has not alleged that the City can *never* fine

people for tall grass.[4]

This objection makes no sense. The Excessive Fines Clause would be an empty promise

if it prohibited only fines assessed for violating laws that are unconstitutional. *See, e.g.*, Pls.'

Response to Mot. Dismiss 1st Am. Compl. 11–12 (ECF 29) (explaining that the Excessive Fines

---

[4] In its correspondence, the City tacitly admits that its discovery objections are nothing more than a reflection of its general argument that Jim cannot win on the merits: "[Y]ou are not challenging the constitutionality of Chapter 162, Chapter 22, or the City's code provisions governing the height of grass. I disagree that a constitutional challenge can be sustained under these circumstances." Ex. F at 6. Such an argument is perhaps appropriate in a motion to dismiss— though the City did not even raise it there—or on summary judgment. But this is a discovery dispute. And the City cannot withhold relevant, unprivileged information simply because it believes that it should win.

Clause applies to all fines, not just those already otherwise prohibited by law). Whether or not Jim challenges the entire concept of *any* fine for long grass, *his* fines are still subject to constitutional scrutiny. That, in turn, means he can discover information about the seriousness of the offense. *Bajakajian* itself is a good example. The defendant there did not challenge the federal law requiring travelers to declare whether they possessed more than $10,000 in cash. 524 U.S. at 337 n.11. But even though there was no challenge to the relevant law generally, the Court still considered the seriousness of his offense to determine that a $350,000 fine was excessive. *Id.* at 337–39.

There is simply no support for the notion that the City's own manufactured disagreement with how Jim has framed his case excepts the City from complying with the basic rules of discovery. But the City goes even further. In support of its objection, the City withholds information on the basis that Jim's discovery requests are not even relevant to the claims the City believes Jim *should have* made:

> The requests are not reasonably calculated to lead to the discovery of admissible evidence because they are not probative of whether Chapter 162, Fla. Stat., or Chapter 22, [City Code of Ordinances], are facially constitutional or have been applied constitutionally to Mr. Ficken.

Ex. E at 2. In other words, the City argues that information "crucial" to this Court's analysis of the claims Jim *did* make is nevertheless not discoverable because it is irrelevant to claims he did not. That is not a legitimate basis for an objection.

Put simply, this case is about how serious it is to have long grass. And even the City acknowledges that the harms of long grass are relevant—in fact, "crucial." Discovery on that topic is appropriate.

### B. RFP 3—THE CITY'S OWN VIEW OF ITS CODE-ENFORCEMENT SYSTEM

Jim next seeks the City's own reviews of how its code-enforcement system operates:

6

> All internal audits or similar reviews concerning Dunedin code enforcement or the Dunedin Code Enforcement Board, including the "best practices" review of code enforcement discussed at the August 20, 2019 Dunedin City Commission work session, for the period beginning in July 2007 to present.
>
> [Answer: Objection. This request is not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the request is impermissibly ambiguous in its request for "similar reviews." Further, there is no claim or defense in the case based on whether the City has audited or reviewed its code enforcement policies at a public hearing or otherwise.][5]

Ex. B at 2–3. These reviews are relevant because they address whether the City's fines tended to be too harsh or whether its code enforcement tended to have insufficient process.

This is not a shot in the dark. As it turns out, in January, a consulting firm hired to review the City's code enforcement system published a report it prepared as part of the City's response to this lawsuit.[6] That report referred to City code-enforcement fines as "outrageous," "extremely high," and delivering "aggressive blows." Calvin, Giordano & Assocs., Assessment of Dunedin's Code Enforcement Process 6 (Jan. 10, 2020) ("Assessment"). The same report refers to "concerns with service." *Id.* at 3. These statements are obviously relevant in a case about excessive fines and notice. And if the City has similar reviews, they are similarly relevant.

The City's response is that "the salient viewpoint on these constitutional issues is not that of the City—it is that of the reviewing court," and, similarly, that "the City's viewpoints on the Code Enforcement Board's processes … have no bearing on the issues." Ex. E at 1. But the fact that this Court will ultimately resolve the case does not mean that the City's views are irrelevant.

---

[5] The City did not maintain its vagueness objection after Plaintiffs elaborated. Ex. D at 2; Ex. E at 2.

[6] The report is available at https://legistarweb-production.s3.amazonaws.com/uploads/attachment/pdf/514885/CODE_ENFORCEMENT_PROCESSES_-DUNEDIN_-revision_1-10-2020.pdf

Code-enforcement audits could easily contain not just viewpoints, but facts (for example, that the harms of cosmetic code violations are minimal). And regardless, viewpoints are discoverable. *See* Fed. R. Civ. P. 33(a)(2) (explaining that interrogatories may seek an "opinion or contention that relates to fact or the application of law to fact"); Fed. R. Civ. P. 36(a)(1)(A) (explaining that requests for admission may concern "facts, the application of law to fact, or opinions about either"). This case concerns whether particular code-enforcement fines are outrageous. And there is at least one audit in the City's possession that says some of its code-enforcement fines are "outrageous." Jim should be allowed to see if there are others.

