# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JAMES FICKEN, trustee,
SUNCOAST FIRST TRUST; and
SUNCOAST FIRST TRUST,

      Plaintiffs,

      vs.

CITY OF DUNEDIN, FLORIDA;
DUNEDIN CODE ENFORCEMENT BOARD;
MICHAEL BOWMAN, in his official capacity as Code
Enforcement Board Chairman; LOWELL SUPLICKI,
in his official capacity as Code Enforcement Board
Vice-Chair; ARLENE GRAHAM, in her official
capacity as a member of the Code Enforcement Board;
KEN CARSON, in his official capacity as a member
of the Code Enforcement Board; WILLIAM
MOTLEY, in his official capacity as a member
of the Code Enforcement Board; DAVE PAULEY,
in his official capacity as a member of the Code
Enforcement Board; and BUNNY DUTTON, in
her official capacity as a member of the Code
Enforcement Board,

      Defendants.

_____/

Case No.: 8:19-cv-01210
State Court Case No.: 19-003181-CI

## DECLARATION OF ANDREW H. WARD
## IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES

Andrew H. Ward (NY Bar No. 5364393)**
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: andrew.ward@ij.org

**Admitted Pro Hac Vice

Ari S. Bargil (FL Bar No. 71454)*
INSTITUTE FOR JUSTICE
2 S. Biscayne Boulevard, Suite 3180
Miami, FL 33131
Tel: (305) 721-1600
Fax: (305) 721-1601
Email: abargil@ij.org

*Trial Counsel

I, Andrew H. Ward, hereby declare as follows:

1.      I am a citizen of the United States, a resident of Washington, D.C., over the age of 18 years old, and fully competent to make this declaration. I knowingly and voluntarily make this declaration based on my personal knowledge. If called as a witness, I could and would testify competently under oath as to the facts set forth below.

2.      I am an attorney at the law firm the Institute for Justice, and I am an attorney representing the Plaintiffs in this case.

3.      Attached as Exhibit A to my declaration is a true and correct copy of transcript excerpts from the January 13, 2020 deposition of the City of Dunedin's 30(b)(6) deponent, Thomas J. Trask.

4.      Attached as Exhibit B to my declaration is a true and correct copy of Defendants' Responses to Plaintiffs' First Set of Requests for Production.

5.      Attached as Exhibit C to my declaration is a true and correct copy of Defendant City of Dunedin's Notice of Serving Verified Answers to Plaintiffs' First Set of Interrogatories.

6.      Attached as Exhibit D to my declaration is a true and correct copy of January 16, 2020 correspondence to counsel for Defendants.

7.      Attached as Exhibit E to my declaration is a true and correct copy of January 23, 2020 correspondence to counsel for Plaintiffs.

8.      Attached as Exhibit F to my declaration is a true and correct copy of email correspondence between counsel for Defendants and counsel for Plaintiffs, which includes further discussion of the correspondence found in Exhibits D and E.

9.      Attached as Exhibit G to my declaration is a true and correct copy of documents excerpted from code inspector Mike Kepto's personnel file, provided to Plaintiffs' in Defendants' Initial Disclosures. Both documents are presented as Plaintiffs received them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of February 2020.


/s/ Andrew H. Ward
INSTITUTE FOR JUSTICE

# EXHIBIT A

*Declaration of Andrew H. Ward*
*in Support of Plaintiffs' Motion to Compel*
*Production of Documents and Interrogatory Responses*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
CASE NO.: 8:19-cv-01210
STATE CT. CASE NO.: 19-003181-CI

- - - - - - - - - - - - -X
JAMES FICKEN, trustee,            :
SUNCOAST FIRST TRUST; and         :
SUNCOAST FIRST TRUST,             :
                                  :
            Plaintiffs,           :
vs.                               :
                                  :
CITY OF DUNEDIN, FLORIDA;         :
DUNEDIN CODE ENFORCEMENT BOARD;   :
MICHAEL BOWMAN, in his official   :
capacity as Code Enforcement      :
Board Chairman; LOWELL SUPLICKI,  :
in his official capacity as Code  :
Enforcement Board Vice-Chair;     :
ARLENE GRAHAM, in her official    :
capacity as a member of the Code  :
Enforcement Board; KEN CARSON, in :
his official capacity as a member :
of the Code Enforcement Board;    :
WILLIAM MOTLEY, in his official   :
capacity as a member of the Code  :
Enforcement Board; DAVE PAULEY,   :
in his official capacity as a     :
member of the Code Enforcement    :
Board; and BUNNY DUTTON, in her   :
official capacity as a member of  :
the Code Enforcement Board,       :
                                  :
            Defendants.           :
- - - - - - - - - - - - -X

    DEPOSITION OF:    THOMAS J. TRASK, B.C.S.
    DATE:            January 13, 2020
    TIME:            9:00 a.m. to 3:20 p.m.
                     Volume I
                     Pages 1 - 149

```
 1         PLACE:                 1001 S. Fort Harrison Ave.
                                  Suite 201
 2                                Clearwater, Florida

 3

           PURSUANT TO:           Notice by counsel for
 4                                Plaintiff for purposes
                                  of discovery, use at trial
 5                                or such other purposes as
                                  are permitted under the
 6                                Florida Rules of Civil
                                  Procedure
 7

 8         BEFORE:                KATHERINE A. LYLE
                                  Notary Public, State of
 9                                Florida at Large

10

11                      * * * * *

12

13    APPEARANCES:

14         ARI S. BARGIL, ESQUIRE
           ANDREW WARD, ESQUIRE
15         Institute For Justice
           2 South Biscayne Boulevard
16         Suite 3180
           Miami, Florida 33131
17         (305) 721-1600
           Abargil@ij.org
18
           Attorneys for Plaintiffs
19

           JAY DAIGNEAULT, ESQUIRE
20         Trask, Daigneault, LLP
           1001 South Fort Harrison Avenue
21         Suite 201
           Clearwater, Florida 33756
22         (727) 733-0494
           Jay@cityattorneys.legal
23
           Attorney for Defendants
24

25                      * * * * *
```

```
 1    BY MR. BARGIL:
 2         Q    What is his title?
 3         A    Director of Planning and Development.
 4    That's the entire department at this point.  There
 5    had been others in the past.  Tom Colbert recently
 6    retired.  Mike Kepto was let go.  There are, I
 7    think, three code enforcement inspector positions at
 8    the City.  Only one is currently filled.
 9         Q    Okay.  Are you actively looking for two
10    additional code enforcement officers to fill those
11    empty slots?
12              MR. DAIGNEAULT:  Objection, outside the
13         scope.
14              THE DEPONENT:  The answer is they are
15         looking.  They did have somebody lined up, but
16         that employee, prospective employee, fell
17         through a couple of days ago.
18    BY MR. BARGIL:
19         Q    Why?
20         A    I don't know.
21         Q    You mentioned Mike Kepto was recently let
22    go.  Well, you didn't say recently.  You said that
23    he was let go.
24         A    Yeah.
25         Q    When was he let go?
```

1       A    I think it was like April of 2018.

2       Q    Okay.  And why was he let go?

3            MR. DAIGNEAULT:  Object to the form.

4       Outside the scope of that notice.

5            If you know, you can answer.

6            THE DEPONENT:  I'm not really sure of the

7       details of it, but it had something to do with

8       something he said to an individual with regard

9       to the Sylvia Earle case.  It's a code

10      enforcement case.

11      BY MR. BARGIL:

12      Q    Who is Sylvia Earle?

13      A    She is a world renowned scientist.  She

14      has been on National Geographic and she's involved

15      with protection of the oceans.  If you ever watch

16      something called, I think it's called, "Oceans

17      Blue," she is one of the people involved in that

18      production.

19      Q    And how did she get involved in matters in

20      Dunedin?

21      A    She owned a piece of property in Dunedin

22      that fell into disrepair, it had to be demolished

23      and then she failed to maintain the property after

24      the home was demolished.  She doesn't live in

25      Florida.  I think she lives in California.  So the

1      City was trying to get her to maintain her property.

2          Q     Did the City fine her?

3          A     Yes, the City did fine Sylvia Earle.

4          Q     Do you know how much?

5          A     No.

6          Q     Was she fined as a repeat violator?

7                MR. DAIGNEAULT:  Object to form.

8                THE DEPONENT:  I don't know the answer to

9      that.

10     BY MR. BARGIL:

11         Q     Do you know whether it was a significant

12     sum?

13               MR. DAIGNEAULT:  Object to form.

14               THE DEPONENT:  I think it was $10,000.

15     BY MR. BARGIL:

16         Q     Was that a settlement amount or was that

17     the amount that she owed originally?

18         A     I think that was the settlement amount.

19         Q     Okay.

20         A     We settled for $10,000.

21         Q     Do you know what she owed originally?

22         A     No.

23         Q     Was this matter of some degree of public

24     interest in town?

25               MR. DAIGNEAULT:  I'm going to object to

```
 1          form.
 2               THE DEPONENT:  She's a very famous person
 3          and she has a lot of supporters.  Yes, I think
 4          that there was some interest in that, that she
 5          should be not treated like everybody else, that
 6          she should be treated differently.
 7     BY MR. BARGIL:
 8          Q    And Mike Kepto commented publicly about
 9     the case?
10          A    No.
11          Q    What did he do, actually?
12               I'll ask you.
13               MR. DAIGNEAULT:  Object to form.
14               THE DEPONENT:  I don't know.  It was some
15          kind of statement that was made to somebody.  I
16          don't know.
17     BY MR. BARGIL:
18          Q    And he was let go?
19          A    Yes.
20          Q    Were you consulted before he was fired?
21          A    I don't think so.
22          Q    Other than the $10,000 settlement, was
23     there anything else that was part of that settlement
24     agreement?
25          A    Yes.
```

1          A    He is a repeat violator because of the

2     fact that he was brought to the code board in 2015,

3     but he's had 15 cases opened and closed since, I

4     think, 2007.

