UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES FICKEN, trustee,
SUNCOAST FIRST TRUST; and
SUNCOAST FIRST TRUST,

    Plaintiffs,

vs.

CITY OF DUNEDIN, FLORIDA;
DUNEDIN CODE ENFORCEMENT BOARD;
MICHAEL BOWMAN, in his official capacity as Code
Enforcement Board Chairman; LOWELL SUPLICKI,
in his official capacity as Code Enforcement Board
Vice-Chair; ARLENE GRAHAM, in her official
capacity as a member of the Code Enforcement Board;
KEN CARSON, in his official capacity as a member
of the Code Enforcement Board; WILLIAM
MOTLEY, in his official capacity as a member
of the Code Enforcement Board; DAVE PAULEY,
in his official capacity as a member of the Code
Enforcement Board; and BUNNY DUTTON, in
her official capacity as a member of the Code
Enforcement Board,

    Defendants.
_____/

Case No.: 8:19-cv-01210
State Ct. Case No.:19-003181-CI

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTIONS TO COMPEL
AND INCORPORATED MEMORANDUM OF LAW**

    Defendants, CITY OF DUNEDIN, FLORIDA, DUNEDIN CODE ENFORCEMENT BOARD, MICHAEL BOWMAN, LOWELL SUPLICKI, ARLENE GRAHAM, KEN CARSON, WILLIAM MOTLEY, DAVE PAULEY, and BUNNY DUTTON (collectively, the "City"),[1]

---

[1] Defendants contend that the individual defendants named in their official capacities are not appropriate parties to this matter but acknowledge that the issue remains pending before the Court. (Dkt. 24 at fn1).

1

respond to Plaintiffs' Motion to Compel Production of Documents and Interrogatory Responses (Dkt. 36) and Plaintiffs' Second Motion to Compel Production of Documents (Dkt. 40). The City respectfully requests the Motions be denied and, as grounds therefore, states:

## MEMORANDUM OF LAW

### I.    INTRODUCTION

In the instant motions,[2] Plaintiff[3] continues to advance the misleading narrative that he was fined $30,000 by the City's code enforcement board, and continues to obfuscate the pleadings in order to expand the scope of discovery. The efforts should be rejected, and the motions denied.

As noted by Plaintiffs, Fed. R. Civ. P. 26 (b) (1) allows discovery "regarding any nonprivileged matter that is ***relevant to any party's claim or defense*** . . ." (emphasis supplied). "Relevancy" under Rule 26 (b) (1) is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 98 S.Ct. 2380, 2389 (1978). Still, "discovery, like all matters of procedure, has ultimate and necessary boundaries." Id. at 2389, 2390. Discovery of matters not "reasonably calculated to lead to the discovery of admissible evidence" is not within the scope of Rule 26 (b) (1).

Critically, the pleadings frame the issues in the case. See e.g. Pierson v. Orlando Reg'l Healthcare Sys., Inc., 2010 WL 11508728, at *3 (M.D. Fla. May 5, 2010). A court should examine the issues as framed by the pleadings when deciphering whether requested information is

---

[2] Though the City herein responds to Plaintiffs' two motions to compel, the second defers to the first as to the briefing. (Dkt. 40 at 3). Hence, the City refers to them as the singular "motion."

[3] Plaintiffs are the trust which owns the property at issue and the trustee of that trust, Jim Ficken. As the distinction is not material for purposes of the motion at hand, they are referred to as the singular "Plaintiff."

reasonably calculated to lead to the discovery of admissible evidence. See Freytes-Torres v. City of Sanford, Florida, 2008 WL 11336656, at *1 (M.D. Fla. May 27, 2008) (citing UnitedHealth Group, Inc. v. Dowdy, 2007 WL 3202473 (M.D. Fla. October 29, 2007). Therefore, Plaintiff is entitled to discovery that is reasonably calculated to lead to the discovery of admissible evidence based on the remaining claims and defenses framed by the pleadings.

