# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JAMES FICKEN, trustee,
SUNCOAST FIRST TRUST; and
SUNCOAST FIRST TRUST,

      Plaintiffs,

      vs.

CITY OF DUNEDIN, FLORIDA;
DUNEDIN CODE ENFORCEMENT BOARD;
MICHAEL BOWMAN, in his official capacity as Code
Enforcement Board Chairman; LOWELL SUPLICKI,
in his official capacity as Code Enforcement Board
Vice-Chair; ARLENE GRAHAM, in her official
capacity as a member of the Code Enforcement Board;
KEN CARSON, in his official capacity as a member
of the Code Enforcement Board; WILLIAM
MOTLEY, in his official capacity as a member
of the Code Enforcement Board; DAVE PAULEY,
in his official capacity as a member of the Code
Enforcement Board; and BUNNY DUTTON, in
her official capacity as a member of the Code
Enforcement Board,

      Defendants.

_____/

Case No.: 8:19-cv-01210
State Court Case No.: 19-003181-CI

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' DISPOSITIVE MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Andrew H. Ward (NY Bar No. 5364393)**
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: andrew.ward@ij.org

**Admitted Pro Hac Vice

Ari S. Bargil (FL Bar No. 71454)*
INSTITUTE FOR JUSTICE
2 S. Biscayne Boulevard, Suite 3180
Miami, FL 33131
Tel: (305) 721-1600
Fax: (305) 721-1601
Email: abargil@ij.org

*Trial Counsel

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iv

I.      INTRODUCTION ................................................................................................1

II.     RESTATEMENT OF UNDISPUTED FACTS ....................................................2

III.    ARGUMENT .......................................................................................................3

        A.    THE FINES AND FORECLOSURE AGAINST JIM ARE EXCESSIVE ..............................3

              1.    "Statutorily compliant" does not mean constitutional ..............................4

                    i.    The City wrongly claims that all fines—regardless of amount—
                          are unconstitutional only if they are already illegal.....................4

                    ii.   Even if statutory compliance could resolve the question
                          of constitutionality, that would not help the City because
                          it has violated both state statute and its own ordinances .............6

              2.    Fines of $30,000 and the loss of one's home are excessive for
                    the "crime" of having tall grass ................................................................7

                    i.    The City's effort to cast a $30,000 fine for tall grass as
                          somehow reasonable rests on irrelevant evidence and
                          ad-hominem attacks ......................................................................8

                    ii.   Under the appropriate analysis, Jim's fines are excessive..........10

                    iii.  The City's argument that a foreclosure is not a fine lacks
                          merit and, as the City admits, has no basis in the law ...............11

                    iv.   The City's position, if accepted, would amount to a massive
                          expansion of its power to fine.....................................................12

        B.    THE CITY'S FAILURE TO NOTIFY JIM THAT HE WAS BEING FINED VIOLATED
              JIM'S RIGHT TO DUE PROCESS .................................................................................14

              1.    The City never provided Jim notice that he was being fined, and the
                    mere possibility of an appeal does not fix that .......................................14

              2.    The mere existence of an appellate mechanism does not mean
                    that Jim is barred from filing this action ................................................17

i.   Exhaustion is not required because this is a section 1983 case and the procedural due process violation was already complete when the City failed to provide notice ........................17

ii.   Exhaustion is not required because the City's inaction caused Jim to miss his deadline for appealing and any appeal would have been futile given the City's underlying conduct ......................................................................................19

IV.   CONCLUSION AND REQUEST FOR ORAL ARGUMENT ...................................20

CERTIFICATE OF SERVICE...........................................................................................21

# TABLE OF AUTHORITIES

**Case**                                                                          **Page(s)**

*915 SLR LLC v. Altamonte Springs*,
  No. 6:13-cv-1630, Orl-31DAB, 2014 WL 3809127 (M.D. Fla. Aug. 1, 2014)......................13

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996).................................................................................................14, 15

*Austin v. United States*,
  509 U.S. 602 (1993)..................................................................................................5, 11

*Cape Coral v. GAC Utils., Inc., of Fla.*,
  281 So. 2d 493 (Fla. 1973)..............................................................................................7

*Ciolli v. Palm Bay*,
  59 So. 3d 295 (Fla. 5th DCA 2011) ................................................................................6

*Cleveland Bd. of Educ. v. Loudermill*,
  470 U.S. 532 (1985).......................................................................................................18

*Colorado Dep't of Labor & Emp. v. Dami Hospitality, LLC*,
  442 P.3d 94 (Colo. 2019)...............................................................................................12

*Conley v. Dunedin*,
  No. 8:08-cv-01793-T-24-AEP, 2010 WL 146861 (M.D. Fla. Jan. 11, 2010) .............13, 18, 20

*Deerfield Beach v. Vaillant*,
  399 So. 2d 1045 (Fla. 4th DCA 1981)......................................................................16, 17

*Deerfield Beach v. Vaillant*,
  419 So. 2d 624 (Fla. 1982).......................................................................................16, 18

*Ebert v. Twp. of Hamilton*,
  No. 15-7331, 2018 WL 3772677 (D. N.J. Aug. 9, 2018) .......................................12

*Enter. Fire Fighters' Ass'n v. Watson*,
  869 F. Supp. 1532 (M.D. Ala. 1994) ............................................................................18

*Frese v. State*,
  2 So. 1 (Fla. 1887).........................................................................................................4

*Ft. Lauderdale v. Ilkanic*,
  683 So. 2d 563 (Fla. 4th DCA 1996) ............................................................................12

*Furman v. Georgia*,
    408 U.S. 238 (1972)............................................................................................5

*Galbreth v. Hale Cty., Ala. Comm'n*,
    754 Fed. App'x 820 (11th Cir. 2018) ..............................................18, 19

*Haines City Cmty. Dev. v. Heggs*,
    658 So. 2d 523 (Fla. 1995)................................................................20

*Jensen v. Cty. of Sonoma*,
    No. C-08-3440 JCS, 2010 WL 2330384 (N.D. Cal. June 4, 2010) ........................................12

*Kirby v. Archer*,
    790 So. 2d 1214 (Fla. 1st DCA 2001) ..................................................20

*Knick v. Twp. of Scott, Pa.*,
    139 S. Ct. 2162 (2019)......................................................................17

*Kupke v. Orange Cty.*,
    838 So. 2d 598 (Fla. 5th DCA 2003) ..............................................9, 16

*Laskey v. Baltimore*,
    No. CCB-08-3228, 2009 WL 909524 (D. Md. Apr. 1, 2009) ................................................12

