# EXHIBIT D

*Declaration of Ari S. Bargil*
*in Support of Plaintiffs' Unopposed Motion for Leave*
*to Supplement the Record on Summary Judgment with Additional Exhibits*

Interrogatory No. 4: Identify each instance since January 1, 2015, in which Dunedin mowed a property owner's lawn and billed the property owner, and explain the process by which Dunedin typically takes such actions, including how Dunedin decides whether to mow someone's lawn, the typical cost of a mowing, the frequency of mowing at a particular property, etc.

**Response: Consistent with the Court's denial of Plaintiffs' Motion to Compel a response to this interrogatory at the hearing held on May 6, 2020 and subsequent order, the Defendants restate their objection to this request, without supplement.**

Interrogatory No. 6: Identify and explain what, if any, evidence Dunedin has of any negative effects of overgrown lawns, including possible negative effects on surrounding property values, neighborhood aesthetics, and human health.

**Response: As required by the Court, in its order following the May 6, 2020 hearing on Plaintiffs' Motion to Compel, the Defendants hereby supplement their response to this interrogatory concerning the effects of overgrown lawns the code enforcement board relied on when considering the gravity of Plaintiff's violation(s) in 2018.**

**In addition to the Defendants' supplemental response to Request to Produce No. 5, the Code Enforcement Board has heard testimony from code enforcement staff that there are instances where properties have had rats or vermin present as a result of tall grass. Further, when the grass on a residential property is overgrown it gives the impression that a property may be abandoned. Abandoned properties can and do invite illegal or nuisance activities including vandalism, and the Code Enforcement Board has heard testimony concerning same.**

Interrogatory No. 7: For fiscal years 2010 to present, explain what percentage of Dunedin's total fines and fees revenue came from code enforcement and identify the basis for this calculation.

**Response: As required by the Court, in its order following the May 6, 2020 hearing on Plaintiffs' Motion to Compel, the Defendants hereby supplement their response to this interrogatory identifying the percentage of Dunedin's total fines and fees revenue came from code enforcement only for fiscal years (1) 2010, (2) 2014, and (3) 2018.**

The responsive data is set forth in the table below:

| Fiscal Year | Code Enf. As % of all Fines | Code Enf. As % Of City Revenue |
|---|---|---|
| 2010 | 44.4% | 0.3% |
| 2014 | 75.4% | 0.5% |
| 2018 | 94.3% | 1.9% |

**The figure of code enforcement as a percentage of City fines was reached by dividing the figure by the total for all fines in each of the identified years. Similarly, the figures for code enforcement as a percentage of revenues was reached by dividing the code enforcement revenues in each year by the sum of all the City's revenues.**