### C. Interrogatory 4—The City Could Have Just Mowed the Lawn

Jim's next request concerns whether the City could have just mowed the lawn and billed him rather than fining him $30,000. Interrogatory 4 asked the City to

> Identify each instance since January 1, 2015, in which Dunedin mowed a property owner's lawn and billed the property owner, and explain the process by which Dunedin typically takes such actions, including how Dunedin decides whether to mow someone's lawn, the typical cost of a mowing, the frequency of mowing at a particular property, etc.

> [Answer: Objection. This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Whether the City has ever mowed a property owner's lawn and billed the owner for same or the decision-making process undertaken in doing so is not at issue in this lawsuit. There is no claim or defense in this case based upon the availability of alternative mechanisms to address or remediate code violations at Plaintiff's property or other properties in the City.]

Ex. C at 3–4.

This allegation is integral to the heart of the excessiveness analysis: the nature and harm of the offense. *See Bajakajian*, 524 U.S. at 337–39. If the City could have easily addressed the problem, but elected not to, that would indicate that tall grass is not a particularly grave offense warranting major fines. And if the City could have simply remedied the violation itself and sent Jim a modest bill for its services, that would further suggest that Jim's offense was indeed minor

8

and caused nowhere near $30,000 of harm.[7] Courts considering excessiveness regularly compare fines to the actual costs of addressing the problem. *See Wright v. Riveland*, 219 F.3d 905, 914, 918 (9th Cir. 2000) (finding deductions from inmate income were excessive as pleaded when they "b[ore] no relationship to the costs of incarceration"); *Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 202–03 (S.D.N.Y. 2019) (finding $1,305 in fines for unpaid tolls were excessive as pleaded when "they b[ore] no connection to the actual cost of collecting unpaid tolls"); *Cassidy v. Madoff*, No. 818CV00394BKSDJS, 2020 WL 554529, at *14 (N.D.N.Y. Feb. 4, 2020) (finding $20,000 fine for not having workers' compensation insurance was excessive as pleaded when the cost of insurance premiums was $767). The Court here should do the same. For that to happen, the City needs to turn over evidence.

### D. INTERROGATORIES 8 AND 9—WHAT HAPPENED THAT SUMMER

The City has also refused to turn over evidence about some of the most basic details of what happened the summer it fined Jim. Soon after this lawsuit was filed, the City hired a public relations team and promoted its own counternarrative in the news media. In interrogatories 8 and 9, Jim just asked if that counternarrative was true:

> [Interrogatory 8] In a June 6, 2019 ABC Actions News Report, Dunedin spokesman Ron Sachs identified Plaintiff Jim Ficken as "a chronic scofflaw who ignores code-enforcement notifications." Explain the basis for this statement, including by identifying any specific instances in which Mr. Ficken ignored a code-enforcement notification that he received.
>
> [Answer: Objection. This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. The opinion of Dunedin's spokesman is not relevant to whether Chapter 162, Fla. Stat. or Chapter 22, Code of Ordinances,

---

[7] It also indicates, as discussed below for Interrogatory 7, that the City is prioritizing revenue over compliance. *See* Am. Compl. ¶ 66 ("Upon information and belief, the City did not [mow the lawn itself] because it prioritizes revenue over code compliance.").

City of Dunedin, Florida are constitutional on their face or as they have been applied to Plaintiff.]

[Interrogatory 9] In a May 16, 2019 Tampa Bay Times story, Dunedin City Manager Jennifer Bramley "contend[ed] that a code enforcement official visited Ficken around July 5 to warn him about the hefty fines if he did not comply." Explain the specific basis for this contention, including by listing the date of every interaction between code-enforcement officials and Mr. Ficken from July 5, 2018, to August 21, 2018.

[Answer: Objection. This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. The opinion of Dunedin's spokesman is not relevant to whether Chapter 162, Fla. Stat. or Chapter 22, Code of Ordinances, City of Dunedin, Florida are constitutional on their face or as they have been applied to Plaintiff.]

Ex. C at 4–5.