5          Q    Up until this case, the 2018 case, are you

6     aware of whether Mr. Ficken was ever fined by the

7     City of Dunedin for a code enforcement violation?

8          A    I don't think that he was.

9          Q    Okay.  But you mentioned that he had been

10    cited before?

11         A    Right.

12         Q    In fact, you mentioned he had been cited a

13    number of times?

14         A    Fifteen.

15         Q    Okay.

16         A    On this property.

17         Q    Do you know whether Mr. Colbert was aware

18    of that?

19         A    I did not talk to Tom about that in

20    advance of this case being filed.

21         Q    Okay.  But you mentioned before that as

22    part of his due diligence and investigation he would

23    have looked to see whether there were prior code

24    violations; is that right?

25         A    It's in the case history report of the

1    and not necessarily -- well, let me ask you this.

2            Is the goal to get the case resolved or is

3    it to collect every penny owed under the liens?

4            MR. DAIGNEAULT:  Object to form.

5            THE DEPONENT:  It's to get the case

6       resolved.

7    BY MR. BARGIL:

8       Q    And ideally that would mean collecting

9    every penny, right?

10      A    No.  Not necessarily.

11      Q    Okay.

12      A    Ideally it's getting compliance so that I

13   don't get the phone calls or the Code Enforcement

14   Board doesn't get the case or the code enforcement

15   staff doesn't get the phone calls saying that this

16   property needs to be whatever; grass cut, in-op

17   vehicles removed, garbage cans out of the street,

18   roof replaced, pool fixed, whatever it is.  It's to

19   get compliance.

20      Q    I see.

21           So, apart from getting compliance -- I

22   feel like we're past compliance now.  We're at the

23   point where we're talking about collection and

24   making good on a fine.

25      A    Most of the time it is not in

1    compliance.  The majority of the time the compliance

2    is the driver.  If they're not in compliance, the

3    fine is still continuing to accrue and it's the push

4    to get compliance.

5         Q    Okay.  Is there any reference in this

6    letter to bringing the properties into compliance?

7         A    It's already in compliance, so there would

8    not need to be.  There are other demand letters that

9    talk about the need to bring the property into

10   compliance.  There is an additional couple of words

11   or a sentence.

12        Q    So, going back to the earlier testimony

13   where I believe you said that the goal was to get

14   the matter resolved and that doesn't necessarily

15   mean collecting every penny; that's fair to say;

16   that's what you testimony was?

17        A    That's correct.

18        Q    If the goal is to get the matter resolved,

19   is there reason why you only advise of one way to

20   resolve the matter and that is payment in full?

21        A    It's to get the most amount of leverage

22   possible to keep the conversation going.

23        Q    I see.

24             We talked a little bit about the process

25   of calculating the fine, but, to go back over it,

1       A    Actually, it was February 13th.

2       Q    I'm sorry.  That's correct.

3            You mentioned this is a form letter.

4            How do you send this out?

5       A    I send it out by regular and certified

6   mail.

7       Q    What happens if the regular mail is

8   returned and certified mail isn't received?

9       A    We do what we call an accurate search.

10      Q    What is that?

11      A    It is a service that we have to search for

12  addresses.

13      Q    Okay.

14      A    So we look to see if we can find a better

15  address.

16      Q    Okay.

17      A    Sometimes I go back to City staff and I

18  ask for utility billing information to see if they

19  have a better address.

20      Q    Okay.

21      A    The idea is, again, compliance.  We want

22  to have the letter received, so that's why we send

23  it by regular and certified mail to start off with.

24  So it's received.

25      Q    Okay.  Now, going to Page 2 of the letter

1                    CERTIFICATE OF OATH

2

3    STATE OF FLORIDA

4

5    COUNTY OF PINELLAS

6

7        I, the undersigned authority, certify that

8    Thomas J. Trask, B.C.S., personally appeared before

9    me and was duly sworn.

10

11       WITNESS my hand and official seal this 26th day

12   of January, 2020.

13                        /s/ KATHERINE A. LYLE

14                        _____

15                        Katherine A. Lyle

16                        Notary Public - State of Florida

17                        My Commission Expires:  1/20/23

18                        Commission No.:  GG260915

19

20

21

22

23

24

25

```
 1              REPORTER'S CERTIFICATE
 2
 3    STATE OF FLORIDA
 4    COUNTY OF PINELLAS
 5
           I, Katherine A. Lyle, Registered Professional
 6         Reporter, certify that I was authorized to and
           did stenographically report the Deposition of
 7         Thomas J. Trask, B.C.S.; that a review of the
           transcript was requested; and that the
 8         transcript is a true and complete record of my
           stenographic notes.
 9
           I further certify that I am not a relative,
10         employee, attorney, or counsel of any of the
           parties, nor am I a relative or employee of any
11         of the parties' attorney or counsel connected
           with the action, nor am I financially
12         interested in the action.
13
           Dated this 26th day of January, 2020.
14
15                     /s/ KATHERINE A. LYLE

16         _____

                       Katherine A. Lyle
17
18
19
20
21
22
23
24
25
```

# EXHIBIT B

*Declaration of Andrew H. Ward*
*in Support of Plaintiffs' Motion to Compel*
*Production of Documents and Interrogatory Responses*

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JAMES FICKEN, trustee,
SUNCOAST FIRST TRUST; and
SUNCOAST FIRST TRUST,

      Plaintiffs,

                                     Case No.: 8:19-cv-01210

vs.                               State Ct. Case No.:19-003181-CI

CITY OF DUNEDIN, FLORIDA;
DUNEDIN CODE ENFORCEMENT BOARD;
MICHAEL BOWMAN, in his official capacity as Code
Enforcement Board Chairman; LOWELL SUPLICKI,
in his official capacity as Code Enforcement Board
Vice-Chair; ARLENE GRAHAM, in her official
capacity as a member of the Code Enforcement Board;
KEN CARSON, in his official capacity as a member
of the Code Enforcement Board; WILLIAM
MOTLEY, in his official capacity as a member
of the Code Enforcement Board; DAVE PAULEY,
in his official capacity as a member of the Code
Enforcement Board; and BUNNY DUTTON, in
her official capacity as a member of the Code
Enforcement Board,

      Defendants.

_____/

## DEFENDANTS' RESPONSES TO
## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

      Defendants, by and through their undersigned counsel, responds to Plaintiffs' First Set of

Requests for Production and state as follows:

<u>General Objection</u>

Defendants object to the definitions and instructions preceding the request for production on the ground that they impermissibly attempt to expand the scope of Defendants' discovery obligations under the Federal Rules of Civil Procedure. Notwithstanding this objection, Defendants have attempted to respond consistent with the obligations of the Federal Rules of Civil Procedure.

## **REQUESTS**

1. All Documents concerning code enforcement and either Plaintiff Jim Ficken or Plaintiff Suncoast First Trust, including (but not limited to) all Documents containing any of the following search terms:

    A. "Jim" within five words of "Ficken"
    B. "James" within five words of "Ficken"
    C. "1341 Lady Marion"
    D. "Suncoast First"
    E. "18-858"
    F. "15-116"
    G. "tireguys"

    **Answer: The City will produce all responsive documents at a mutually agreeable time as the City's Information Technology Department had not yet completed the requested search at the time of this response.**

2. All policies, procedures, guidelines, handbooks, or similar Documents concerning Dunedin code enforcement or the Dunedin Code Enforcement Board, including such Documents related to administration and enforcement of the Dunedin municipal code, calculation and imposition of penalties and fines, and collection of unpaid fines and penalties, for the period beginning in July 2007 to present.

    **Answer: Produced.**

3. All internal audits or similar reviews concerning Dunedin code enforcement or the Dunedin Code Enforcement Board, including the "best practices" review of code enforcement discussed at the August 20, 2019 Dunedin City Commission work session, for the period beginning in July 2007 to present.

    **Answer: Objection. This request is not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the request is impermissibly ambiguous in its request for "similar reviews." Further, there is no claim or defense in the case based on whether**

**the City has audited or reviewed its code enforcement policies at a public hearing or otherwise.**

4. Documents sufficient to identify all code violations in Dunedin for overgrown grass since January 1, 2015, the durations of the violations, and the fines imposed therefor.

   **Answer: Objection. This request is not reasonably calculated to lead to the discovery of admissible evidence. Specifically, whether the City has cited any other property for overgrown grass or the duration and fines attributable to the violation is not at issue in this lawsuit. There is no claim or defense in this case based upon the City's ability to enact or enforce an ordinance governing overgrown grass or to fine an individual property owner for such violation.**

5. All Documents reflecting any negative effects of overgrown lawns, including possible negative effects on surrounding property values, neighborhood aesthetics, and human health.

   **Answer: Objection. This request is not reasonably calculated to lead to the discovery of admissible evidence. There is no claim or defense in this case challenging the validity of the City's regulation of overgrown grass or the rationale for adopting an ordinance regulating the height of grass.**

6. The personnel files of code inspectors:

   A. Thomas Colbert, and
   B. Mike Kepto.

   **Answer: Objection. This request is not reasonably calculated to lead to the discovery of admissible evidence. The personnel files of individual City employees are not probative of any claim or defense in this case.**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 18, 2019 I emailed the foregoing City's Responses to Plaintiff's First Set of Requests to Produce to Justin M. Pearson, Esq., at jpearson@ij.org, Ari S. Bargil, Esq. at abargil@ij.org, and Andrew H. Ward at andrew.ward@ij.org, attorneys for Plaintiffs.