In the instant case, Plaintiff obfuscates his claims in order to expand the scope of discovery, then argues to this Court that the City confuses the merits of the case with the scope of discovery (Dkt. 36 at fn4), a practice which should not be countenanced. In the Amended Complaint, and based on code enforcement proceedings brought against Plaintiff in 2015 and 2018 for the allegedly "picayune" matter of uncut grass, "Plaintiffs seek declaratory and injunctive relief" against (1) "the City's decision to impose a daily fine of $500 and an aggregate fine of over $29,000 against Plaintiffs . . . (2) the City's decision to foreclose on Plaintiffs' home as a penalty for temporarily having tall grass . . . (3) **the City's code, insofar as it empowers the City to assess limitless fines**, in violation of the Excessive Fines Clauses of the Eighth Amendment to the U.S. Constitution and Article I, section 17 of the Florida Constitution. . . ;" (emphasis supplied) and "the City's unconstitutional practice of commencing fines against so-called 'repeat violators'" without providing due process. (Dkt. 22 at 1, ¶¶ 2-5). The two "decisions" identified are specifically governed by Chapter 162, Fla. Stat., and the parallel provisions of Chapter 22, DCO.

In furtherance of the relief sought, Plaintiff alleges in Count One that the fines and the penalty of foreclosure are unconstitutional under the Eighth Amendment both facially and as applied. (Dkt. 22 at ¶¶ 106, 108, 110). In Count Two, Plaintiffs make similar contentions under the authority of the Florida Constitution. (Dkt. 22 at ¶¶ 121, 123, 125). Count Three purports to allege a violation of Plaintiffs' procedural due process rights under the Fourteenth Amendment

because Plaintiff "lost his right to access the City's traditional *code enforcement process* without the appropriate notice and opportunity to be heard required by federal law" (emphasis supplied). (Dkt. 22 at ¶ 135). Plaintiffs assert a similar claim under the Florida Constitution. (Dkt. 22 at ¶ 147). Of course, the fine and foreclosure are part of the code enforcement processes governed by Chapter 162, Fla. Stat., and Chapter 22, DCO.

Nevertheless, Plaintiffs' counsel has affirmatively represented to the City's counsel the Amended Complaint does not assert a challenge to Chapter 162, Fla. Stat., or Chapter 22, DCO. "We are indeed arguing that the City's system of boundless fines is unconstitutional on its face and of course as-applied here. ***It is also correct that we have not challenged the constitutionality of Chapter 162 or Ch 22***." (Dkt. 36-1 at 41). Of course, a facial challenge seeks to invalidate a statute or regulation itself. Indigo Room, Inc. v. City of Fort Myers, 710 F.3d 1294, 1302 (11th Cir. 2013). In other words, there must be a "face" to challenge. So, Plaintiff has filed a pleading ostensibly mounting a facial challenge to Chapter 162, Fla. Stat., and Chapter 22, Fla. Stat., but has affirmatively disavowed such challenge.

Simultaneously, Plaintiff's counsel acknowledges that the "we are not challenging the *possibility* of fines for long grass, we are challenging instances of them . . ." (Dkt. 36-1 at 30) (emphasis in original). "[F]or a facial challenge to succeed . . . the challenger must establish that no set of circumstances exists under which the [statute or regulation] would be valid." Id. So, Plaintiff both asserts and disavows a facial challenge.

At issue in the Motion is not whether the City ultimately will prevail, but the identification of the issues framed by the pleadings so the Court may decipher whether the discovery sought is reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's attempt to divorce

the code enforcement matter at issue from the statutory authority which governs it, and to thereby expand the scope of discovery beyond Rule 26, must be rejected.

II.     ARGUMENT[4]

A. **RFP 5 and Interrogatory 6—Harms of Long Grass**

Plaintiff first seeks responses to interrogatories and requests to produce regarding what Plaintiff characterizes as "the heart of the case: how bad it is to have long grass" (Dkt. 36 at 3), describing such information as "plainly relevant to the excessiveness claims." (Dkt. 36 at 3-6).

"The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality." Austin v. United States, 113 S.Ct. 2801, 2812 (1993). No case explicitly instructs how such proportionality is to be considered, but Plaintiffs correctly acknowledge that "[t]he relevant factors" concerning the excessiveness of a fine "will necessarily vary from case to case." (Dkt. 36 at 4 (citing United States v. One Parcel Prop. Located at 427 & 429 Hall St., 74 F.3d 1165, 1172 (11th Cir. 1996)).