*Lindbloom v. Manatee Cty.*,
    No. 8:18-cv-02642-T-02AEP, 2019 WL 2503145 (M.D. Fla. June 17, 2019)......12, 16, 18, 20

*Little v. D'Aloia*,
    759 So. 2d 17 (Fla. 2d DCA 2000) ......................................................7

*M.A.K. Inv. Grp. v. Glendale*,
    897 F.3d 1303 (10th Cir. 2018) ........................................................16

*Marfut v. North Port*,
    No. 8:08-cv-2006-T-27EAJ, 2009 WL 790111 (M.D. Fla. Mar. 25, 2009) ...............13, 17, 18

*Massey v. Charlotte Cty.*,
    842 So. 2d 142 (Fla. 2d DCA 2003) ..............................................9, 20

*Mennonite Bd. of Missions v. Adams*,
    462 U.S. 791 (1983)..........................................................................16

*Monroe Cty. v. Gonzalez*,
    593 So. 2d 1143 (Fla. 3d DCA 1992) ................................................20

*Moustakis v. Ft. Lauderdale,*
    338 Fed. App'x 820 (11th Cir. 2009) ...................................................13

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950).............................................................................16

*NLRB v. U.S. Postal Serv.,*
    526 F.3d 729 (11th Cir. 2008) ..........................................................8, 9

*Newell Recycling Co. v. EPA,*
    231 F.3d 204 (5th Cir. 2000) .............................................................4, 5

*Palm Bay v. Palm Bay Greens, LLC,*
    969 So. 2d 1187 (Fla. 5th DCA 2007)...............................................19

*Patsy v. Bd. of Regents of State of Fla.,*
    457 U.S. 496 (1982).............................................................................17

*People ex. rel. Lockyer v. R.J. Reynolds Tobacco Co.,*
    124 P.3d 408 (Cal. 2005)....................................................................12

*Shaffer v. Heitner,*
    433 U.S. 186 (1977).............................................................................15

*Solem v. Helm,*
    463 U.S. 277 (1983)...............................................................................5

*State v. Champe,*
    373 So. 2d 874 (Fla. 1978)....................................................................4

*State ex rel. Greenberg v. Fla. State Bd. of Dentistry,*
    297 So. 2d 628 (Fla. 1st DCA 1974) ...................................................7

*U.S. ex rel. Smith v. Gilbert Realty Co.,*
    840 F. Supp. 71 (E.D. Mich. 1993)......................................................5

*U.S. ex rel. Stearns v. Lane,*
    No. 2:08-cv-175, 2010 WL 3702538 (D. Vt. Sept. 15, 2010) ................5

*United States v. $100,348.00 in U.S. Currency,*
    354 F.3d 1110 (9th Cir. 2004) ..............................................................9

*United States v. Bajakajian,*
    524 U.S. 321 (1998)..........................................................4, 5, 9, 10, 12

*United States v. Dubose*,
    146 F.3d 1141 (9th Cir. 1998) ........................................................................12

*Williams v. Morris, Ala.*,
    2:18-cv-01307-AKK, 2019 WL 2058716 (N.D. Ala. 2019)...........................18, 19

*Wilson v. Cty. of Orange*,
    881 So. 2d 625 (Fla. 5th DCA 2004) .............................................................12

*Zaklama v. City of Bayonne*,
    No. 06-cv-1951 (PGS), 2007 WL 1234973 (D. N.J. Apr. 27, 2007)....................12

**Codes**

Dunedin Code 22-79(a)........................................................................7, 14, 19

Dunedin Code 22-80(a)..............................................................................8, 10

**Statutes**

42 U.S.C. § 1983 .......................................................................................17

Fla. Stat. § 162.06(3)....................................................................................6

Fla. Stat. § 162.09(3)..................................................................................8, 10

Fla. Stat. § 162.11 .......................................................................................20

**Rules**

11th Cir. R. 36-2 .........................................................................................13

**Other Authorities**

Colleen P. Murphy,
    *Reviewing Congressionally Created Remedies for Excessiveness*,
    3 Ohio St. L.J. 651 (2012)...........................................................................4, 5

Dunedin City Comm'n Work Session,
    May 2019 minutes, https://tinyurl.com/y8up3s6p .............................................14

*Full Interview: Dunedin mayor and city manager talk excessive fines*,
    YouTube (July 26, 2019), https://tinyurl.com/tr2xpjo..........................................4

# I.     INTRODUCTION

The Plaintiffs, Jim Ficken and Suncoast First Trust ("Jim"), have pleaded and consistently argued a very basic point: The Defendants ("the City") cannot, without providing any notice, fine Jim $30,000 and pursue the foreclosure of his home for the trivial offense of tall grass. The City's response, in a nutshell, is this: Jim is a scoundrel, he deserves it, and we are just following the law anyway. But the City's attempt to cast Jim as a "neglectful real estate investor" who "thinks very little of his obligation to . . . comply with *any* local government[] ordinances," is just a cynical attempt to impugn Jim and shift this Court's focus away from the City's malfeasance.

As Jim shows below, the City's factual and legal arguments fail. In its motion for summary judgment ("the Motion"), the City glosses over one of the singularly most important facts in this case—that the City was required to notify Jim he was being fined, and it never did. Rather than consider this (and other damaging facts), the City asks this Court to accept inadmissible evidence that was never before the Dunedin Code Enforcement Board ("the Board"). And its attorneys offer their own speculation—with no support in the record—for why Jim was fined as severely as he was for an offense that no one really thinks is serious.

Ultimately, the Motion asks this Court to endorse both a drastic expansion of the City's ability to fine its citizens and a loosening of the City's obligation to provide notice when doing so. To get there, the City argues that this Court must limit its own role in reviewing the City's powers in several ways. First, the City asks this Court to erroneously accept that proportionality is a legislative determination, not belonging to the courts, because all fines are per se constitutional so long as they do not also violate state statute. Next, the City asks this Court to credit improper evidence, like the speculation of its attorneys, in place of the unrebutted evidence

1

and the information that was before the Board below. And finally, the City asks this Court to ignore that the City's policy of providing post-remediation "notice" conflicts with state statute and violates the City's ordinances. But there is no precedent to support any of these positions.