Answers to these basic questions—Does Jim ignore code-enforcement notifications? Was he told of the violation on the first day?—are discoverable. And the City agrees. *See* Ex. E at 2 ("Regarding interrogatory number 9, I do not disagree that a code enforcement officer's having visited Mr. Ficken on or about July 5, 2019 [sic] is or may be relevant."). The City objects only because the interrogatories refer to what it wrongly calls "hearsay upon hearsay." Statements by the City Manager and by someone whom the City hired to speak on its behalf, however, are party statements, not hearsay. Fed. R. Evid. 801(d)(2).[8]

This objection is the sort of form-over-substance that the Rules are supposed to avoid. There is simply no rule that discovery requests may not refer to the news. And there is no meaningful difference between asking whether the City has a basis to believe that Mr. Ficken ignores code enforcement and asking whether the City's *hired spokesman* has any basis for

---

[8] In any event, information need not be admissible to be discoverable. Fed. R. Civ. P. 26 (b)(1).

saying that Mr. Ficken ignores code enforcement. The City should answer these simple fact

questions accordingly.

E.  **RFP 4 AND INTERROGATORY 1—OTHER FINES**

Jim next seeks information about other code-enforcement fines. Interrogatory 1 asked the

City:

> For all Dunedin-imposed code-enforcement fines greater than $5,000 since
> January 1, 2015, list the recipient of the fine, the violation(s), and the number of
> days the violation(s) continued.
>
> [Objection. This interrogatory is not reasonably calculated to lead to the discovery
> of admissible evidence. Given our exchanges today, the basis for the objection is
> obvious: whether or not others had fines that aggregated to $5,000 or more does
> not bear on the facial or as-applied constitutionality of Ch 162 or Ch 22.]

Ex. C at 3; Ex. F at 2. Similarly, request for production 4 sought:

> Documents sufficient to identify all code violations in Dunedin for overgrown
> grass since January 1, 2015, the durations of the violations, and the fines imposed
> therefor.
>
> [Answer: Objection. This request is not reasonably calculated to lead to the
> discovery of admissible evidence. Specifically, whether the City has cited any
> other property for overgrown grass or the duration and fines attributable to the
> violation is not at issue in this lawsuit. There is no claim or defense in this case
> based upon the City's ability to enact or enforce an ordinance governing
> overgrown grass or to fine an individual property owner for such violation.]

Ex. B at 3.

This information is relevant to the questions of both proportionality and notice. For

example, if the evidence reveals that there were very few fines for tall grass in excess of $5,000,

that would indicate that the City does not think long grass is serious and thus that Jim's treatment

was bizarrely harsh. Or comparing Jim's offense to others that generated similar fines might

show that his offense was fined as much as far more serious ones. And with respect to notice,

discovery about other fines could reveal that the City has a practice of delaying notification to

homeowners, with the result of running up profits. Given their obvious value to this Court's proportionality and notice analyses, these minimally burdensome requests should be answered.

### F. INTERROGATORY 7—PROFIT INCENTIVE

Jim also seeks to discover whether the City is using its code-enforcement system not to achieve code compliance, but to raise revenue. Am. Compl. ¶ 52. Indeed, the City's revenue from fines increased some 38-fold between 2007 and 2018. *Id.* ¶ 64. And code inspector Mike Kepto saw himself as "a financial asset" who sent "a record number of cases" to the Code Enforcement Board. Ex. G at 2–3. In light of this information, Jim sought information about the City's apparent profit incentive in Interrogatory 7:

> For fiscal years 2010 to present, explain what percentage of Dunedin's total fines and fees revenue came from code enforcement and identify the basis for this calculation.
>
> [Answer: Objection. This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. The revenue received by the City from code enforcement is not relevant to whether Chapter 162, Fla. Stat. or Chapter 22, Code of Ordinances, City of Dunedin, Florida are constitutional on their face or as they have been applied to Plaintiff.]

Ex. C at 4.

This information bears on the excessiveness analysis. As the Supreme Court just explained, governments have an incentive to impose unfair fines when they make money off them:

> Even absent a political motive, fines may be employed "in a measure out of accord with the penal goals of retribution and deterrence," for "fines are a source of revenue," while other forms of punishment "cost a State money." *Harmelin* v. *Michigan*, 501 U.S. 957, 979, n. 9 (1991) (opinion of Scalia, J.) ("it makes sense to scrutinize governmental action more closely when the State stands to benefit"). This concern is scarcely hypothetical. See Brief for American Civil Liberties Union et al. as *Amici Curiae* 7 ("Perhaps because they are politically easier to impose than generally applicable taxes, state and local governments nationwide increasingly depend heavily on fines and fees as a source of general revenue.").