<u>/s/ Jay Daigneault, Esq.</u>
Jay Daigneault, Esq. - FBN 0025859
Randy Mora, Esq. - FBN 0099895
1001 South Fort Harrison Ave.,
Ste. 201 Clearwater, Florida 33756
(727) 733-0494 – Phone
(727) 733-2991 – Fax
Primary: jay@cityattorneys.legal
Primary: randy@cityattorneys.legal
Secondary: jennifer@cityattorneys.legal
*Attorneys for Defendants*

# EXHIBIT C

*Declaration of Andrew H. Ward*
*in Support of Plaintiffs' Motion to Compel*
*Production of Documents and Interrogatory Responses*

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JAMES FICKEN, trustee,
SUNCOAST FIRST TRUST; and
SUNCOAST FIRST TRUST,

     Plaintiffs,

                                        Case No.: 8:19-cv-01210

vs.                             State Ct. Case No.:19-003181-CI

CITY OF DUNEDIN, FLORIDA;
DUNEDIN CODE ENFORCEMENT BOARD;
MICHAEL BOWMAN, in his official capacity as Code
Enforcement Board Chairman; LOWELL SUPLICKI,
in his official capacity as Code Enforcement Board
Vice-Chair; ARLENE GRAHAM, in her official
capacity as a member of the Code Enforcement Board;
KEN CARSON, in his official capacity as a member
of the Code Enforcement Board; WILLIAM
MOTLEY, in his official capacity as a member
of the Code Enforcement Board; DAVE PAULEY,
in his official capacity as a member of the Code
Enforcement Board; and BUNNY DUTTON, in
her official capacity as a member of the Code
Enforcement Board,

     Defendants.

_____/

**DEFENDANT CITY OF DUNEDIN'S NOTICE OF SERVING**
**VERIFIED ANSWERS TO**
**PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Defendants CITY OF DUNEDIN, DUNEDIN CODE ENFORCEMENT BOARD, MICHAEL

BOWMAN, in his official capacity as Code Enforcement Board Chairman; LOWELL SUPLICKI, in his

official capacity as Code Enforcement Board Vice-Chair; ARLENE GRAHAM, in her official capacity

as a member of the Code Enforcement Board; KEN CARSON, in his official capacity as a member of the

Code Enforcement Board; WILLIAM MOTLEY, in his official capacity as a member of the Code

Enforcement Board; DAVE PAULEY, in his official capacity as a member of the Code Enforcement

Board; and BUNNY DUTTON, in her official capacity as a member of the Code, by and through undersigned counsel, files this Notice of Serving Verified Answers to Plaintiffs' First Set of Interrogatories propounded on Defendants by the Plaintiffs on October 18, 2019.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 18, 2019 I emailed the foregoing Notice of Serving Verified Answers to Plaintiffs' First Set of Interrogatories propounded on Defendants to Justin M. Pearson, Esq., at jpearson@ij.org, Ari S. Bargil, Esq. at abargil@ij.org, and Andrew H. Ward at andrew.ward@ij.org, attorneys for Plaintiffs.

/s/ Jay Daigneault, Esq.
Jay Daigneault, Esq. - FBN 0025859
Randy Mora, Esq. - FBN 0099895
1001 South Fort Harrison Ave.,
Ste. 201 Clearwater, Florida 33756
(727) 733-0494 – Phone
(727) 733-2991 – Fax
Primary: jay@cityattorneys.legal
Primary: randy@cityattorneys.legal
Secondary: jennifer@cityattorneys.legal
*Attorneys for Defendants*

## DEFENDANT'S ANSWERS TO PLAINTIFFS'
## FIRST SET OF INTERROGATORIES

Defendants serve these answers to Plaintiffs' First Set of Interrogatories dated October 18, 2019 and state:

### General Objection

Defendants object to the definitions and instructions preceding the interrogatories on the ground that they impermissibly attempt to expand the scope of Defendants' discovery obligations under the Federal Rules of Civil Procedure. Notwithstanding this objection, Defendants have attempted to answer the interrogatories consistent with the obligations of the Federal Rules of Civil Procedure.

### Answers to Interrogatories

**Interrogatory No. 1: For all Dunedin-imposed code-enforcement fines greater than $5,000 since January 1, 2015, list the recipient of the fine, the violation(s), and the number of days the violation(s) continued.**

Answer: The City of Dunedin has not issued any code enforcement fines in the period specified or otherwise.

**Interrogatory No. 2: Identify and explain all policies, procedures, and practices that the Dunedin Code Enforcement Board uses to determine the fine or penalty for a code violation, including any protocols, scales, or factors considered.**

Answer: In determining the amount of any fine for a code a violation, the Code Enforcement Board considers the factors set forth in § 162.09 (2) (b), Fla. Stat. and § 22-80 (a), Code of Ordinances, City of Dunedin, Florida.

**Interrogatory No. 3: Identify and explain any Dunedin code-enforcement policies or practices concerning "repeat offenders."**

Answer: The Code Enforcement Board adheres to the standards set forth in Part I, Chapter 162, Fla. Stat. and Chapter 22, Code of Ordinances, City of Dunedin, Florida. The Code Enforcement Board's Rules of Procedure prohibit the Board from reducing a fine for a repeat violation.

**Interrogatory No. 4: Identify each instance since January 1, 2015, in which Dunedin mowed a property owner's lawn and billed the property owner, and explain the process by which Dunedin typically takes such actions, including how Dunedin decides whether to mow someone's lawn, the typical cost of a mowing, the frequency of mowing at a particular property, etc.**

Answer: Objection. This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Whether the City has ever mowed a property owner's lawn and billed the owner for same or the decision-making process undertaken in doing so is not at issue in this lawsuit. There is no claim or defense in this case based upon the availability of alternative mechanisms to address or remediate code violations at Plaintiff's property or other properties in the City.

**Interrogatory No. 5: Identify all costs and fees (other than fines) that a property owner may have to pay Dunedin because of a code-enforcement action and to whom those costs and fees are paid. This interrogatory refers (but is not limited) to attorney fees, appearance fees, recording fees, and lien-related fees.**

Answer: Pursuant to § 162.07 (4), Fla. Stat. and §§ 22-75 (f) and 22-79 (f), Code of Ordinances, City of Dunedin, Florida, the cost of repairs may be included along with the fine if a violation order is not complied with by the date stated. Pursuant to § 162.10, Fla. Stat. and § 22-81, Code of Ordinances, City of Dunedin, Florida, in an action to foreclose on a lien or for a money judgment, the prevailing party is entitled to recover all costs, including a reasonable attorney's fee, that it incurs in the action. The City may also collect all costs incurred in recording and satisfying a valid lien. Recording charges are established by the Clerk of the Court and the City charges only what the Clerk of the Court charges to it.

**Interrogatory No. 6: Identify and explain what, if any, evidence Dunedin has of any negative effects of overgrown lawns, including possible negative effects on surrounding property values, neighborhood aesthetics, and human health.**

Answer: Objection. This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. There is no claim or defense in this case directed toward the validity of the provision of the City's Code of Ordinances governing growth of weeds, grass, or turf.

**Interrogatory No. 7: For fiscal years 2010 to present, explain what percentage of Dunedin's total fines and fees revenue came from code enforcement and identify the basis for this calculation.**

Answer: Objection. This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. The revenue received by the City from code enforcement is not relevant to whether Chapter 162, Fla. Stat. or Chapter 22, Code of Ordinances, City of Dunedin, Florida are constitutional on their face or as they have been applied to Plaintiff.

**Interrogatory No. 8: In a June 6, 2019 ABC Actions News Report, Dunedin spokesman Ron Sachs identified Plaintiff Jim Ficken as "a chronic scofflaw who ignores code-enforcement notifications." Explain the basis for this statement, including by identifying any specific instances in which Mr. Ficken ignored a code-enforcement notification that he received.**

Answer: Objection. This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. The opinion of Dunedin's spokesman is not relevant to whether Chapter 162, Fla. Stat. or Chapter 22, Code of Ordinances, City of Dunedin, Florida are constitutional on their face or as they have been applied to Plaintiff.

**Interrogatory No. 9: In a May 16, 2019 Tampa Bay Times story, Dunedin City Manager Jennifer Bramley "contend[ed] that a code enforcement official visited Ficken around July 5 to warn him about the hefty fines if he did not comply." Explain the specific basis for this contention, including by listing the date of every interaction between code-enforcement officials and Mr. Ficken from July 5, 2018, to August 21, 2018.**

Answer: Objection. This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. The opinion of Dunedin's spokesman is not relevant to whether Chapter 162, Fla. Stat. or Chapter 22, Code of Ordinances, City of Dunedin, Florida are constitutional on their face or as they have been applied to Plaintiff.

_Gregory A Rice_
Signature

Signed by: _GREGORY A. RICE_

Title: _DIRECTOR_ [1]

STATE OF FLORIDA

COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me this 14ᵗʰ day of November, 2019, by

_____ [✓] who is personally known to me or [  ] who has produced

_____ as identification and who did (did not) take an oath.

_Wendy Bitten_
Notary Public – Signature

Printed: _Wendy Bitten_

Serial Numbers: _____

My Commission Expires: _____

WENDY BITTER
Notary Public - State of Florida
Commission # GG 093362
My Comm. Expires Apr 11, 2021
Bonded through National Notary Assn.