In this case, and despite Plaintiff's retreat from them, proportionality should and must be considered under the rubric of Chapter 162, Fla. Stat., and Chapter 22, DCO. None of the cases cited by Plaintiff in the Motion address daily accruing fines and, as importantly, none address a statutory construction similar to that found in Chapter 162, Fla. Stat., and Chapter 22, DCO, authorizing the imposition of limited daily accruing fines which constitute an enforceable lien subject to foreclosure. Despite Plaintiffs' attempt to divorce the matter from Chapter 162, Fla. Stat., and Chapter 22, DCO, they are critical in deciphering whether the requested information is reasonably calculated to lead to the discovery of admissible evidence.

---

[4] For ease of reference, the argument section herein is organized to match the subheadings of "Section III – Argument" of Plaintiff's Motion. The text of the specific discovery requests is not repeated.

5

Chapter 162, Fla. Stat., explicated upon at length in the City's Motion to Dismiss the Amended Complaint (Dkt. 24 at 5-8), expresses a legislative intent to:

> . . . ***promote, protect, and improve the health, safety, and welfare of the citizens*** of the counties and municipalities of this state by authorizing the creation of administrative boards with authority to impose administrative fines and other noncriminal penalties to provide an equitable, expeditious, effective, and inexpensive method of enforcing ***any codes and ordinances*** in force in counties and municipalities, where a pending or repeated violation continues to exist.

§ 162.02, Fla. Stat. See also § 22-1, DCO (emphases supplied).

As noted in the City's Motion to Dismiss, both chapters then go on to set forth the limited range of daily accruing fines that may be imposed for original or repeat violations of ***any*** municipal ordinances. In other words, both the Florida Legislature and the City's Board of Commissioners have determined legislatively the proportionality of fines assessed for violation of any municipal ordinance, including those governing the maintenance of yards. Those bodies have determined that compliance with municipal codes furthers the public health, safety, and welfare. Further, they have determined that such daily accruing fines are "proportional" to the harm caused by the very violation of municipal ordinances, without reference to the municipal ordinance violated, and that proportionality has been affirmed by courts reviewing it. (Dkt. 24 at 11-15). Stated simply, proportionality is built into Chapter 162, Fla. Stat. and Chapter 22, DCO. So, within the specific context of this case, Plaintiff's discovery requests concerning the "harm" of long grass can be relevant only to the legislative judgment of the City's ordinances regulating the height of grass, which is not at issue in the lawsuit. Accordingly, the discovery requests are not reasonably calculated to lead to the discovery of admissible evidence.

### B. RFP 3—The City's own view of its code enforcement system

In their Request for Production number 3, Plaintiff seeks "internal audits or similar reviews" concerning code enforcement which they contend are relevant to the City's own views of how the City's code enforcement system operates. (Dkt. 36 at 6-8). The contention is especially curious and the request particularly irrelevant given that Plaintiff admittedly is not challenging the facial constitutionality of the City's code enforcement system which, as noted, operates under Chapter 162, Fla. Stat., and Chapter 22, DCO. (Dkt. 36-1 at 41).

Plaintiff argues that Fed. R. Civ. P. 33 (a) (2), governing interrogatories, first justifies the request because, under the rule, interrogatories may seek "an opinion or contention that relates to fact or the application of law to fact." Plaintiff omits critical language. Stated more completely, the rule says that such an interrogatory is "not objectionable merely because" it seeks an opinion or contention, but that the court may order that such an inquiry "need not be answered until designated discovery is complete . . ." Of course, like Rule 36 governing Requests for Admission, the rule defers to the general provisions of Rule 26, including relevance.  So, what Plaintiff miscasts as a blanket statement of relevancy is, in fact, still subject to the same standards of relevance discussed above.