## II.    RESTATEMENT OF UNDISPUTED FACTS

The documents in the record—along with the testimony of both Jim and the City's witnesses—prove two things: Jim lives at the Lady Marion property, and he was not home on July 5, 2018. *See* Jim Decl. Ex. 3 (flight receipts showing Jim was in South Carolina on July 5); Jim Decl. ¶¶ 15–18 (Jim swearing that he was away on July 5 and did not speak to Officer Colbert until August 20); Trask Dep. 120:13–19 (City's 30(b)(6) witness testifying that Officer Colbert first spoke to Jim on August 20, not July 5); Bargil Decl. Ex. 11 at 5:16–22 (Officer Colbert's testimony to the Board that he spoke to Jim on August 20); Colbert Dep. 94:11–95:19 (Officer Colbert's testimony that the "first time [he] spoke to [Jim] about this violation" was on August 20).[1] This body of evidence does not merely suggest, as the City argues in a footnote, that Jim "may have been out of town" on July 5. Defs.' MSJ Br. (ECF 42) 9 n.10. It proves that he was not there and no communication with Officer Colbert occurred on that date.

The City simply wishes that this were not true.[2] So the City off-handedly contends, without evidence, that "[t]he date of Ficken's interaction with Colbert is a disputed fact, but not a material one."[3] Defs.' MSJ Br. 9 n.10. But the opposite is true. The fact that the City never told

---

[1] Throughout this response, Jim mostly refers to the declarations, exhibits, and brief in support of his own motion for summary judgment, ECF 43. A handful of new exhibits are attached to a Response Declaration of Ari Bargil.

[2] The City suggests that Jim was at home at the Lady Marion property on July 5 despite suggesting throughout the Motion that Jim does not live there at all. Ultimately, the evidence confirms that Jim lives at the Lady Marion property despite the City's suspicions to the contrary. Bargil Resp. Decl. Ex. 1, Jim Dep. 6:7–10, 13:24, 14:6–12, 97:3–6, 97:18–20, 145:25–146:1, 152:16–18, 153:17–19, 154:2–4; Jim Decl. ¶ 3. Not that it matters for summary judgment. The fines at issue would be no less excessive if Jim were a part-time resident.

[3] The City's description of the timing of Officer Colbert's visit and his issuance of the notice is crafty. Though the wording the City deploys does not say what happened when, it is undisputed that: (1) Officer Colbert first inspected

Jim that he was being fined is critical to both Jim's due process and excessive fines claims. The City's effort to cast Jim as a non-resident who was undeserving of notice—a position which is based largely on a single paragraph in a skeletal affidavit—does not make that any less true.[4]

## III.    ARGUMENT

The City's arguments fail for two basic reasons. First, the City is incorrect that the fines are insulated from constitutional review because they are not also barred by statute. Under the analyses established by the United States and Florida supreme courts, the City's imposition of a $30,000 fine (and pursuit of foreclosure) for tall grass is excessive and shocks the conscience. As the discussion below shows, to hold otherwise would mark a drastic expansion of the City's power to impose fines. Second, the City is incorrect that the mere existence of an appellate mechanism, without more, is a blanket guarantor of due process and forecloses any litigation about the fines. Each argument is addressed in turn below.

### A.    THE FINES AND FORECLOSURE AGAINST JIM ARE EXCESSIVE.

The City maintains that the fines are totally appropriate for two basic reasons. First, the City argues that the fines are per se constitutional because they are within the statutory maximum. Second, the City argues that even if this Court disagrees with that premise, the fines are still proportional.

---

Jim's property on July 5, 2018; and (2) the first formal notice the City provided Jim was dated August 22, 2018. Bargil Decl. Ex. 7 at 26. It is inaccurate to suggest, as the City appears to do, that the notice "accompany[ied]" an inspection that took place *seven weeks* earlier. Defs.' MSJ Br. 7–8.

[4] The City relies repeatedly on the affidavit of Kristen Mendez, a real-estate agent who knows nothing about Jim and saw his property only once. Defs.' MSJ Br. 9, 20. Should this Court be inclined to place any weight on her testimony, Plaintiffs' counsel politely suggests caution. Ms. Mendez has repeatedly stated that she has virtually no memory of this matter, as she stated to the undersigned in an email: "I'll tell you the same thing I told [an attorney for the City] . . . I don't remember anything. I have no knowledge that will help you in your case." Bargil Resp. Decl. Ex. 2; *see also* Mendez Aff. ¶ 10 ("I do not recall the dates or times of these interactions . . . . and I have no further knowledge of the events concerning this lawsuit.").

**1.**    **"Statutorily compliant" does not mean constitutional.**

(i)    <u>The City wrongly claims that all fines—regardless of amount—are unconstitutional only if they are already illegal.</u>

The City argues that this Court has no role in assessing proportionality because "both the Florida Legislature and the City's Board" have already done the work of "determin[ing] legislatively the proportionality of fines assessed." Defs.' MSJ Br. 18; *see also Full Interview: Dunedin mayor and city manager talk excessive fines* 17:23–50, YouTube (July 26, 2019), https://tinyurl.com/tr2xpjo (explaining the City's position that statutory compliance does not mean that a massive fine "is right. It just means it's legal."). But a penalty's statutory authorization and a court's ability to judge its proportionality are two separate matters. *See State v. Champe*, 373 So. 2d 874, 879 (Fla. 1978) (explaining that a legislature may set a penalty, but such penalties may never be "so excessive as to be 'cruel' or 'unusual,' and [they cannot] *offend . . . other constitutional proscriptions*"). That the City did not violate state statute does not insulate the fine from constitutional review. And both the Florida and U.S. supreme courts agree. *See Frese v. State*, 2 So. 1, 3 (Fla. 1887) ("It cannot be denied that a fine . . . may, upon the facts and circumstances of the particular case, be excessive, though within the maximum."); *United States v. Bajakajian*, 524 U.S. 321, 339 n.14 (1998) (explaining that the mere existence of a higher statutory fine "cannot override the constitutional requirement of proportionality review").

The City cites only one case to support its position that a fine does not violate the Eighth Amendment unless it "exceed[s] the limits prescribed by the statute authorizing it": *Newell Recycling Co. v. EPA*, 231 F.3d 204, 210 (5th Cir. 2000). Defs.' MSJ Br. 19. And while the City cautions that this Court should ignore *Bajakajian* and cases like it because those cases involve "distinct concepts having little utility," Defs.' MSJ Br. 18, the City ignores that *Newell* bears no similarity—factually or doctrinally—to this case at all. *Newell* is an administrative law case

4

about a $1.3 million fine for the large-scale disposal of contaminated soil. And even there, the court acknowledged that the fine was permissible because it was "only about 10% of the maximum fine," and was appropriate because "ten years elapsed . . . from Newell's discovery of the buried capacitors in 1985 to its proper disposal of the . . . soil pile." *Newell*, 231 F.3d at 205, 210. Jim did not take ten years to clean up toxic waste. He mowed his lawn in a day. And the City did not fine him ten percent of the maximum fine. It fined him 100% of it.