*Timbs v. Indiana*, 139 S. Ct. 682, 689 (2019). The City's appetite for fines is thus crucial to deciding whether a $30,000 fine is "out of accord" with the "retribution and deterrence" necessary for an overgrown lawn. A profit incentive would also be relevant to the due process claims because a profit incentive would motivate the City to delay notice to people like Jim and thereby rack up massive code-enforcement fines. The City has thus far insisted that the purpose of its system of fines is to achieve compliance. Ex. A. 189:2–190:4, 203:21–24. But the recent audit of the City's code enforcement practices criticized the City's use of "rolling fines" specifically because it was a heavy-handed method that often failed to achieve compliance (but often succeeded in exacting severe financial harm). Assessment 6.

### G. RFP 6—CODE-INSPECTOR EMPLOYMENT RECORDS

Finally, Jim seeks personnel information about the two code inspectors involved, Tom Colbert, who issued the excessive long-grass citation in 2018 and was responsible for notifying Jim about it, and Mike Kepto, who issued the earlier citation to Jim that became the basis of his "repeat offender" status. Thus Request for Production 6: "The personnel files of code inspectors Thomas Colbert and Mike Kepto." Ex. B at 3.[9] Based on information already gathered, it is evident that those files will reflect how inspectors Colbert and Kepto viewed their respective roles with the City as inspectors and revenue-generators. This information bears directly on whether their interactions with Jim—along with whatever incentives motivated those interactions—were proper. *See, e.g.*, *Moss v. GEICO Indem. Co.*, No. 5:10-CV-104-OC-10TBS, 2012 WL 682450, at *5 (M.D. Fla. Mar. 2, 2012) (allowing discovery of personnel files because

---

[9] [Answer: Objection. This request is not reasonably calculated to lead to the discovery of admissible evidence. The personnel files of individual City employees are not probative of any claim or defense in this case.]

13

an employee's "competence, abilities, [and] shortcomings" are relevant); *Whitney v. Esurance Ins. Co.*, No. 13-61329-CIV, 2013 WL 12092069, at *2 (S.D. Fla. Oct. 18, 2013) (collecting other cases allowing discovery of personnel records).

Indeed, what we already know of Mr. Kepto's file proves these documents are relevant. At least some of it was in the City's initial disclosures,[10] and it says that Mr. Kepto saw himself as "a financial asset to the city by the amount of liens collected." Ex. G at 3. He thought one of his strengths was "set[ting] a record amount of cases sent to Code Enf. Board." *Id.* at 2. His supervisor, however, thought that Mr. Kepto "Need[ed] Improvement" in "Judgment/ Problem Solving," meaning his "ability to think through situations, weigh factors involved, and make sound decisions," and in "Customer Service/Communication," meaning his "ability to interact positively with internal and external customers." *Id.* at 4. That gels with his later firing for inappropriate behavior during a different code enforcement case. Ex. A 32:21–35:19. Under the standard for relevance—whether evidence "has any tendency to make a fact more or less probable," Fed. R. Evid. 401(a)—information like this bears on whether Mr. Kepto was properly enforcing City codes. Part of Jim's Due Process claim is that the City was not adequately communicating notice to him, and Mr. Kepto's file states that he has a problem with "Communication." If information like this exists for Mr. Colbert, that would be equally relevant. So the City should produce the remaining files.

---

[10] With respect to Mr. Kepto, Jim is now requesting only confirmation that the original file was complete or production of the rest of it. Some pages do appear to be missing. *See* Ex. G (jumping from page one of a document to page three).

14

## IV.    CONCLUSION AND REQUEST FOR ORAL ARGUMENT

The Court should compel the City to produce documents responsive to requests 3, 4, 5, and 6 and fully answer interrogatories 1, 4, 6, 7, 8, and 9. The undersigned counsel requests oral argument on the motion, estimated at fifteen minutes per side, to provide further clarification to the Court.

Respectfully submitted this 21st day of February 2020.

By:    /s/ Andrew Ward

Ari S. Bargil (FL Bar No. 71454)*
INSTITUTE FOR JUSTICE
2 S. Biscayne Boulevard, Suite 3180
Miami, FL 33131
Tel: (305) 721-1600
Fax: (305) 721-1601
Email: abargil@ij.org

*Trial Counsel

Andrew H. Ward (NY Bar No. 5364393)**
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: andrew.ward@ij.org

**Admitted Pro Hac Vice

Counsel for Plaintiffs

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of February 2020, a true and correct copy of

*Plaintiffs' Motion to Compel Production of Documents and Interrogatory Responses* was filed

with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic

filing to the following CM/ECF participants:

Jay Daigneault
Randy Mora
TRASK DAIGNEAULT, L.L.P.
1001 S. Ft. Harrison Avenue, Suite 201
Clearwater, FL 33756
Email: jay@cityattorneys.legal
randy@cityattorneys.legal
nanette@cityattorneys.legal

*Counsel for Defendants*

/s/ Andrew H. Ward
INSTITUTE FOR JUSTICE