---

[1] The individual named above answers these interrogatories as a representative of the City and may not have personal knowledge of the information contained in these answers to interrogatories. The information contained in these answers to interrogatories was gathered from several sources. It has not been determined whether the above-named individual is to act or testify on behalf of the City in this case.

# EXHIBIT D

*Declaration of Andrew H. Ward*
*in Support of Plaintiffs' Motion to Compel*
*Production of Documents and Interrogatory Responses*



INSTITUTE FOR JUSTICE
FLORIDA

January 16, 2020

**<u>Via Electronic Mail</u>**
Jay Daigneault, Esq.
Randy Mora, Esq.
TRASK DAIGNEAULT, L.L.P.
1001 S. Ft. Harrison Avenue, Suite 201
Clearwater, FL 33756

Attorneys Daigneault and Mora:

We are writing to respond to your objections to Plaintiffs' interrogatories and requests for production in the *Ficken* case. Because your objections are primarily based on relevance, we hope that this letter—which explains why the requested discovery is relevant to aspects of the challenged fines—begins a good-faith discussion that resolves our disagreements without unnecessary motion practice.

Request for production 3 seeks "internal audits or similar reviews concerning Dunedin code enforcement or the Dunedin Code Enforcement Board." Although you object because "there is no claim or defense … based on whether the City has audited or reviewed its code enforcement practices," discovery about the City's own view of its code-enforcement process is almost certain to lead to relevant evidence about the appropriateness of its code-enforcement fines and the processes it uses to impose those fines. For example, a report about code enforcement could conclude that "the City imposes harsh for fines for minor violations," "the City fails to provide sufficient notice to repeat offenders," or the like. You also object that the term "similar reviews" is vague. We simply mean systematic evaluations of aspects of either the Code Enforcement Department or the Code Enforcement Board. The draft audit that Mr. Trask discussed at the 30(b)(6) deposition is a good example (although it is now our understanding that the report is now final). If you need further clarification, we are of course happy to discuss what we are looking for.

Request for production 4 seeks "Documents sufficient to identify all code violations in Dunedin for overgrown grass since January 1, 2015, the durations of the violations, and the fines imposed therefor." You object because we are not challenging the existence of the tall-grass ordinance. What Dunedin fines people for tall grass, however, could relate to how serious it is to have tall grass. For example, if other fines for tall grass have been smaller, that would tend to suggest that Mr. Ficken's fines were disproportionate. Similarly, the City's treatment of other violators, as compared to the

2 S. Biscayne Boulevard, Suite 3180  Miami, FL  33131  (305) 721-1600  (305) 721-1601 Fax
general@ij.org    www.ij.org/florida

Jay Daigneault, Esq. and Randy Mora, Esq.
January 16, 2020
Page 2

City's treatment of Mr. Ficken, will indicate how serious the City believed Mr. Ficken's violations to be and thus whether the fines imposed were proportional.

Request for production 5 is likely to lead to the discovery of admissible evidence for the same reason: the seriousness of the infraction is relevant to the legitimacy of the penalty. "Documents reflecting any negative effects of overgrown lawns" will tend to show how serious it was for Mr. Ficken to have an overgrown lawn. That's true in his specific case, even if we are not challenging the existence of the tall-grass ordinance. As we noted in our letter of January 2, although we are not challenging the *possibility* of fines for long grass, we are challenging instances of them, which means we can discover information about the need for them. Interrogatory 6, which seeks similar information, is relevant for the same reason.

Interrogatory 4 is similarly proper. Dunedin's ability to mow an overgrown lawn is relevant because it bears on whether the offense is or is not easily remediable, and thus deserving of more or less punishment. So the premise of your objection, that "[t]here is no claim … based upon the availability of alternate mechanisms to address or remediate code violations" is incorrect. Our excessive fines claims is, in part, based on that.

Beyond the grass itself, Mr. Ficken's behavior that summer likewise affects the severity of the offense. That is why we requested, in interrogatory 8, the City's evidence that he purportedly ignored Code Enforcement. Whether Mr. Ficken ignored Code Enforcement that summer is directly relevant to culpability and, thus, to punishment.

Interrogatory 9, about whether "a code enforcement official visited Ficken around July 5," is relevant for the same reason. It goes to Mr. Ficken's knowledge and culpability. It is also relevant to our Due Process claim, part of which is that Mr. Ficken did not receive constitutionally sufficient notice. Again, we are not disputing that the City can ever fine people for long grass, despite your characterization of the case, here and elsewhere, as concerning "whether Chapter 162, Fla. Stat. or Chapter 22, Code of Ordinances, City of Dunedin, Florida are constitutional on their face." We respectfully refer you to the Amended Complaint for a complete description of what we are and are not challenging.

Request for production 6 seeks personnel files of two code inspectors who worked on the violations at issue. Information in those files may bear on the credibility of their testimony about encounters with Mr. Ficken. (Indeed, we know Mr. Kepto was fired for doing his job improperly.) It also may shed light on the City's code enforcement practices more generally.

On the other side of the balance is the City's behavior. That's why we've propounded interrogatory 7, which seeks discovery about whether the City has a financial incentive to pursue large code-enforcement fines. The motivation for the fines bears on their legitimacy. As we wrote in our last letter, a large fine seeking money for restitution may well be legally different from a large fine that seeks to generate revenue. A possible financial incentive to run up fines may also bear on whether the City has been providing sufficient notice.

Jay Daigneault, Esq. and Randy Mora, Esq.
January 16, 2020
Page 3

      Finally, there are two other issues to mention. In interrogatory 1, about "code-enforcement fines greater than $5,000," we are seeking fines over that amount *in the aggregate*. The fines disputed here are examples. We can propound another interrogatory, but we would appreciate if you construed the request as we clarified above. We also remind you that, in your response to our first request for production, you agreed to produce documents responsive to a set of search terms. Please advise when those documents will be available.

      Requests like this are routine in civil-rights litigation, and, again, we'd hate to get bogged down in motion practice. We kindly ask that you advise as to how you intend to respond to the issues raised in this letter on or before January 24.

      Sincerely,

      /s/ Andrew Ward
      Andrew Ward

# EXHIBIT E

*Declaration of Andrew H. Ward*
*in Support of Plaintiffs' Motion to Compel*
*Production of Documents and Interrogatory Responses*



THOMAS J. TRASK, B.C.S.*
JAY DAIGNEAULT
ERICA F. AUGELLO
RANDY D. MORA, B.C.S.*
ROBERT ESCHENFELDER, B.C.S.*
PATRICK E. PEREZ
DAVID E. PLATTE
JEREMY SIMON

* Board Certified by the Florida Bar in
  City, County and Local Government Law

January 23, 2020

**Via E-Mail**
Ari S. Bargil: abargil@ij.org
Andrew H. Ward: Andrew.ward@ij.org

RE:   *James Ficken, et al. v. City of Dunedin, et al.*
       USDC Middle District of Florida, Case No. 8:19-cv-01210
       Your correspondence dated January 16, 2020

Dear Attorneys Bargil & Ward:

I am in receipt of your correspondence dated January 16, 2020 regarding the City's objections to your client's interrogatories and requests for production in the above-referenced case, and thank you for same. I share your desire to engage in a good faith discussion on these issues and resolve them without the Court's intervention.

At the outset, it is important to clarify that the First Amended Complaint contains four counts: the first alleges that the code enforcement fines at issue are unconstitutional under the Eighth Amendment, both facially and as-applied; the second count contains a similar claim under the Florida Constitution; counts three and four assert federal and state procedural due process claims, respectively, and appear to be asserted only on an as-applied basis. It appears to me that we have some disconnect over the scope of discovery that those claims permit, but I am hopeful we can find common ground as I also wish to avoid motion practice.

With that context, and beginning with request for production number 3 as you have clarified it in your correspondence, the City stands by its objection. Assuming for the sake of argument that any responsive documents include the hypothetical statements you postulate, the City's views of its code-enforcement processes are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. As you note, a report may say "the City imposes harsh fines for minor violations." Conversely, a report may say "the City imposes a justly proportional fine for all violations." But the salient viewpoint on these constitutional issues is not that of the City—it is that of the reviewing court. Neither the City's judgment of fines issued by the CEB or your client's judgment is at issue. Whether Chapter 162, Fla. Stat., or Chapter 22, Dunedin Code of Ordinances is facially constitutional as to its processes or fines lies now with the court. As to the as-applied challenges, they are proceeding on a fully developed set of facts—the City's viewpoints on the Code Enforcement Board's processes likewise have no bearing on the issues.

The City also stands by its objection as to request number 4, concerning other code violations for overgrown grass. Like the previous request, other violations for overgrown grass do not bear on the constitutional issues asserted, either facially or as-applied. I also note in this regard that there is no equal protection claim asserted in the First Amended Complaint. So, whether a

higher or lower fine was imposed upon your client for having overgrown as compared to others is not related to any pending claim. Under the Eighth Amendment, proportionality is not analyzed by comparison to fines imposed on others, but to "the gravity of a defendant's offense." If there is case law suggesting otherwise, I would be pleased to review it and reconsider the City's position as that authority compels.

Moving to request number 5 and interrogatory number 6, the City stands by its objection. Your client has not brought a challenge to the validity or constitutionality of the City's ordinances regulating overgrown grass. While I recognize that the gravity of a defendant's offense is a crucial part of the analysis under the Eighth Amendment, the "negative effects" of overgrown lawns are a matter of legislative judgment set forth in ordinances which have not been challenged. Further, federal and state courts have repeatedly opined that judgments about the appropriate punishment for an offense belong to the legislature. The discovery sought fundamentally seeks legislative justification for ordinances not subject to judicial review in this lawsuit. The requests are not reasonably calculated to lead to the discovery of admissible evidence because they are not probative of whether Chapter 162, Fla. Stat., or Chapter 22, DCO, are facially constitutional or have been applied constitutionally to Mr. Ficken.