To justify the relevance, Plaintiff asserted to the City that the documents sought "could conclude that 'the City imposes harsh fines for minor violations, the City fails to provide sufficient notice to repeat offenders, or the like.'" (Dkt. 36-1 at 29). Assuming that responsive documents said as much, they are no more relevant than if they concluded that "the City imposes perfectly proportional fines for minor violations, the City provides ample notice to repeat offenders" or the like. No matter which way they cut, the statements have no bearing whatsoever on whether the City's code enforcement system is constitutional on its face or as applied to Plaintiff—that

7

determination rests solely with the Court and neither the City's own opinion nor that of a consultant is relevant to the inquiry.

### C. Interrogatory 4—The City could have just mowed the lawn

In Interrogatory Number 4, Plaintiff inquires as to "whether the City could have just mowed the lawn and billed [Plaintiff] rather than fining him $30,000." (Dkt. 36 at 8). Setting aside that the affirmative allegations of the Amended Complaint show that he was not fined $30,000, the relevance of this request must also be considered within the framework of Chapters 162 and 22.

Section 162.13, Fla. Stat., states as follows:

> PROVISIONS OF ACT SUPPLEMENTAL. – It is the legislative intent of ss. 162.01-162.12 to provide an additional or supplemental means of obtaining compliance with local codes. ***Nothing contained in ss. 162.01-162.12 shall prohibit a local governing body from enforcing its codes by any other means*** (emphasis supplied).

See also §22-3 (a), DCO.

As noted previously, the factors governing the proportionality of a fine vary on a case-by-case basis and the proportionality of code enforcement fines are built into Chapter 162, Fla. Stat., and Chapter 22, DCO. Thus, discovery regarding whether the City has mowed other people's lawns and charged them for same, or whether it could have done so as to Plaintiffs' property, may be relevant in the context of an equal protection claim, but has no relevance to the proportionality analysis under the facts alleged.

Significantly, Plaintiff neglects to inform the Court that, in the case of Wright v. Riveland, 219 F.3d 905 (9th Cir. 2000), cited in the Motion on page 13, the circuit court determined a portion of the fines at issue constitutional *as a matter of law* because, like the fines in this case, they were imposed pursuant to a statutory hierarchy limiting the amount and thereby ensuring proportionality. The fines imposed outside the timeframe of that hierarchy's existence survived

the motion to dismiss. Id. More broadly, Plaintiff relies throughout the Motion on cases concerning forfeiture, restitution, and other criminal fines, which are distinct concepts having little utility in the noncriminal matters at hand. The City notes this not because it believes it "should win" (Dkt. 36 at fn4), but to assist the Court in deciphering what of the requested information is reasonably calculated to lead to the discovery of admissible evidence.

In this case, the existence and utilization of alternative means of code enforcement and remediation are not part of the proportionality analysis since there is no allegation the City used those alternative means and the analysis must be governed instead by the statutory construct. The request is another attempt to separate the case from the regulatory frameworks which govern it, Chapter 162, Fla. Stat., and Chapter 22, DCO, and the City respectfully requests the Motion be denied on this point.

### D. Interrogatories 8 and 9—What happened that summer

Interrogatories 8 and 9, according Plaintiff, seek information concerning "the most basic details of what happened the summer [the City] fined Jim." (Dkt. 36 at 13). The Amended Complaint alleges that "the summer [the City] fined" him was the summer of 2018 (Dkt. 22 at ¶ 74), yet the interrogatory seeks information concerning statements allegedly made by (1) a City spokesperson in June 2019; and (2) the City Manager to a newspaper reporter in May 2019. Plaintiff's inquiries do not concern the most basic details of what occurred in 2018, but rather the basis of statements made much later.

Whether the City's spokesman holds the opinion that Plaintiff is "a chronic scofflaw who ignores code-enforcement notifications" does not concern "the most basic details" of what happened in the summer of 2018 and therefore has no relevance whatsoever to this case. It is not reasonably calculated to lead to the discovery of admissible evidence concerning the

constitutionality of the code enforcement proceeding at issue under the Eighth or Fourteenth Amendments.