In any case, the notion that fines are constitutional unless they are separately illegal defies logic and is irreconcilable with Supreme Court precedent. As even the City agrees, proportionality, not statutory compliance, is "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause." Defs.' MSJ Br. 18 (quoting *Bajakajian*, 524 U.S. at 334).[5] That the legislature has set a penalty does not mean that a court is barred from considering whether its imposition in a given instance is constitutional. *Cf. Furman v. Georgia*, 408 U.S. 238, 313–14 (1972) ("[T]he [Eighth] Amendment imposes some obligations on the judiciary to judge the constitutionality of punishment and . . . there are punishments that the Amendment would bar whether legislatively approved or not.") (White, J., concurring). Indeed, the Supreme Court has been quite clear: "no penalty is *per se* constitutional." *Solem v. Helm*, 463 U.S. 277, 290 (1983).

Courts can—and do—strike down legislatively authorized fines as violating the Eighth Amendment. *See, e.g.*, *U.S. ex rel. Stearns v. Lane*, No. 2:08-cv-175, 2010 WL 3702538, at *4 (D. Vt. Sept. 15, 2010) (finding excessive a fine amount set by statute); *U.S. ex rel. Smith v. Gilbert Realty Co.*, 840 F. Supp. 71, 74–75 (E.D. Mich. 1993) (same). At a minimum, when, as here, there are "factors to guide the choice of amount within the [statutory] range, then a reviewing court may consider whether" the fine at issue "is unreasonable in light of those

---

[5] The City mistakenly attributes this quotation to *Austin v. United States* in its brief. Defs.' MSJ Br. 18.

factors." Colleen P. Murphy, *Reviewing Congressionally Created Remedies for Excessiveness*, 73 Ohio St. L.J. 651, 655 (2012). This Court should do just that.

> (ii)   <u>Even if statutory compliance could resolve the question of constitutionality, that would not help the City because it has violated both state statute and its own ordinances.</u>

The City argues that the fines are simply the product of the legal system coldly running its course in the instance of a derelict property owner. Defs.' MSJ Br. 18–21. The City argues that its employees are simply doing their jobs, and the Board is merely following the letter of the law. *See, e.g.*, Trask Dep. 267:21–268:12 (arguing that a million dollars in code fines could be appropriate for 11-inch grass because "those are the consequences"); *id.* at 269:6–8 ("We have laws in this world . . . and they need to be complied with."). But this "law-and-order" narrative does not match the reality: The City's approach to code enforcement reflects an extremely aggressive reading of state statute and a disregard of its own ordinances.

The City rests its case almost entirely on its supposed compliance with Chapter 162's limits on fines for repeat violators. Except the City has violated the separate statutory prerequisite describing the notice it must provide before imposing those fines. Fla. Stat. § 162.06(3) ("If a repeat violation is found, the code inspector shall notify the violator . . . ."). True, Chapter 162 does not "prescribe when the [repeat] violator is to be notified of the violation." Defs.' MSJ Br. 16. Under the City's preferred reading, however, the statute's silence means that it may provide notice to repeat violators whenever it pleases; and if fines exceed tens of thousands of dollars or more, then so be it. *See* Pls.' MSJ Br. (ECF 43) 11–12. But courts that have addressed the "procedural gaps" in Chapter 162 have held otherwise. *See Ciolli v. Palm Bay*, 59 So. 3d 295, 298 n.5 (Fla. 5th DCA 2011).[6] The City simply does not have the discretion

---

[6] Of course, all gaps in Chapter 162 must be resolved with a common-sense application of due process. *See* Pls.' MSJ Br. 23–24. And to the extent there is doubt about the scope of the City's powers, that doubt must be resolved

that it thinks it does. *Compare* Kepto Dep. 86:21–87:15 ("Not when, but *if* we would send a notice of violation"), *with Little v. D'Aloia*, 759 So. 2d 17, 20 (Fla. Dist. Ct. App. 2000) (requiring notice that is "reasonable under the[] circumstances"). Thus, the City's policy for providing notice contradicts what Chapter 162 requires.

Even the City's own ordinances prohibit the City's tactics. Dunedin Code 22-79(a) ("DCO 22-79(a)"); *see also* Pls.' MSJ Br. 23. While the City cites DCO 22-79(a) in the Motion, it misstates, quite badly, what the ordinance says. Specifically, the City attempts to link DCO 22-79(a) to an analogous provision in state law which provides that "[a] daily fine accrues 'for each day the repeat violation continues.'" Defs.' MSJ Br. 16. The City leaves out, however, that DCO 22-79(a) also provides a crucial requirement about when fines may begin:

> A fine for a repeat violation may accrue "for each day the repeat violation continues ***past the date of notice to the violator*** of the repeat violation."

DCO 22-79(a). The City devotes four pages of its brief to discussing the application of state statute and local code, yet it omits this provision. And the City also misattributes the state-specific language it does quote as reflecting both the state statute and its local counterpart, which are not the same. In any case, the City admits that it fined Jim for seven weeks *before* providing him notice. Defs.' MSJ Br. 7, 10. As a result, the fines violate the City's own ordinances.

## 2. Fines of $30,000 and the loss of one's home are excessive for the "crime" of having tall grass.

The City argues that its imposition of $30,000 and eventual foreclosure of Jim's home is not excessive for the offense of tall grass. But the City's arguments fail for four basic reasons. First, the City's argument rests almost entirely on improper evidence and ad-hominem

---

against the City. *Cape Coral v. GAC Utils., Inc., of Fla.*, 281 So. 2d 493, 496 (Fla. 1973); *State ex rel. Greenberg v. Fla. State Bd. of Dentistry*, 297 So. 2d 628, 636 (Fla. 1st DCA 1974).

accusations. Second, a simple analysis of the factors that the Board *was* required to consider shows that Jim's fine is excessive because tall grass is hardly a grave offense warranting maximum fines. Third, the City's argument that foreclosure of Jim's home is not a punishment contradicts Supreme Court precedent. And fourth, the City's arguments seek a massive expansion in its ability to fine, as it does not (because it cannot) cite a single case with fines as severe as Jim's or that escalated as quickly. Each reason is addressed below.

(i)     The City's effort to cast a $30,000 fine for tall grass as somehow reasonable rests on irrelevant evidence and ad-hominem attacks.

The Board must weigh four factors when determining how severe a fine should be: the gravity of the offense, actions taken by the violator to correct the violation, previous violations, and the courtesy and cooperation of the violator. Defs.' MSJ Br. 16 (citing Fla. Stat. § 162.09(3), DCO 22-80(a)). But the City provides almost no analysis of Jim's conduct under those factors.