The City also stands by its objection as to interrogatory number 4. There is no case suggesting that the availability of alternative remedial mechanisms is a part of the constitutional inquiry under either the excessive fine or procedural due process provisions of the respective constitutions. If I am mistaken in this statement, I trust that you will provide such authority at your earliest convenience. Otherwise, the City's position remains that the interrogatory is not reasonably calculated to lead to admissible evidence concerning the facial or as-applied constitutionality of the state statues or the City's code.

Turning to interrogatory number 8, a City spokesperson's statement to the media in June 2019, concerning your client's conduct is not directly relevant to culpability under the claims asserted. His statements, which are hearsay upon hearsay, have virtually no bearing on the court's review of the facial or as-applied challenges. Accordingly, the City stands by its objection.

Regarding interrogatory number 9, I do not disagree that a code enforcement officer's having visited Mr. Ficken on or about July 5, 2019 is or may be relevant. The City's objection lies in the hearsay upon hearsay nature of the information sought, same having been published by a newspaper which obtained the statement from its reporter who obtained the statement from the City Manager who received the information from a code enforcement officer or somebody else. The newspaper and newspaper reporter's characterization of and opinion about this statement is not the City's. Should you desire to rephrase the interrogatory accordingly, I will be pleased to review it. I do note also that you have now taken the deposition of the City's corporate representative, who spoke directly to this matter, and that you have scheduled the deposition of the code enforcement officer who interacted with your client during these events.

As to request for production number 6, the City stands by its objections. I think you would agree that the information does not and cannot bear on the facial challenges at issue. Concerning the as-applied challenges, the facts concerning the violations, the notices issued in relation to them, the hearings held, and the fines imposed are fully crystallized and captured and have been in your possession for many months. Even assuming that your characterization of Mr. Kepto's separation is correct (ie, that he was fired for doing his job improperly), it has no relation to the as-applied challenges before the court.

The City also stands by its objection as to interrogatory number 7 for the reasons stated previously. The City's incentive to pursue or not pursue code enforcement fines is not at issue. I strongly disagree that the "motivation for the fines bears on their legitimacy," but their "legitimacy" is not at issue either—it is the constitutionality of the fine imposed upon Mr. Ficken that is at issue. Whether the City "has been providing sufficient notice" is a matter of fact that has nothing whatsoever with the City's total fines and fees revenue. At issue relative to the procedural due process claims is whether Chapter 162, Fla. Stat., and Chapter 22, DCO, facially provide sufficient notice and a meaningful opportunity to be heard, and whether such protections were afforded to Mr. Ficken in this case. There is no case suggesting that "legitimacy" or "motivation" are part of the legal inquiry, but again I am happy to review any authority you may provide on that point.

Finally, and having construed the request as clarified in your letter, the City's answer to interrogatory number 1 remains the same.

I trust that this correspondence is fully responsive to yours, but please let me know if I have overlooked anything. Attorney Mora will be corresponding with you regarding computer search sought in the first request for production.

Respectfully,

TRASK DAIGNEAULT, LLP.

/s/ Jay Daigneault, Esq.

JD/RDM

# EXHIBIT F

*Declaration of Andrew H. Ward*
*in Support of Plaintiffs' Motion to Compel*
*Production of Documents and Interrogatory Responses*

| | |
|---|---|
| **From:** | Jay Daigneault |
| **To:** | Ari Bargil; Randy Mora |
| **Cc:** | Andrew H. Ward; Rebekah Ramirez; Jennifer Ramos |
| **Subject:** | RE: James Ficken, et al. v. City of Dunedin, et al.; Case No. 8:19-cv-01210 - correspondence attached |
| **Date:** | Thursday, January 23, 2020 5:01:43 PM |
| **Attachments:** | image001.png |
| | image002.png |

In light of your clarification, the City's response is as follows: Objection. This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Given our exchanges today, the basis for the objection is obvious: whether or not others had fines that aggregated to $5,000 or more does not bear on the facial or as-applied constitutionality of Ch 162 or Ch 22.

## Jay Daigneault, Esquire



1001 South Fort Harrison Avenue, Suite 201
Clearwater, Florida 33756

☎  Phone: (727) 733-0494, ext. 106

📠  Fax: (727) 733-2991

✉  Email: jay@cityattorneys.legal

**CONFIDENTIALITY NOTICE**

The information and all attachments contained in this electronic communication are legally privileged and confidential information, subject to the attorney-client privilege and intended only for the use of the intended recipients. If the reader of this message is not an intended recipient, you are hereby notified that any review, use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately of the error by return e-mail and please permanently remove any copies of this message from your system and do not retain any copies, whether in electronic or physical form or otherwise.  Thank you.

Notice:  The publication of our fax number is not to be construed as our consent to receive unsolicited fax advertisements.

**From:** Ari Bargil <abargil@ij.org>
**Sent:** Thursday, January 23, 2020 4:56 PM
**To:** Randy Mora <Randy@cityattorneys.legal>; Jay Daigneault <Jay@cityattorneys.legal>
**Cc:** Andrew H. Ward <andrew.ward@ij.org>; Rebekah Ramirez <rramirez@ij.org>; Jennifer Ramos <Jennifer@cityattorneys.legal>
**Subject:** RE: James Ficken, et al. v. City of Dunedin, et al.; Case No. 8:19-cv-01210 - correspondence attached

Thanks, Randy. We'll be on the lookout for that.

Jay, in response to the construction you're applying, I think the definition we provided for "Dunedin" would have also included the code enforcement board. In any case, would you like to provide a different response, or shall we propound another interrogatory? Thanks.

Ari

**From:** Randy Mora <Randy@cityattorneys.legal>
**Sent:** Thursday, January 23, 2020 4:53 PM
**To:** Jay Daigneault <Jay@cityattorneys.legal>; Ari Bargil <abargil@ij.org>
**Cc:** Andrew H. Ward <andrew.ward@ij.org>; Rebekah Ramirez <rramirez@ij.org>; Jennifer Ramos
<Jennifer@cityattorneys.legal>
**Subject:** RE: James Ficken, et al. v. City of Dunedin, et al.; Case No. 8:19-cv-01210 - correspondence
attached

Ari:

In the last 24 hours, our office sent out a USB drive with a production including audio files,
photographs, code enforcement file notes, hearing records, etc. If you have not yet received the
cover letter and corresponding drive it should be forthcoming.

City staff has performed its search of e-mails and network drives. All documents revealed in that
search have been included in the above-referenced production.

Regards,

Randy Mora

**From:** Jay Daigneault <Jay@cityattorneys.legal>
**Sent:** Thursday, January 23, 2020 4:47 PM
**To:** Ari Bargil <abargil@ij.org>
**Cc:** Randy Mora <Randy@cityattorneys.legal>; Andrew H. Ward <andrew.ward@ij.org>; Rebekah
Ramirez <rramirez@ij.org>; Jennifer Ramos <Jennifer@cityattorneys.legal>
**Subject:** RE: James Ficken, et al. v. City of Dunedin, et al.; Case No. 8:19-cv-01210 - correspondence
attached

Ari:

It's certainly not my intention to disappoint you, but as you know I have an obligation to represent
my client.

As to the second inquiry, and wishing to avoid further haggling over the matter, what you are
missing is that the City does not and has not imposed code enforcement fines in any amount or at
any time. Fines are considered and imposed by the Code Enforcement Board. I hope this clarification
is sufficient.

Finally, I have asked Randy to follow up with you on any outstanding documents. He is copied here
and will do so as soon as possible.

Best,

**Jay Daigneault, Esquire**



1001 South Fort Harrison Avenue, Suite 201
Clearwater, Florida 33756
☎  Phone: (727) 733-0494, ext. 106
📠  Fax: (727) 733-2991
✉  Email: jay@cityattorneys.legal

**CONFIDENTIALITY NOTICE**

The information and all attachments contained in this electronic communication are legally privileged and confidential information, subject to the attorney-client privilege and intended only for the use of the intended recipients. If the reader of this message is not an intended recipient, you are hereby notified that any review, use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately of the error by return e-mail and please permanently remove any copies of this message from your system and do not retain any copies, whether in electronic or physical form or otherwise.  Thank you.
Notice:  The publication of our fax number is not to be construed as our consent to receive unsolicited fax advertisements.

**From:** Ari Bargil <abargil@ij.org>
**Sent:** Thursday, January 23, 2020 4:35 PM
**To:** Jay Daigneault <Jay@cityattorneys.legal>
**Cc:** Randy Mora <Randy@cityattorneys.legal>; Andrew H. Ward <andrew.ward@ij.org>; Rebekah Ramirez <rramirez@ij.org>; Jennifer Ramos <Jennifer@cityattorneys.legal>
**Subject:** RE: James Ficken, et al. v. City of Dunedin, et al.; Case No. 8:19-cv-01210 - correspondence attached

I am in receipt of your letter, Jay. Needless to say, I'm pretty disappointed with some of the positions you've taken here, especially in light of your stated desire to avoid motion practice. Hopefully I prove to be incorrect, but it seems extremely likely that we will be moving to compel responses soon. Before we do that, however, I do need to follow-up on one response in your letter and address one item that I believe you missed.