Likewise, the City Manager's alleged statements to a newspaper reporter almost one year after the summer of 2018 are equally irrelevant. The interrogatory does not seek to discover events occurring in summer 2018—instead, it seeks to discover what the alleged speaker relied upon when making the statement in May 2019, which is not relevant to the claims or defenses in the lawsuit. Further, the interrogatory presumes that the statement was made in the first instance, but the statement was published by a newspaper which received it from reporter, who received it from the City Manager who apparently obtained it from a code enforcement officer or other staff member. The events of the code enforcement proceeding leading to the fine at issue are relevant, but those events do not form the basis of the interrogatories at issue. Finally, the City notes that Plaintiff has obtained substantial documentation regarding the summer of 2018, deposed the City's corporate representative and the code enforcement officer who issued the violation in the summer of 2018, and inquired of both at length concerning the details of the summer of 2018, at this juncture rendering the interrogatory duplicative.

### E. Other fines

In Interrogatory 1 and Request for Production 4, Plaintiff seeks discovery concerning fines imposed by the City's Code Enforcement Board since January 1, 2015 greater than $5,000 and documents in that same period evidencing all code violations for overgrown grass. Plaintiffs allege these matters are relevant "to the questions of both proportionality and notice." (Dkt. 36-1). They are not.

Again, proportionality in this specific case is built into the statutory framework governing the conduct of code enforcement in Florida and the City, and that statutory framework must inform

the analysis of whether the requested information is reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's hypothetical does not help him. That the evidence may reveal very few fines for tall grass in excess of $5,000 or, conversely, that it may reveal many fines for tall grass, is not relevant to the proportionality analysis because the proportionality analysis must focus on the range of permissible fines for repeat violations set forth in Chapter 162, Fla. Stat., and Chapter 22, DCO, which fines may be assessed for repeat violation of ***any municipal ordinance***—proportionality is built into the code enforcement process. There is no case suggesting that proportionality is or should be measured by how much other code violators were fined and, in the specific context of this case, such evidence is not reasonably calculated to lead to the discovery of admissible evidence.

Other fines that have accrued to greater than $5,000 since 2015 are equally irrelevant. Assuming the request yields evidence the City has a practice of delaying notification as argued by Plaintiff, the issue framed by the pleadings as to the facial challenge is whether § 162.06 (3), Fla. Stat.'s omission of a time limitation for a code enforcement officer to notify the enforcement board of a repeat violation is constitutional. The City's practice is not relevant. Likewise, the as-applied challenge focuses on the fine at issue and the process leading to it—discovery concerning the fine issued to Plaintiff is relevant, but discovery on fines issued to others is not reasonably calculated to lead to the discovery of admissible evidence.

### F.  Interrogatory 7—Profit incentive

Interrogatory 7 is not reasonably calculated to lead to the discovery of admissible evidence for the same reasons the previous requests are not. Plaintiff contends that the City's "profit incentive" bears on the excessiveness analysis and, in support, directs the Court to <u>Timbs v. Indiana</u>, 139 S.Ct. 682 (2019).

Factually, the Timbs case concerned the forfeiture of a vehicle seized in the alleged transport of heroin, where the value of the vehicle was ten times more than the maximum fine assessable against the petitioner for the drug conviction. The case is factually inapposite. Further, and as noted in the City's Motion to Dismiss the Amended Complaint (Dkt. 24), the issue in Timbs was whether the Eighth Amendment's excessive fines clause was an incorporated protection applicable to the states under the Fourteenth Amendment, which question the Supreme Court answered affirmatively. The excerpt relied upon by Plaintiff in the Motion was set forth by the Supreme Court as part of the historical context underpinning its holding and did not concern which factors are relevant in the proportionality analysis at issue.

The factors relevant to the proportionality analysis are determined on a case by case basis. In this case, the City's general "profit incentive" is not at issue. Whether Chapter 162 and Chapter 22 are facially unconstitutional because they do not require the code officer to bring a repeat violation to the enforcement board within a specified time frame requires the Court only to look at the "face" of the laws and determine whether they can ever be applied constitutionally (Plaintiff's counsel has conceded they can). The request seeking revenue received from code enforcement from 2010 forward is likewise irrelevant as it seeks no information concerning the way the codes were applied to Plaintiff in the summer of 2018.