Instead, to justify Jim's fines, the City delves into other code enforcement cases arising on other properties in other jurisdictions. Defs.' MSJ Br. 11–14. That information is not relevant to—or properly a part of—this Court's inquiry. The Board's consideration of "previous violations" under Chapter 162.09(3) is limited to the violation history on *this* property. That is why neither the City's code enforcement officers nor the Board considered such things. Trask Dep. 247:2–21 ("I want to be clear on this, do they review or research or take into consideration whether the alleged violator owns other properties? A: They do not."); *see also* Bargil Decl. Ex. 11 (transcript showing that the Board did not consider Jim's other properties). In fact, the City admits that if any of these unrelated cases *had* been considered it would have been "inappropriate." Colbert Dep. 59:14–60:11 ("[W]e're talking specifically about one property, so it would be inappropriate for me to bring up another."). And it would be inappropriate for this Court to consider it now. *See, e.g.*, *NLRB v. U.S. Postal Serv.*, 526 F.3d 729, 732 n.2 (11th Cir.

2008) (per curiam) ("[A] reviewing court, . . . must judge the propriety of [agency] action solely by the grounds invoked by the agency."). This rule of law finds similar application in the excessive fines context. *Bajakajian* is a perfect example. There, the Court refused to consider a separate transgression when weighing the proportionality of a $357,144 forfeiture for a reporting crime. *Bajakajian*, 524 U.S. at 337 n.12. *See also United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1121 n.8 (9th Cir. 2004) (similar).

This Court should also reject the City's speculation about what the Board "may have believed" or "may have weighed" when it decided to fine Jim $500 per day. *See, e.g.*, Defs.' MSJ Br. 20 (theorizing that the Board may have been incensed that Jim "inconsistent[ly]" described Russ Kellum, the now-deceased man who was supposed to cut Jim's grass, as both someone who mows lawns and someone who fixes lawn mowers). There is no need to speculate about what the Board might have thought. There is a transcript of that hearing, that transcript is in the record, and it shows that the Board considered none of the things the City's attorneys now suggest it "might have" weighed. *See generally* Bargil Decl. Ex 11. Nor would it have been appropriate for members of the Board to have separately agreed to consider those factors. *See Massey v. Charlotte Cty.*, 842 So. 2d 142, 147 (Fla. 2d DCA 2003) (explaining that it violates due process to consider evidence where an accused code violator has not had the opportunity to respond to it); *see also Kupke v. Orange Cty.*, 838 So. 2d 598, 599 (Fla. 5th DCA 2003) (same).

In the end, the City's argument that Jim is a lout who "thinks very little of his obligation to maintain the property or comply with *any* local government[] ordinances" is far from "abundantly clear." Defs.' MSJ Br. 21. Rather, the evidence showed that Jim never had a tall-grass offense or complaint after his 2015 case, and this matter arose as the result of the unexpected death of Jim's lawn man while Jim was away. Jim Decl. ¶¶ 14–19. But rather than

address these facts, the City posits that Jim is dishonest and manipulative, and that $30,000 in fines and the loss of his home is what he deserves. This Court should reject that argument.

(ii)   <u>Under the appropriate analysis, Jim's fines are excessive.</u>

Under the four factors that the Board could have lawfully considered, *see* Fla. Stat. § 162.09(3); DCO 22-80(a), the triviality of Jim's offense—and thus the excessiveness of the City's severe fines—is obvious. The City strains to make Jim's tall grass sound like a grave offense. But the City's arguments fail because tall grass is, well, tall grass. And tall grass is not a serious violation. *See* Pls.' MSJ Br. 14–15, 18–19. Indeed, while the City offers that tall grass might hold "rats, mice, and vermin," Officer Colbert testified that there were none of these things on Jim's property. Colbert Dep. 103:20–104:11.[7]

The record establishes, unremarkably, that tall grass is not a serious offense. And contrary to the City's assertion, that is not merely Jim's "subjective" opinion about the perils of tall grass. Defs.' MSJ Br. 20. The City's own witnesses have said as much. *See* Pls.' MSJ Br. 14–15, 18–19. That is why a fine of $500 (especially when it is a violator's first-ever fine) for tall grass is highly atypical, if not entirely unprecedented. *Id.* And the unprecedented nature of the fines is part of what makes them "excessive." *Bajakajian*, 524 U.S. at 335 ("Excessive means surpassing the usual, the proper, or a normal measure of proportion."). As the following section explains, the City does not (because it cannot) identify a case that legitimizes such unprecedented fines.

The City likewise strains to characterize Jim as an absentee resident, asserting that "the Lady Marion property is effectively abandoned much of the time." Defs.' MSJ Br. 20. Yet the

---

[7] Nor is there any indication that the Board levied a first-time fine of $500 per day because it was especially gripped by Jim's 2015 tall-grass case or previous warnings. If that were true, the Board would impose $500 daily fines for all residents with repeat violations for tall grass, which is something it almost never does. Pls.' MSJ Br. 14–15.

10

only "evidence" the City can muster on this score is a bare-bones affidavit from a realtor who saw the property only once and insists she hardly remembers anything at all. *See supra* n.4. Even then, the City embellishes Ms. Mendez's limited testimony. Defs.' MSJ Br. 20. Ms. Mendez never testified that the property was abandoned. All she said was that in the one instance she saw Jim's home—incidentally during "the late summer of 2018," when Jim was out of town and his lawn man died—it looked "unkempt" and "did not appear to be occupied."[8] This does not make a $30,000 fine for tall grass a proportionate penalty.

>          (iii)  <u>The City's argument that a foreclosure is not a fine lacks merit
>                 and, as the City admits, has no basis in the law.</u>

The City argues that its impending foreclosure of Jim's home is merely an administrative act that "serves to remediate" and thus "is not designed to punish." Defs.' MSJ Br. 21–22. To be sure, the City has not argued that the *monetary* fine imposed against Jim is not a penalty subject to Eighth Amendment scrutiny. Nor could it, given its admission that the partial purpose of code enforcement fines is "to punish people for breaking the law." Kepto Dep. 68:6–17.