First, at the conclusion of your letter, you explain that your response to Interrogatory 1 remains the same. Thus, it is now our understanding that your position is that the city "has not issued any code enforcement fines" in an aggregate amount of more than $5,000 since January 2015. Am I missing something here? This case involves a Dunedin-imposed code enforcement fine in an aggregate amount of $30,000. And we are all of course aware that there are other cases involving similar amounts (and more). If there is some sort of construction that you are applying in order to reach this position, I politely ask that you identify it so that we can deal with it now.

Finally, our letter of January 16 concluded with a request for an update regarding documents that were promised over two months ago. I am now renewing our request for that update, or in the

alternative, I ask that you advise whether you now no longer have any intention of producing the documents as promised.

I look forward to your responses.

Ari

**From:** Jennifer Ramos <Jennifer@cityattorneys.legal>
**Sent:** Thursday, January 23, 2020 3:19 PM
**To:** Ari Bargil <abargil@ij.org>; Andrew H. Ward <andrew.ward@ij.org>
**Cc:** Jay Daigneault <Jay@cityattorneys.legal>; Randy Mora <Randy@cityattorneys.legal>
**Subject:** James Ficken, et al. v. City of Dunedin, et al.; Case No. 8:19-cv-01210 - correspondence attached

Good afternoon –

Please see the attached correspondence regarding the above-referenced matter.

Thank you!

Jennifer

**Jennifer M. Ramos**
**Legal Assistant to Jay Daigneault, Esq.**

Harbor Oaks Professional Center
1001 South Fort Harrison Avenue, Suite 201
Clearwater, Florida 33756
Direct: (727) 275-2416
Office: (727) 733-0494, Ext. 114
Fax: (727) 733-2991
Email: jennifer@cityattorneys.legal
**CONFIDENTIALITY NOTICE**
The information and all attachments contained in this electronic communication are legally privileged and confidential information, subject to the attorney-client privilege and intended only for the use of the intended recipients. If the reader of this message is not an intended recipient, you are hereby notified that any review, use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately of the error by return e-mail and please permanently remove any copies of this message from your system and do not retain any copies, whether in electronic or physical form or otherwise.  Thank you.
Notice:  The publication of our fax number is not to be construed as our consent to receive unsolicited fax advertisements.

| | |
|---|---|
| **From:** | Jay Daigneault |
| **To:** | Ari Bargil; Randy Mora |
| **Cc:** | Andrew H. Ward; Rebekah Ramirez; Jennifer Ramos |
| **Subject:** | RE: James Ficken, et al. v. City of Dunedin, et al.; Case No. 8:19-cv-01210 - correspondence attached |
| **Date:** | Friday, January 24, 2020 11:03:54 AM |
| **Attachments:** | image003.png |
| | image002.png |

Ari:

I think I'm understanding you to say that you're challenging the absence of a limiting provision on the amount of fines that may accrue. Assuming that's so, the genesis of the fines remains Chapter 162/Chapter 22—they are the legal authority under which the fines are imposed in the first place. Perhaps this is where we part—you are not challenging the constitutionality of Chapter 162, Chapter 22, or the City's code provisions governing the height of grass. I disagree that a constitutional challenge can be sustained under these circumstances.

**Jay Daigneault, Esquire**



1001 South Fort Harrison Avenue, Suite 201
Clearwater, Florida 33756
☎ Phone: (727) 733-0494, ext. 106
📠 Fax: (727) 733-2991
✉ Email: jay@cityattorneys.legal

**CONFIDENTIALITY NOTICE**
The information and all attachments contained in this electronic communication are legally privileged and confidential information, subject to the attorney-client privilege and intended only for the use of the intended recipients. If the reader of this message is not an intended recipient, you are hereby notified that any review, use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately of the error by return e-mail and please permanently remove any copies of this message from your system and do not retain any copies, whether in electronic or physical form or otherwise.  Thank you.
Notice:  The publication of our fax number is not to be construed as our consent to receive unsolicited fax advertisements.

**From:** Ari Bargil <abargil@ij.org>
**Sent:** Friday, January 24, 2020 10:45 AM
**To:** Jay Daigneault <Jay@cityattorneys.legal>; Randy Mora <Randy@cityattorneys.legal>
**Cc:** Andrew H. Ward <andrew.ward@ij.org>; Rebekah Ramirez <rramirez@ij.org>; Jennifer Ramos <Jennifer@cityattorneys.legal>
**Subject:** RE: James Ficken, et al. v. City of Dunedin, et al.; Case No. 8:19-cv-01210 - correspondence attached

Thanks, Jay. We are indeed arguing that the City's system of boundless fines is unconstitutional on its face and of course as-applied here. It is also correct that we have not challenged the constitutionality of Chapter 162 or Ch 22. I think it is quite possible and entirely appropriate to

challenge one without implicating the others, and I believe that we have done that successfully here. There is no support anywhere for the notion that to get discovery on the legitimacy of a penalty, we must challenge the underlying law or ordinance. Perhaps this alone clarifies things because I believe it is this issue, above all else, that seems to be the basis for many of your objections.

For example, in some instances, you suggest that our discovery requests were improper specifically because we have not challenged Chapter 162 or Chapter 22. *See, e.g.* Resp. Pls.' Interrog. 6. Yet in other instances, you have taken the position that our discovery requests are improper because they are not attuned to those same (still unchallenged) chapters. *See, e.g.* Resp. Pls.' Interrog. 1 (as revised in your email last night) (objecting on the grounds that the request "does not bear on the facial or as-applied constitutionality of Chapter 162 or Chapter 22."). As you point out in other objections, neither Chapter 162 nor Chapter 22 are at issue in this case; so it continues to escape me how an objection can be lodged on the grounds that a request is irrelevant to a claim that has *not* been raised.

I simply do not agree that your decision to unilaterally implicate Chapter 162 and Chapter 22 in response to many of our requests, only to then raise objections based on them, stems from any issues Plaintiffs created by drafting our pleading as we did. Thus I appreciate your willingness to consent to an amendment of our pleading, but I do not believe that it is necessary at this time. In any case, I am unclear how amending as you suggest would resolve many of these issues. *See, e.g.*, Resp. Pls.' Interrog. 6 (in which you "recognize that the gravity of a defendant's offense is a crucial part of the analysis under the Eight Amendment," but then object to a request regarding the gravity of the defendant's offense). And while I do not share your sentiment that our requests involve "matters that are not truly at issue," I do agree that it is unfortunate that we should have to expend resources litigating this. Requests like these are routine in litigation of this nature, and we will illustrate that to the court at the appropriate time.

Ari

---

**From:** Jay Daigneault <Jay@cityattorneys.legal>
**Sent:** Friday, January 24, 2020 9:17 AM
**To:** Ari Bargil <abargil@ij.org>; Randy Mora <Randy@cityattorneys.legal>
**Cc:** Andrew H. Ward <andrew.ward@ij.org>; Rebekah Ramirez <rramirez@ij.org>; Jennifer Ramos <Jennifer@cityattorneys.legal>
**Subject:** RE: James Ficken, et al. v. City of Dunedin, et al.; Case No. 8:19-cv-01210 - correspondence attached

Ari, Andrew:

In considering this matter further, it may be worthwhile to clarify a portion of your January 16 letter relative to the First Amended Complaint as I may have identified the point of disconnect. We have gone back and forth a little concerning what is actually at issue in the lawsuit. In para 110 of the FAC, you've written that "**On its face** and as-applied, the City's system of limitless fines for all non-irreparable code violations, including unlimited fines for tall grass, violates the Excessive Fines Clause of the Eighth Amendment" (emphasis added). A similar allegation appears in para 125.  Of course, in

order to be successful on a facial challenge, a plaintiff must establish that no set of circumstances exist under which the law would be valid. Yet, your letter conveys that "...we are not challenging the *possibility* of fines for long grass, we are challenging instances of them . . ." Further on, you have written that "...we are not disputing that the City can ever fine people for long grass..." As such, you have functionally conceded that Ch 162 and Ch 22 may be constitutionally applied relative to fines, in direct contradiction of the allegations of the FAC. I don't wish for either of us to expend scarce resources litigating matters that are not truly at issue, and the City will consent to an amendment of the operative pleading if that is your desire. I would appreciate your clarification at your earliest convenience.

Jay


**Jay Daigneault, Esquire**



1001 South Fort Harrison Avenue, Suite 201
Clearwater, Florida 33756
☎  Phone: (727) 733-0494, ext. 106
🖷  Fax: (727) 733-2991
✉  Email: jay@cityattorneys.legal

**CONFIDENTIALITY NOTICE**
The information and all attachments contained in this electronic communication are legally privileged and confidential information, subject to the attorney-client privilege and intended only for the use of the intended recipients. If the reader of this message is not an intended recipient, you are hereby notified that any review, use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately of the error by return e-mail and please permanently remove any copies of this message from your system and do not retain any copies, whether in electronic or physical form or otherwise.  Thank you.
Notice:  The publication of our fax number is not to be construed as our consent to receive unsolicited fax advertisements.

**From:** Ari Bargil <abargil@ij.org>
**Sent:** Thursday, January 23, 2020 4:56 PM
**To:** Randy Mora <Randy@cityattorneys.legal>; Jay Daigneault <Jay@cityattorneys.legal>
**Cc:** Andrew H. Ward <andrew.ward@ij.org>; Rebekah Ramirez <rramirez@ij.org>; Jennifer Ramos <Jennifer@cityattorneys.legal>
**Subject:** RE: James Ficken, et al. v. City of Dunedin, et al.; Case No. 8:19-cv-01210 - correspondence attached

Thanks, Randy. We'll be on the lookout for that.