### G. RFP 6—Code-inspector employment records

In seeking to compel the production of the personnel files of the City's code enforcement records, Plaintiff seeks information concerning whether the City's code enforcement inspectors' interactions with Plaintiff were "proper." Again, this contention must be analyzed in light of the pleadings to decipher if the information is reasonably calculated to lead to the discovery of admissible evidence. Here, it is not because (1) it is admitted in the pleadings that Plaintiff violated

the City's code governing the height of grass; and (2) code enforcement inspectors do not and are not statutorily authorized to impose code enforcement fines under Chapter 162, Fla. Stat., or Chapter 22, DCO.

Conspicuously missing from Plaintiff's analysis of the Moss case cited in the Motion is this Court's observation that:

> federal courts recognize that personnel files contain private information and that they should exercise caution in permitting the discovery of information which may embarrass non-party employees. This is particularly true when the information can be obtained from other, less intrusive sources. Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169,184 (E.D.Pa. 2004) ( "Federal courts have recognized a 'heightened standard of relevance' for discovery of information contained in personnel files."); Coker, 177 F.R.D. at 685 (Personnel files are only discoverable when the information sought is clearly relevant and cannot be obtained from other sources .); see also Fullbright, 2010 WL 300436 at *2 (While not categorically out of bounds, personnel files are private and caution must be exercised in determining whether they should be disclosed.).
>
> Moss v. GEICO Indem. Co., 5:10-CV-104-OC-10TBS, 2012 WL 682450, at *5 (M.D. Fla. Mar. 2, 2012).

Plaintiff also fails to inform this Court that the case collecting other cases permitting discovery of personnel records in fact "collected" cases predicated upon bad faith insurance claims, or that such discovery was permitted "excluding sensitive, personal information that is not related to claims handling." Whitney v. Esurance Insurance Company, 2013 WL 12092069 (S.D. Fla. 2013).

The instant discovery request must be analyzed in the context of this case, which is not a bad faith insurance claim. Whether the City's code enforcement officers were "properly" enforcing the City's codes is not an issue framed by the pleadings—Plaintiff affirmatively acknowledges the existence of the violation but alleges first that he was out of town attending to other affairs, during

which time his maintenance man passed away, and then that his mower malfunctioned. Thus, the "legitimacy" of the violation is not at issue. The personnel files do not bear on the facial constitutionality of Chapter 162, Fla. Stat., or Chapter 22, DCO. Whether the code enforcement officer applied the code as to Plaintiff with a "profit incentive" is equally irrelevant as described in §§ II F herein, particular considering that Plaintiff does not dispute his failure to comply with the City's code. Finally, Plaintiff has deposed the code enforcement inspectors who prompted the 2015 and 2018 violations and has had opportunity to question each regarding the propriety of their enforcement efforts—the information sought has already been received from another source.

### H.  Consultant's reports – (Dkt. 40)

In the second motion filed March 6, 2020 (Dkt. 40), Plaintiff seeks to compel documents like those sought in RFP 3. The City refers and incorporates § II (B) of this document in response to same.

WHEREFORE, for the reasons stated herein, the City respectfully requests this Court deny Plaintiff's Motion along with such other relief as the Court deems appropriate.

Respectfully submitted,

/s/ Jay Daigneault, Esq.
Jay Daigneault, Esq. - FBN 0025859
Randy Mora, Esq. - FBN 099895
1001 South Fort Harrison Ave., Ste. 201
Clearwater, Florida 33756
(727) 733-0494 – Phone
Primary: jay@cityattorneys.legal
Primary: randy@cityattorneys.legal
Secondary: jennifer@cityattorneys.legal
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on March 13, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic service of same to Ari S. Bargil, Esq. at abargil@ij.org, and Andrew H. Ward at andrew.ward@ij.org, attorneys for Plaintiffs.

                                          /s/ Jay Daigneault, Esq.
                                          Jay Daigneault, Esq.
                                          FBN 0025859
                                          Randy Mora, Esq.
                                          FBN 0099895
                                          1001 South Fort Harrison Ave., Ste. 201
                                          Clearwater, Florida 33756
                                          (727) 733-0494 – Phone
                                          (727) 733-2991 – Fax
                                          Primary: jay@cityattorneys.legal
                                          Primary: randy@cityattorneys.legal
                                          Secondary: jennifer@cityattorneys.legal
                                          *Attorneys for Defendants*