The apparent premise of the City's argument is that, because Jim could not afford to pay, the City had to secure two liens on his property, and now it intends to collect on those liens by foreclosing on Jim's home. According to the City, at some point in this process—during which the consequences for nonpayment escalated dramatically—the penalty became unchallengeable. But it is irrelevant whether the City is collecting cash or auctioning Jim's house on the courthouse steps to satisfy the fines. The Supreme Court has acknowledged that "[t]he Excessive Fines Clause limits the government's power to extract payments, whether in cash *or in kind*, 'as punishment for some offense.'" *Austin v. United States*, 509 U.S. 602, 609–10 (1993) (emphasis

---

[8] Attached to this brief is a photo of the property during its "worst" stage of offense. Bargil Resp. Decl. Ex. 3.

added and omitted) (citation omitted); *see also Bajakajian*, 524 U.S. at 328 ("[P]ayments in kind [] are thus 'fines' if they constitute punishment for an offense.").

The fine is a punishment. The lien is a punishment. And the foreclosure is a punishment. None of these is immune from Eighth Amendment scrutiny because of where it falls in the enforcement and collections sequence.[9] Nor does it matter that the foreclosure—or the underlying fine of $30,000—is an aggregation of daily fines. This is particularly true here, where the City's inaction caused the fines to accrue. *See Colorado Dep't of Labor & Emp. v. Dami Hospitality, LLC*, 442 P.3d 94, 104 (Colo. 2019) (explaining that aggregate fines should be considered where government inaction leads to a large fine because "to focus on the daily amount instead of the total fine [one] must pay renders the entire constitutional analysis an exercise in futility") (Samour, J., concurring in part and dissenting in part); *People ex. rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 124 P.3d 408, 422 (Cal. 2005).

> (iv)   <u>The City's position, if accepted, would amount to a massive expansion of its power to fine.</u>

The City argues throughout that courts "have uniformly upheld as constitutional daily accruing fines falling within the range set forth by the applicable legislative body." Defs.' MSJ Br. 19. But the cases the City cites do not hold that the fines were constitutional because they were within statutory limits. They hold that the fines were constitutional because they were *proportional* within those limits, as *Bajakajian* and other cases demand.

---

[9] Liens and foreclosures have been challenged as excessive fines in many cases. *See, e.g.*, *Wilson v. Cty. of Orange*, 881 So. 2d 625 (Fla. 5th DCA 2004); *Ft. Lauderdale v. Ilkanic*, 683 So. 2d 563 (Fla. 4th DCA 1996); *Lindbloom v. Manatee Cty.*, No. 8:18-cv-02642-T-02AEP, 2019 WL 2503145 (M.D. Fla. June 17, 2019); *United States v. Dubose*, 146 F.3d 1141 (9th Cir. 1998); *Jensen v. Cty. of Sonoma*, No. C-08-3440 JCS, 2010 WL 2330384 (N.D. Cal. June 4, 2010); *Ebert v. Twp. of Hamilton*, No. 15-7331, 2018 WL 3772677 (D. N.J. Aug. 9, 2018); *Zaklama v. City of Bayonne*, No. 06-cv-1951 (PGS), 2007 WL 1234973 (D. N.J. Apr. 26, 2007); *Laskey v. Baltimore*, No. CCB-08-3228, 2009 WL 909524 (D. Md. Apr. 1, 2009). None of these cases held that a lien or foreclosure is not subject to review for excessiveness.

The City does not (because it cannot) cite a case that involves fines as severe as those here, either in terms of their single-day amount or their pace of accrual. In other words, all the cases the City cites involve small fines that accrued over much longer periods of time— sometimes more than a decade. In *Moustakis v. Fort Lauderdale*, 338 Fed. App'x 820, 821 (11th Cir. 2009), for example, the Moustakis family faced severe aggregate fines, but only after ignoring $150 daily fines for *14 years*. In *915 SLR LLC v. Altamonte Springs*, No. 6:13-cv-1630, Orl-31DAB, 2014 WL 3809127, at *2 n.1 (M.D. Fla. Aug. 1, 2014), a case on which the City relies, though it contains very little analysis, the fine was only $100 per day. In *Marfut v. North Port*, No. 8:08-cv-2006-T-27EAJ, 2009 WL 790111, at *7 (M.D. Fla. Mar. 25, 2009), the fines were $25 and $50, accrued over a period of two years, and "merely accumulated due to Plaintiff's failure to remedy the violations." And in *Conley v. Dunedin*, No. 8:08-cv-01793-T-24-AEP, 2010 WL 146861, at *5 (M.D. Fla., Jan. 11, 2010), the City succeeded in a fine/foreclosure action like this one, except the case involved "small fines" (of $50 and $100) for two "small offense[s]" that the property owners knew about, but ignored, for three years. None of these cases compel this Court to find that a maximum fine for tall grass, which rapidly accumulated to roughly $30,000 over seven weeks without the homeowner's knowledge, is constitutional. To the contrary, they reaffirm what courts have consistently said about fines—proportionality matters.

None of these cases are binding authority anyway.[10] Nor are they even analogous given the nature of the fines in this case. Indeed, to accept the City's argument would substantially expand the municipal power to fine. The cases above simply suggest that a locality may pursue

---

[10] All of these cases—which the City characterizes as "the most persuasive"—are also unpublished. And "[u]npublished opinions are not considered binding precedent." 11th Cir. R. 36-2.

legal remedies after years of intentional inaction by a property owner in defiance of small fines. In this case, however, the City asks this Court to sanction maximum fines, imposed over a brief period, without the knowledge of the homeowner. This perhaps explains why the City's Attorney recognized this case as a chance to "make good law." Dunedin City Comm'n Work Session, May 2019 minutes 19-26, https://tinyurl.com/y8up3s6p. But agreeing with the City does not "make good law" at all.

     **B.**     **THE CITY'S FAILURE TO NOTIFY JIM THAT HE WAS BEING FINED VIOLATED JIM'S RIGHT TO DUE PROCESS.**

     The City argues that the process it followed—in which it visited Jim twelve times to track noncompliance without providing him notice he was being fined—was legitimate. And if Jim had any issue with the practice, the City argues, then he should have just appealed. The City's position, however, is incorrect for two reasons. First, the City's lack of notice violated due process. And second, Jim was not required to appeal because the due process violation occurred long before the case got to the Board, and any appeal would have been futile anyway.

     **1.**     **The City never provided Jim notice that he was being fined, and the mere possibility of an appeal does not fix that.**

     It is not disputed that the first time the City provided formal notice to Jim that he had been fined was in a letter dated August 22, 2018—nearly seven weeks after the fines began. As discussed throughout, this inaction violated the express terms of DCO 22-79(a) and conflicts with any reasonable reading of Chapter 162. *See* Pls.' MSJ Br. 23. Still, the City asks this Court to ignore that delay, and instead accept that its notice obligation was not triggered until a hearing to calculate the fines was set. *See id.* at 11. Even absent the City's violations of its code and state statute, such a practice violates due process. Indeed, the "[e]lementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not

only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996). But the City provided Jim with notice of neither of these things; it waited seven weeks to advise Jim he was being fined and only described his possible fine as a "big bill." In fact, not only did the City not advise Jim that he was being fined, but in Jim's 2015 hearing, it disavowed that it would impose such a severe punishment if he ever was. Pls.' MSJ Br. 8.