Jay, in response to the construction you're applying, I think the definition we provided for "Dunedin" would have also included the code enforcement board. In any case, would you like to provide a different response, or shall we propound another interrogatory? Thanks.

Ari

---

**From:** Randy Mora <Randy@cityattorneys.legal>
**Sent:** Thursday, January 23, 2020 4:53 PM
**To:** Jay Daigneault <Jay@cityattorneys.legal>; Ari Bargil <abargil@ij.org>
**Cc:** Andrew H. Ward <andrew.ward@ij.org>; Rebekah Ramirez <rramirez@ij.org>; Jennifer Ramos <Jennifer@cityattorneys.legal>
**Subject:** RE: James Ficken, et al. v. City of Dunedin, et al.; Case No. 8:19-cv-01210 - correspondence attached

Ari:

In the last 24 hours, our office sent out a USB drive with a production including audio files, photographs, code enforcement file notes, hearing records, etc. If you have not yet received the cover letter and corresponding drive it should be forthcoming.

City staff has performed its search of e-mails and network drives. All documents revealed in that search have been included in the above-referenced production.

Regards,

Randy Mora

---

**From:** Jay Daigneault <Jay@cityattorneys.legal>
**Sent:** Thursday, January 23, 2020 4:47 PM
**To:** Ari Bargil <abargil@ij.org>
**Cc:** Randy Mora <Randy@cityattorneys.legal>; Andrew H. Ward <andrew.ward@ij.org>; Rebekah Ramirez <rramirez@ij.org>; Jennifer Ramos <Jennifer@cityattorneys.legal>
**Subject:** RE: James Ficken, et al. v. City of Dunedin, et al.; Case No. 8:19-cv-01210 - correspondence attached

Ari:

It's certainly not my intention to disappoint you, but as you know I have an obligation to represent my client.

As to the second inquiry, and wishing to avoid further haggling over the matter, what you are missing is that the City does not and has not imposed code enforcement fines in any amount or at any time. Fines are considered and imposed by the Code Enforcement Board. I hope this clarification is sufficient.

Finally, I have asked Randy to follow up with you on any outstanding documents. He is copied here and will do so as soon as possible.

Best,

**Jay Daigneault, Esquire**



1001 South Fort Harrison Avenue, Suite 201
Clearwater, Florida 33756
☎ Phone: (727) 733-0494, ext. 106
📠 Fax: (727) 733-2991
✉ Email: jay@cityattorneys.legal

**CONFIDENTIALITY NOTICE**

The information and all attachments contained in this electronic communication are legally privileged and confidential information, subject to the attorney-client privilege and intended only for the use of the intended recipients. If the reader of this message is not an intended recipient, you are hereby notified that any review, use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately of the error by return e-mail and please permanently remove any copies of this message from your system and do not retain any copies, whether in electronic or physical form or otherwise.  Thank you.

Notice:  The publication of our fax number is not to be construed as our consent to receive unsolicited fax advertisements.

**From:** Ari Bargil <abargil@ij.org>
**Sent:** Thursday, January 23, 2020 4:35 PM
**To:** Jay Daigneault <Jay@cityattorneys.legal>
**Cc:** Randy Mora <Randy@cityattorneys.legal>; Andrew H. Ward <andrew.ward@ij.org>; Rebekah Ramirez <rramirez@ij.org>; Jennifer Ramos <Jennifer@cityattorneys.legal>
**Subject:** RE: James Ficken, et al. v. City of Dunedin, et al.; Case No. 8:19-cv-01210 - correspondence attached

I am in receipt of your letter, Jay. Needless to say, I'm pretty disappointed with some of the positions you've taken here, especially in light of your stated desire to avoid motion practice. Hopefully I prove to be incorrect, but it seems extremely likely that we will be moving to compel responses soon. Before we do that, however, I do need to follow-up on one response in your letter and address one item that I believe you missed.

First, at the conclusion of your letter, you explain that your response to Interrogatory 1 remains the same. Thus, it is now our understanding that your position is that the city "has not issued any code enforcement fines" in an aggregate amount of more than $5,000 since January 2015. Am I missing something here? This case involves a Dunedin-imposed code enforcement fine in an aggregate amount of $30,000. And we are all of course aware that there are other cases involving similar amounts (and more). If there is some sort of construction that you are applying in order to reach this position, I politely ask that you identify it so that we can deal with it now.

Finally, our letter of January 16 concluded with a request for an update regarding documents that

were promised over two months ago. I am now renewing our request for that update, or in the alternative, I ask that you advise whether you now no longer have any intention of producing the documents as promised.

I look forward to your responses.

Ari

---

**From:** Jennifer Ramos <Jennifer@cityattorneys.legal>
**Sent:** Thursday, January 23, 2020 3:19 PM
**To:** Ari Bargil <abargil@ij.org>; Andrew H. Ward <andrew.ward@ij.org>
**Cc:** Jay Daigneault <Jay@cityattorneys.legal>; Randy Mora <Randy@cityattorneys.legal>
**Subject:** James Ficken, et al. v. City of Dunedin, et al.; Case No. 8:19-cv-01210 - correspondence attached


Good afternoon –

Please see the attached correspondence regarding the above-referenced matter.

Thank you!

Jennifer

**Jennifer M. Ramos**
**Legal Assistant to Jay Daigneault, Esq.**

Harbor Oaks Professional Center
1001 South Fort Harrison Avenue, Suite 201
Clearwater, Florida 33756
Direct: (727) 275-2416
Office: (727) 733-0494, Ext. 114
Fax: (727) 733-2991
Email: jennifer@cityattorneys.legal
<u>**CONFIDENTIALITY NOTICE**</u>
The information and all attachments contained in this electronic communication are legally privileged and confidential information, subject to the attorney-client privilege and intended only for the use of the intended recipients. If the reader of this message is not an intended recipient, you are hereby notified that any review, use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately of the error by return e-mail and please permanently remove any copies of this message from your system and do not retain any copies, whether in electronic or physical form or otherwise.  Thank you.
<u>Notice</u>:  The publication of our fax number is not to be construed as our consent to receive unsolicited fax advertisements.

# EXHIBIT G

*Declaration of Andrew H. Ward*
*in Support of Plaintiffs' Motion to Compel*
*Production of Documents and Interrogatory Responses*

**City of Dunedin**
**Annual Employee Performance Pre-Evaluation Form**

| EMPLOYEE'S NAME: | POSITION TITLE: | |
|---|---|---|
| Michael Kepto | Code Enforcement | |
| DEPARTMENT/DIVISION: | SUPERVISOR'S NAME | DATE COMPLETED: |
| Planning & Development | G. Rice | 9-11-15 |

**PURPOSE & INSTRUCTIONS FOR COMPLETING AND ADMINISTERING THE PRE- EVALUATION FORM**

The purpose of this pre-evaluation form is to provide an opportunity for each employee to discuss their job concerns and interests with his/her supervisor. It also allows you, the employee, to provide feedback your supervisor about your work performance during the last rating period, record accomplishments, discuss previously-set goals, and identify new goals for the upcoming year.

Prior to the annual evaluation meeting with your supervisor, complete this pre-evaluation form and submit it to your immediate supervisor. The information from this form will be used in your annual evaluation form. If necessary, your evaluator/supervisor may conduct a pre-review discussion with you to clarify points in the self-evaluation. Your annual evaluation form will be completed before your evaluation meeting so that it can be used during your performance discussion. You will then have the opportunity to make comments and/or ask questions before signing the evaluation form. Complete the following areas of the form:

1. **Summary of Overall Performance** - Summarize your overall performance for the rating period.

2. **Accomplishments** – List any significant accomplishments that were completed during the rating period.

3. **Performance Goals/Objectives** - Current Year/Next Year Goals/Objectives are to be completed for the applicable evaluation period. Goals and objectives may be based on the performance of job duties and responsibilities or they may be professional development goals or objectives associated with furthering job knowledge, skills, abilities, or professional designation.

---

SECTION 1: **Employee's Summary of Overall Performance**

Summary of performance that contributed to overall performance proficiency (Strengths):

Recorded Record Liens from Code Enf. Action Received By City $400,000+
Set Record Amount of cases Sent To Code Enf. Board
Professionalism / Customer Service
work in Partnership with Law Enf + the community

Summary of performance that could be improved to achieve a higher level of performance proficiency (Areas for improvement):

None

Employee Name: _____*Michael Kepto*_____

**3B: PERFORMANCE OBJECTIVES/ GOALS FOR THE NEXT EVALUATION PERIOD)** - List any goals and objectives that you wish to accomplish for the upcoming year; some of these goals may be carried over from the prior year.

| | PERFORMANCE GOAL/OBJECTIVE | ANTICIPATED COMPLETION DATE |
|---|---|---|
| 1 | Continue to work thru New Software implementation | |
| 2 | Continue to be A Financial Asset to the city | |
| 3 | By the Amounte of Liens collected | |
| 4 | | |
| 5 | | |

**Section 4: General Comments** – In this section, write in any final comments or information that you would like your supervisor to consider while developing your evaluation.

Consider Adding A third code inspector to Better Address the Volumn of complaints from Citizens.

_____*Michael Kepto*_____          9-11-15
Employee's Signature                          Date

City of Dunedin Employee Annual Pre-Evaluation Form-Lined.doc June 2015

**City of Dunedin**
**Employee Performance Evaluation Form - Non Supervisory**

| Employee Name | Michael S. Kepto | Title | Code Enforcement Inspector | Date of Evaluation | 8/17/2018 |
|---|---|---|---|---|---|
| Supervisor Name | Joseph A. DiPasqua | Title | Assistant Director of Planning & Development | | |
| Department | Planning & Development | Division | | | |

| Type of Evaluation | Annual | Review Period (Enter Dates mm/dd/yyyy) | | | |
| Probation Interval | 12-Month | From | 6/1/2017 | To | 5/31/2018 |

End of Probation Recommend for Regular Status? 