And in 2018, when the City imposed $500 daily fines against Jim, it notified him only after weeks of quietly running the fines without his knowledge. Colbert Dep. 117:25–118:19 (Officer Colbert explaining that he spent weeks photographing Jim's house); Bargil Decl. Ex. 9 at 19-4 (City Attorney explaining that "the fine begins to run on the day of the inspection of the property" because "[t]hat is the way it has been treated for 30 years").[11] The City stresses that Jim received notice of the *hearing*, Defs.' MSJ Br. 22–23, but such notice is distinct from notice of the fines. The Supreme Court has made clear that this behavior violates due process. *See BMW of N. Am.*, 517 U.S. at 574 n.22 ("[T]he basic protection against '*judgments without notice*' afforded by the Due Process Clause . . . is implicated by civil penalties.") (quoting *Shaffer v. Heitner*, 433 U.S. 186, 217 (1977) (Stevens, J., concurring in judgment) (emphasis added and omitted). Here, the City's daily fines—which were imposed and accrued without notice to Jim— are thus "judgments without notice."

But the City wants this Court to ignore its misbehavior. It insists that the fault for Jim's predicament lies squarely with Jim because he supposedly "opted" not to attend the Board's 2018 hearing and "failed to avail himself of the full procedures provided by state law." Defs.' MSJ Br. 23–24. But the City's basic position—"Jim did not do every single thing possible to

---

[11] Thus, should the City argue that the daily fines did not officially accrue until the Board supposedly decides them, such an argument is belied by the record.

defend against our extralegal conduct, so we win"—cannot be squared with Jim's right to due

process. *See M.A.K. Inv. Grp. v. Glendale*, 897 F.3d 1303, 1312 (10th Cir. 2018) ("But while it is

true M.A.K. could have attended the City's hearing . . . 'a party's ability to take steps to

safeguard its interests does not relieve the State of its constitutional obligation.'") (quoting

*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 (1983)). To the contrary, the City had to

at least do *something* to let Jim know he was being fined. *See M.A.K.*, 897 F.3d at 1312 ("When

in the absence of notice, property owners are likely to lose a property right—in a cause of action

or otherwise—the *Mullane* rule applies.") (citing *Mullane v. Cent. Hanover Bank & Trust Co.*,

339 U.S. 306, 314 (1950) (explaining that a party is entitled to "notice reasonably calculated,

under all the circumstances, to apprise interested parties of the pendency of the action")). In plain

terms, Jim's money and property were in jeopardy, and the City had to tell him that. It did not.

Even the cases cited by the City do not support the notion that Jim should have (or even

could have) appealed every aspect of the City's code enforcement scheme. Defs.' MSJ Br. 24–25

(citing *Deerfield Beach v. Vaillant*, 419 So. 2d 624 (Fla. 1982); *Lindbloom v. Manatee Cty*., No.

8:18-cv-02642-T-02AEP, 2019 WL 2503145, at \*4 (M.D. Fla. June 17, 2019)). For example, in

*Lindbloom*, the court explained that an appeal is limited to "the record created before the code

enforcement board." *Lindbloom* at \*5. But the City's unlawful conduct predates the Board

hearing, where Jim was prevented from creating a record anyway. *See Kupke*, 838 So. 2d at 599

("[D]enial of an opportunity to present evidence violate[s] . . . due process . . . ."). *Vaillant* does

not support the City's position either. The case that *Vaillant* affirms provides, just like

*Lindbloom*, that the question of "whether procedural due process is accorded," Defs.' MSJ Br.

24, must focus on the process provided *by the Board*, and not on the City's conduct preceding

the hearing. *See Deerfield Beach v. Vaillant*, 399 So. 2d 1045, 1046 (Fla. 4th DCA 1981)

16

("[A]ny such review by the Circuit Court centers around whether or not the Civil Service Board
. . . [p]rovided procedural due process . . . .").

### 2. The mere existence of an appellate mechanism does not mean that Jim is barred from filing this action.

The City also argues that Jim cannot challenge the City's due process violations because
he has failed to exhaust his administrative remedies. Defs.' MSJ Br. 24–25. But to begin, the
Supreme Court has held time and again that exhaustion is not required for section 1983 claims.
This Court could (and should) end its inquiry there.

The City's exhaustion arguments also fail for two more reasons. First, the mere fact that
Jim theoretically could have appealed the Board's ruling does not change the fact that the entire
process was infected by the City's failure to provide proper notice. And second, it is simply not
the case that Jim could have raised his excessive fines challenge on appeal. A critical component
of the fines' excessiveness—the impending foreclosure—was yet to occur. And Jim would have
been foreclosed from presenting the bulk of his case anyway, largely because the City's conduct
made an appeal impossible. Each argument is addressed below.

(i)   Exhaustion is not required because this is a section 1983 case and
the procedural due process violation was already complete when
the City failed to provide notice.

The Supreme Court has reaffirmed—repeatedly and unequivocally—that "the settled rule
is that exhaustion of state remedies is *not* a prerequisite to an action under 42 U.S.C. § 1983."
*Knick v. Twp. of Scott, Pa.*, 139 S. Ct. 2162, 2167 (2019) (emphasis in original) (citation
omitted); *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 500–01 (1982) ("[T]his Court
has stated categorically that exhaustion is not a prerequisite to an action under § 1983, and we
have not deviated from that position . . . ."); *see also Marfut*, 2009 WL 790111, at *6 (rejecting
that an Eighth Amendment claim was barred for failure to raise the argument "during the [Board]

17

proceedings or on appeal"). This alone resolves whether Jim had to exhaust his administrative remedies.