*Note : If this is an annual evaluation for an employment probationary employee (new hire) and regular status is not recommended, a memo and an Employee Improvement Plan must be included with the evaluation form.*

**Evaluation Criteria:**

| | |
|---|---|
| Outstanding | Regularly demonstrates the willingness to assume additional responsibilities and makes suggestions/recommendations to improve the effectiveness or efficiency of tasks and/or department operations.  This may also be used as special recognition for extraordinary performance or process improvements which resulted in a positive impact on, or savings to, the department/City. |
| Exceeds Standards | Performance is fully acceptable and consistently significantly above the minimum standards and requirements of the position.  Exceeds the required skills and knowledge for the position, and can be counted on to handle new or extraordinary assignments with minimal supervision. |
| Competent/Proficient | Demonstrates the required skills and knowledge for the position. Performance is acceptable and desired results are usually achieved.  The work is satisfactory, generally neat, and is usually without significant error. |
| Fair/Developing | Performance meets the minimum competency requirements in some areas, but could be improved through development, experience and/or consistent application. |
| Needs Improvement | Performance is below minimum requirements; regularly produces work with recurrent errors and/or omissions. Work assignments are not always completed in a timely manner; needs a high level of supervision on this responsibility.  The individual must improve performance with additional effort and less supervision. |
| New | FOR POSITION COMPETENCIES SECTION ONLY: Employee is new in the position (less than 6 months), and may not have been rated in this area. |
| N/A | FOR GOALS SECTION ONLY: Select this value if the goal was not achieved due to reasons beyond the employee's control, or was deleted at some point during the year. Include the reason in the Comments section. |

**SECTION I - COMPETENCIES**

| General Competencies | Level of Performance (Click to Select) |
|---|---|
| **JOB PERFORMANCE** | |
| *Job Knowledge :* How the employee applies his/her knowledge, experience and skills to perform the essential functions and related assignments of the position in order to produce the quantity and quality of work that meet established standards and expectations. | Outstanding |
| *Quality of Work/Productivity:* Consider volume of work performed, assignments completed relative to job requirement, accuracy, neatness, and thoroughness of work effort.  Completion of work according to procedures, guidelines and goals given.  Utilization of available working hours to complete assignments on schedule. | Outstanding |
| *Judgment /Problem Solving :* Employee's ability to think through situations, weigh factors involved, and make sound decisions.  Capacity to make reasonable decisions based on the available information. | Needs Improvement |
| *Initiative :* Consider employee's willingness to make contributions and/or voluntarily start projects, as well as the amount of direction that is needed to accomplish this.  Also, the employee's willingness to take responsibility for own career/personal development. | Exceeds Standards |
| *Planning/ Prioritizing :* The employee's ability to organize tasks, taking into account time restraints, project demands and resources. | Exceeds Standards |
| **Overall Comments on Job Performance:** | |
| | |
| **RELATIONSHIPS** | |
| *Teamwork/Collaboration :* The ability to work well with co-workers and supervisors; the employee's ability and willingness to contribute and promote teamwork to the department in a cooperative work environment (considerate, helpful, etc.).  Also, whether the employee actively seeks team members' input for additional information or other perspectives about issues and does not dismiss others' opinions. | Competent/Proficient |
| *Customer Service/Communication :* Consider employee's ability to interact positively with internal and external customers; the employee's verbal and/or written skills necessary to perform the job.  Ability to convey information and present ideas. | Needs Improvement |
| *Dependability/Work Ethic :* Reliability and trustworthiness to do tasks in a timely and efficient manner.  Consider employee's ability to follow through on assignments, reporting for work (i.e. punctuality), and use of breaks/lunch periods, leave and compensatory time (do not include FMLA absences); attendance and remaining at work in accordance with established work schedule and hours. Also, the employee's participation in all required meetings and completion of training. | Exceeds Standards |
| *Integrity :* Committed to the overall goals, functions and requirements of the department and City; takes responsibility/accountability for his/her actions and decisions.  Recognizes and does not contribute to gossip, disrespectful, or unprofessional behaviors, or violations of City policies, such as workplace harassment, or bullying.  Reports any actions or suspected activity that would be considered unethical to appropriate supervisory level. | Exceeds Standards |
| **Overall Comments on Relationships:** | |
| | |
| *Safe Work Habits :* Observance of the City's safety practices and procedures.  (Note: This competency refers to the general safety protocols that every employee should follow.  If safety is a position competency, then it should be included in that section.) | Exceeds Standards |

HUMAN RESOURCES

AUG 2 7 REC'D

RECEIVED



| Employee Name | Michael S. Kepto | Title | Code Enforcement Inspector | Date of Evaluation | 8/17/2018 |

| Position Competencies (from Job Description) | Level of Performance (Click to Select) | Examples of Observed Behaviors |
| --- | --- | --- |
| Respond to inquiries and complaints relating to code enforcement violations. | Exceeds Standards | Mike possesses the knowledge to handle complex cases. |
| Prepare and present cases to the DCEB. | Exceeds Standards | Mike is extremely thorough in his case preparation. |
| | | |
| | | |
| | | |

## SECTION II - PERFORMANCE GOALS/OBJECTIVES

| Performance Goals/Objectives (Current Evaluation Period) | Level of Achievement (Click to Select) | Comments |
| --- | --- | --- |
| Pursue training and/or professional certifications in code enforcement. | N/A | Awaiting policy approval |
| Learn the new ERP once implementation begins. | Exceeds Standards | |
| | | |
| | | |
| | | |

| Performance Goals/Objectives (New Evaluation Period) | Enter New or Ongoing | Anticipated Completion Date |
| --- | --- | --- |
| Pursue training and/or professional certifications in code enforcement. | Ongoing | |
| Learn the new ERP once implementation begins. | Ongoing | |
| Improve customer relations and conflict resolution | Ongoing | |
| | | |
| | | |

## SECTION III - SCORING

### General Competencies

| | Raw | Weighted |
| --- | --- | --- |
| Outstanding | 2 | 8.00 |
| Exceeds Standards | 4 | 13.60 |
| Competent/Proficient | 1 | 3.00 |
| Fair/Developing | 0 | 0.00 |
| Needs Improvement | 2 | 4.00 |
| New | 0 | |
| **Average Section Score** | | **3.18** |

| Were there goals for the Current Period? | Yes | **Verify Correct Entry* |
| --- | --- | --- |

### Position Competencies

| | Raw | Weighted |
| --- | --- | --- |
| Outstanding | 0 | 0.00 |
| Exceeds Standards | 2 | 6.80 |
| Competent/Proficient | 0 | 0.00 |
| Fair/Developing | 0 | 0.00 |
| Needs Improvement | 0 | 0.00 |
| New | 0 | 0.00 |
| **Average Section Score** | | **3.40** |

| Overall Performance Rating (Numerical) | 3.33 |
| --- | --- |

### Current Period Performance Goals/Objectives

| | Raw | Weighted |
| --- | --- | --- |
| Outstanding | 0 | 0.00 |
| Exceeds Standards | 1 | 3.40 |
| Competent/Proficient | 0 | 0.00 |
| Fair/Developing | 0 | 0.00 |
| Needs Improvement | 0 | 0.00 |
| N/A | 1 | 0.00 |
| **Average Section Score** | | **3.40** |

| Min. Required Rating to Attain a Merit Increase: | 2.10 |
| --- | --- |

## SECTION III - FINAL SCORING

| Overall Performance Rating | Exceeds Standards |
| --- | --- |
| Merit Increase Recommended | 3.00% |

| Employee Name | Michael S. Kepto | Title | Code Enforcement Inspector | Date of Evaluation | 8/17/2018 |
|---|---|---|---|---|---|

## SECTION IV - COMMENTS

**Supervisor's Summary of Employee's Overall Performance**

**Summary of employee's performance that contributed to his/her performance proficiency. (Strengths)**

Mike understands his responsibilities and is proficient with the technical part of his job.

**Summary of employee's performance required to achieve higher level performance proficiency. (Areas for improvement)**

Mike needs to continue to work to improve his customer service/communication skills.

**What additional training or experience will the employee need to improve performance? Is the additional training or experience available?**

Mike has been directed to take customer service/communication training. He also should take advantage of opportunities for professional certification(s).

**Employee's Summary of Overall Performance (See Attached Pre-Evaluation Form)**

## Acknowledgement of Performance Review/Signatures

**Employee Acknowledgement**

Do you agree with this Performance Review?    **NO**

**Employee Comments**

My signature below confirms that I have received a copy of this document; it does not indicate that I fully agree with the content of the evaluation. I have had the opportunity to review and discuss with my supervisor, and have a full and complete understanding of the content and ramifications of this evaluation.

_Michael Kepto_    **8-23-2018**
**Employee Signature**    Date

**Supervisor's Comments**

_[signature]_    **8.24.18**
**Supervisor Signature:**    Date

**Reviewing Manager's Comments**

_____    _____
**Reviewing Manager Signature\***    Date

\*If the Overall Performance Rating is less than the required minimum, "One-level up" management review and approval is required before the evaluation form is communicated to the employee.

**Division/Department Director's Comments**

Mike is attending customer service/communication training as required by the City Manager and Department Director.

_[signature]_    Date **8/24/2018**
**Division/Department Director's Signature**

_[signature]_    _____
**Human Resources Signature/Date**    **City Manager Signature/Date**