In any case, this Circuit has already recognized that a procedural due process claim is not barred on exhaustion grounds "where a due process violation is *already complete*" because the plaintiff "did not receive 'all the process due.'" *Galbreth v. Hale Cty., Ala. Comm'n*, 754 Fed. App'x 820, 828 (11th Cir. 2018) (emphasis added) (citation omitted). This Circuit has also acknowledged—as *Lindbloom* and *Vaillant* suggest—that exhaustion is only a bar to later relief if a party has "suffered a procedural deprivation *at his administrative hearing*." *Galbreth*, 754 Fed. App'x at 828 (citation omitted). And given that the City's unconstitutional treatment of Jim began long before his case came before the Board, the City is not entitled to summary judgment simply "because he failed to [appeal that Board decision] in state court prior to filing suit." *Williams v. Morris, Ala.*, 2:18-cv-01307-AKK, 2019 WL 2058716, at *6 (N.D. Ala. 2019) (denying the city's motion for summary judgment) (citing *Enter. Fire Fighters' Ass'n v. Watson*, 869 F. Supp. 1532, 1541 (M.D. Ala. 1994)); *see also Galbreth*, 754 Fed. App'x at 828 (holding that a procedural due process claim is not barred if a party did not receive "all the process due under *Loudermill*") (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) (explaining that "[a]n essential principle of due process is that a deprivation of life, liberty, or property [must] be preceded by notice . . . .")). Because the deprivation here was not preceded by notice, the requirements of *Loudermill* were not met, and thus Jim was not required to exhaust.

The City ultimately rests on *Conley*, in which the City successfully did to the Conley family what it is trying to do to Jim now. Defs.' MSJ Br. 25. But as *Lindbloom* and *Vaillant* instruct, the Conleys' claims were barred precisely because their claims challenged the Board's conduct in its review of their specific case. *Conley*, 2010 WL 146861, at *6 (challenging, among

other things, the denial of a continuance). Jim's due process claims, on the other hand, relate to

the City's *officers*' conduct that occurred long before the matter ever reached the Board. So in

the Conleys' case, an appellate court *could have* remedied whatever procedural errors the Board

made. Jim's case, however, is more analogous to *Galbreth* and *Williams*, in that the procedural

due process errors *preceded* the Board's review. For Jim, unlike in *Conley*, there is no appellate

mechanism that can go back in time and provide Jim with the notice to which he was entitled

under Chapter 162 and DCO 22-79(a) *before* his case reached the Board.

> (ii)    Exhaustion is not required because the City's inaction caused Jim
>         to miss his deadline for appealing and any appeal would have been
>         futile given the City's underlying conduct.

The City hardly acknowledges that Jim did in fact try to obtain post-adjudicatory relief.

Justifiably "gobsmacked" by the severity of the fines, *see* Defs.' MSJ Br. 4, Jim asked the Board

to reconsider his fines. *Twice*. But by the time the Board finally heard (and rejected) Jim's

request, *see* Defs.' MSJ Br. 11; Bargil Decl. Exs. 10, 11, his 30-day deadline to appeal the

Board's underlying ruling had lapsed and he lost his ability to seek appellate review. *Palm Bay v.*

*Palm Bay Greens, LLC*, 969 So. 2d 1187, 1189 (Fla. 5th DCA 2007). Had the City not delayed

its action on Jim's request, Jim would have had the time to appeal the Board's ruling. Even then,

however, a major event in this case—the foreclosure—would not yet have occurred.[12]

The City's position that Jim should have appealed the Board's ruling also raises a

separate question: What, exactly, was Jim supposed to argue in this appeal? Jim was denied the

chance to make his record. He all-but begged the Board to give him a continuance, but his

requests (three of them) were rejected. Jim had neither the opportunity to confront Officer

---

[12] Of course, had Jim *not* pursued a fine reduction before the Board before filing an appeal, the City surely would
have argued that Jim's appeal must fail because he had not exhausted his administrative remedies and a foreclosure
had not yet materialized. *See, e.g.*, City MTD Br. (ECF 24) 17–18.

Colbert nor to mount a basic defense. And then his request for rehearing on the fines was denied, with Jim present but prohibited from speaking. Bargil Resp. Decl. Ex. 4, Dunedin Code Enf't Bd., Nov. 2018 Tr. 3:10–5:12, 10:22–11:6. Any appeal from the Board's ruling would have been confined to this biased record. *See* Fla. Stat. § 162.11. And certiorari review of that decision is subject only to a "miscarriage of justice" standard of review. *See Haines City Cmty. Dev. v. Heggs*, 658 So. 2d 523, 527–28 (Fla. 1995) (citations omitted).

The notion that Jim could have emerged victorious if only he had appealed the Board's ruling in state circuit court is pure fantasy. With no record, any appeal from the Board's ruling would not have been sufficient "to correct whatever deficiencies exist and to provide [Jim] with whatever process [was] due." *Lindbloom*, 2019 WL 2503145, at *4. That is because both excessiveness and due process are fact-dependent inquiries. *See Conley*, 2010 WL 146861, at *6 (noting that a successful due process claim requires actual "*evidence* that the City denied [a plaintiff] notice and an opportunity to be heard"). To suggest, as the City does, that Jim could have litigated these issues—and won, no less—without the benefit of a record is to deny the basic realities of appellate litigation. Indeed, "at least one court has held that a property owner is prohibited from challenging the factual findings" of the Board. *Massey*, 842 So. 2d at 145 n.2 (citing *Kirby v. Archer*, 790 So. 2d 1214 (Fla. 1st DCA 2001)). An appeal under these circumstances would have been "futile." *Monroe Cty. v. Gonzalez*, 593 So. 2d 1143, 1145 (Fla. 3d DCA 1992).

## IV.    CONCLUSION AND REQUEST FOR ORAL ARGUMENT

Based on the foregoing, Jim respectfully requests that this Court deny the Motion and enter summary judgment for Jim. The undersigned requests oral argument on the motions, estimated at fifteen minutes per side, to provide further clarification to the Court.

Respectfully submitted this 24th day of April 2020.

By:   /s/ Ari S. Bargil
Ari S. Bargil (FL Bar No. 71454)*
INSTITUTE FOR JUSTICE
2 S. Biscayne Boulevard, Suite 3180
Miami, FL 33131
Tel: (305) 721-1600
Fax: (305) 721-1601
Email: abargil@ij.org

*Trial Counsel


Andrew H. Ward (NY Bar No. 5364393)**
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: andrew.ward@ij.org

**Admitted Pro Hac Vice

Counsel for Plaintiffs

21

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of April, 2020, a true and correct copy of

*Plaintiffs' Opposition to Defendants' Dispositive Motion for Summary Judgment and*

*Incorporated Memorandum of Law* was filed with the Clerk of the Court using the CM/ECF

system, which will send a notice of electronic filing to the following CM/ECF participants:

Jay Daigneault
Randy Mora
TRASK DAIGNEAULT, L.L.P.
1001 S. Ft. Harrison Avenue, Suite 201
Clearwater, FL 33756
Email: jay@cityattorneys.legal
        randy@cityattorneys.legal
        nanette@cityattorneys.legal

*Counsel for Defendants*

/s/ Ari S. Bargil
INSTITUTE FOR JUSTICE