1            UNITED STATES OF AMERICA
          UNITED STATES DISTRICT COURT
2               MIDDLE DISTRICT OF FLORIDA

3                    -   -   -

4          HONORABLE CHARLENE EDWARDS HONEYWELL
          UNITED STATES DISTRICT JUDGE PRESIDING

5

6   JAMES FICKEN, trustee, SUNCOAST          )
    FIRST TRUST, and SUNCOAST FIRST TRUST,   )
7                                            )
                                             )
8                   PLAINTIFFS,              )
                                             )
9               VS:                          )8:19-CV-1210
                                             )
10   CITY OF DUNEDIN, FLORIDA, and DUNEDIN   )
    CODE ENFORCEMENT BOARD,                  )
11                                           )
                    DEFENDANTS.              )
12   _____

13

              MOTION HEARING (via ZOOM)
14            TRANSCRIPT OF PROCEEDINGS
               NOVEMBER 16, 2020
15

16

17

18

19

20

21   SHARON A. MILLER, CSR, RPR, CRR,FCRR
    IL CSR 084-2617
22   FEDERAL OFFICIAL COURT REPORTER
    801 N. FLORIDA AVENUE, SUITE 13A
23   TAMPA, FLORIDA 33602

24   Proceedings recorded by mechanical stenography,
    transcript produced by computer-aided transcription
25

    UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
1    APPEARANCES OF COUNSEL:

2    ON BEHALF OF PLAINTIFFS:

3              MR. ARI SIMON BARGIL, ESQ.
               Institute For Justice
4              2 South Biscayne Boulevard, Suite 3180
               Miami, FL  33131
5              (305) 721-1600

6              MR. ANDREW H. WARD, ESQ.
               Institute For Justice
7              901 N. Glebe Road, Suite 900
               Arlington, VA 22203
8              (703)682-9320.

9

10   ON BEHALF OF DEFENDANTS:

11
               MR. JAY DAIGNEAULT, ESQ.
12             MR. RANDOL D. MORA, ESQ.
               TRASK, METZ & DAIGNEAULT, LLP
13             1001 S. Fort Harrison Avenue, Suite 201
               Clearwater, Florida 33756
14             (727) 733-0494

15

16

17

18

19

20

21

22

23

24

25


     UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION
```

1          THE COURT:  Good morning.  Is there a problem,
2   Mr. Daigneault?
3          MR. DAIGNEAULT:  There appears to be a problem
4   except I don't know what that problem is, Your Honor.
5          THE COURT:  It's not showing stop video?
6          MR. DAIGNEAULT:  It shows stop video and I'm
7   unable to stop and start it but apparently it's not --
8   it's not transmitting to you folks.  But by the way, I can
9   hear all of you I think.
10          THE COURT:  There you are.
11          MR. DAIGNEAULT:  I can't see anybody else but me.
12          THE COURT:  I can see you now.
13          MR. DAIGNEAULT:  Okay.  I can't see you, Your
14   Honor.  I can see that your iPad is there.  I can see
15   Mr. Bargil's presence and Mr. Ward's law clerk and a court
16   reporter but I can't see anybody else physically.
17          THE COURT:  Are you prepared to proceed or do you
18   want to figure out what are the technical issues and ask
19   to reschedule?
20          MR. DAIGNEAULT:  No, Your Honor, I don't think we
21   need to reschedule.  If you're not comfortable
22   proceeding -- frankly it's better to not see me.  So we
23   seem to have a good audio connection for everybody so if
24   you're comfortable proceeding that way, I certainly am.
25          THE COURT:  I'm comfortable with it.  I handle

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    telephonic hearings too, although this one is one that I

2    would not necessarily schedule telephonically just because

3    of the length of it.  As long as you're comfortable and

4    you can proceed.  I don't know what is the technical

5    glitch here this morning, but we certainly can proceed.

6        So let me go on and first just introduce the case.

7    We are here this morning in James Ficken, Trustee, et al.,

8    versus City of Dunedin, et al, case number 8:19-cv-1210.

9        Identify yourselves for the Court starting first

10   with Counsel for the Plaintiffs.

11       MR. BARGIL:  This is Ari Bargil, Institute for

12   Justice on behalf of the Plaintiff.  I'm joined by my

13   colleague this morning Andrew Ward.

14       THE COURT:  Counsel for the Defendant.

15       MR. DAIGNEAULT:  Good morning, Your Honor.  Jay

16   Daigneault on behalf of all of the Defendants as well as

17   my partner Randy Mora with the law firm of Trask here in

18   Clearwater.

19       THE COURT:  All right.  And we are here on

20   cross-motions for summary judgment which I scheduled once

21   before, but we've now had an opportunity for the

22   Plaintiffs to file their Amended Complaint which cleared

23   or corrected the issues pointed out by the Court at our

24   previous gathering and the parties requested to renew

25   their already filed motions which included, of course,

1    exhibits in support or in opposition, so with that in
2    mind, then we will proceed.  And let's see here.  It
3    doesn't really matter to me.  We can start first with
4    Plaintiffs.  They were both filed on April 10th, 2020, so
5    we'll start with Plaintiffs' dispositive motion for
6    summary judgment at Docket Entry 43.  Actually Defendants
7    was filed first.  I see his is Docket 42.  It doesn't
8    really matter.  They were filed both on the same day and
9    then we will go to Defendants' dispositive motion for
10   summary judgment, so, Mr. Bargil, you may proceed.
11        MR. BARGIL:  Good morning, Your Honor.  This case
12   asks two very simple questions.  The first is a $30,000
13   fine and the threat of losing your house for the trivial
14   code violation of having tall grass an excessive fine
15   under the Eighth Amendment.  And, second, can the
16   Government impose this sanction without ever once
17   providing you notice that you were being fined?  Because
18   the answer to both of these questions is no, summary
19   judgment in favor of the Plaintiffs is appropriate.
20        Your Honor, the critical facts in the case are
21   this:  Jim Ficken was fined nearly $30,000 at a rate of
22   $500 a day for tall grass.  Code enforcement officers
23   identified the violation and rather than advising Jim that
24   his grass was too tall or telling him that he was being
25   fined, they tracked the violation, photographed it,

1    recorded it and left.  All tolled this went on for nearly

2    two months.

3           Your Honor, the City's position is simply that Jim

4    was not entitled to notice that he was being fined because

5    he was ruled to have had tall grass once in 2015.  That

6    position is wrong.  Jim was entitled to notice and in

7    failing to provide it, the City violated its own

8    ordinances and State law.  This is a violation of Jim's

9    right to due process and it lead to the imposition of

10   constitution -- unconstitutionally excessive fines.

11          THE REPORTER:  Mr. Bargil, can you slow down a

12   little?

13          MR. BARGIL:  Yes, ma'am.  Absolutely.  I

14   apologize.

15          Your Honor, I think some context on the dates

16   might be helpful here, and there are two very important

17   ones.  The first is July 5th, 2018, and that was where the

18   violation was first observed on Mr. Ficken's property and

19   that's when the fines began.

20          The next important date is August 20th.  That's

21   the date of the very first interaction that Jim had with

22   the code enforcement officer in this case.  That's when

23   Officer Colbert came by his property and told him you're

24   going to get a big bill from the City.  So Jim's notice

25   came a month and a half after the violation was first

1    observed.

2         Now, Jim then went and bought a new lawnmower and

3    he cut his grass within a day, but by then the damage was

4    done.  Jim owed over $20,000 at that point.  All these

5    dates, Your Honor, are included in a timeline which is

6    Exhibit 8 to Jim's declaration in support of summary

7    judgment and that includes a helpful info-graph that shows

8    the height of the grass at its tallest point.

9         Your Honor, I think the timeline is critical to

10   understanding the due process arguments.  And first thing,

11   I'd like to start with the applicable ordinance and

12   statute because the City violated both here.  The City's

13   own ordinance says that a fine for a repeat violation may

14   accrue, quote, *"for each day the repeat violation*

15   *continues past the date of notice to the violator of the*

16   *repeat violation."*  In other words, it's a daily fine once

17   you're made aware of the condition, and that's Dunedin

18   Code of Ordinances 22-79(a).

19        Compliance with the ordinance didn't happen here.

20   Instead, the City observed the violation on Jim's property

21   for a total of nearly two months and they didn't tell him

22   about the possibility of being fined until after he owed

23   over $20,000.  Now, were that not enough, here's what the

24   State statute says, quote, "if a repeat violation is

25   found, the code inspector shall notify the violator."

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    That's Florida Statute 162.06, Subsection 3.

2         Now, the City's argument is apparently that it

3    doesn't need to follow its own ordinances and that it

4    technically complied with State statute because the State

5    statute doesn't say precisely when they need to notify the

6    violator that they're being fined.  Your Honor, that's

7    just wrong as a matter of law.  As for the statute, both

8    State and Federal courts in Florida have said that any

9    procedural gaps in Chapter 162 are to be filled in

10   applying, quote, *"the common sense principles of due*

11   *process."*  That's the Ciolli v. Palm Bay Case.  That's a

12   50 DCA case from 2011, and in the Eleventh Circuit it's

13   Kupke v. Orange County.  That's a 2008 case.

14        Your Honor, this is not an instance where the

15   common sense principles of due process were applied, and

16   the on-point Federal case law here also says that notice

17   must precede fines.  And I think a good place to start is

18   the MAK Investment Group case that we cite on Page 14 to

19   16 of our brief because I think it provides really

20   excellent guidance here, and that case very pointedly says

21   as follows:  When in the absence of notice, property

22   owners are likely to lose a property right and a cause of

23   action or otherwise the Mullane rule applies.  And what

24   that means in its reference to the Mullane rule is that

25   parties are entitled to notice reasonable under the

1    circumstances when a property interest is at stake.  In

2    this case clearly Jim had a property interest at stake.

3    He was going to be fined $500 per day and, in fact, was

4    being fined $500 per day without his knowledge.

5         Now, what does notice reasonable under the

6    circumstances look like?  Well, we can look to the

7    ordinance.  The ordinance actually tells us what the City

8    is supposed to do when it observes a repeat violation.

9    It's supposed to tell the violator, hey, you have got this

10   condition on your property and we're going to start fining

11   you, and that's not what happened here.  But his property

12   was on the line the instant that the violation was first

13   observed, and the City didn't say anything and instead

14   they quietly observed the violation, they ticked off fines

15   on a daily basis.  Seemingly a dozen times they made these

16   visits to his property and none of those times did they

17   advise Jim that he was being investigated or that he was

18   being fined $500 per day.

19        Now, Your Honor, you could easily end the inquiry

20   right here and find that because of the due process

21   violation the fines against Jim are void and

22   unenforceable.  But even if we were to set aside the fact

23   that the process violated State and local law and was

24   unconstitutionally insufficient, the fines imposed are

25   plainly unconstitutional because $30,000 is grossly

1    disproportionate to the offense of tall grass.

2         And that brings us to our Eighth Amendment

3    argument.  Your Honor, the first and best place to look

4    for consideration of what our excessive fines arguments

5    require this Court to do is the U. S. Supreme Court's 1998

6    decision in Bajakajian where the Court's -- where the

7    Court then identified a series of factors that lower

8    courts should consider in weighing whether or not there's

9    been an Eighth Amendment violation and that essentially is

10   the consideration of whether or not a fine is grossly

11   disproportionate to the offense.

12        The first factor that Your Honor should consider

13   is whether or not Jim falls within the class of persons

14   whom $500 fines are principally directed.  Plainly, Your

15   Honor, Jim is not the reason why $500 daily fines exists.

16   These weren't structural violations.  Nobody's health was

17   at risk and Jim had no notice of the condition.  And as

18   the ordinance points out, that's who these violations are

19   for, people who are aware of the problem and they do

20   nothing, and all of the cases that the City cites support

21   that position because in nearly all of those scenarios you

22   have people who are aware that they were facing fines and

23   yet did nothing and then later on brought these cases into

24   court.  $500 a day, your Honor, or $500 fine, Your Honor,

25   it should be noted is the fine for barreling through a

1      school zone at 60 miles an hour.  That's not Jim.  Jim is

2      somebody who let his grass get too tall.

3              THE COURT:  How does the fact -- Let me stop you

4      there, Mr. Bargil.  How does the fact that he was a repeat

5      offender, though, play into the $500 assessment?  So this

6      was not the first time that the City had cited or had

7      contact with the Plaintiff in this case because of the

8      overgrown grass on his property.

9              MR. BARGIL:  That's right, Your Honor, it wasn't

10     the first time.  The class fit as a repeat violator

11     matters certainly for purposes of the type of notice to

12     which he was entitled under the city's ordinances, whether

13     he was supposed to have a period of time to correct the

14     violation, which he isn't and, you know, we admit that in

15     our briefing, but what can't happen is what happened here

16     where the City begins fines without providing notice.

17              Now, on the question of how that plays into the

18     excessiveness of the fine, I think Bajakajian really

19     supplies a pretty straightforward answer here.  Footnote

20     12 of Bajakajian, they reject the very similar argument

21     that was presented by the Government in that case where

22     the Government said, Your Honor's -- you know, this is a

23     case involving somebody who was --

24              THE COURT:  Slow down a little bit.

25              MR. BARGIL:  I'm sorry.  The Supreme Court in

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    Bajakajian footnote 12 considered this same argument and

2    there they said we're not going to consider a separate

3    criminal charge that arose out of the same course of

4    conduct, and the explanation they gave there, and I'd like

5    to quote it, is that the nature of the offense was not

6    altered by the circumstances surrounding it because,

7    quote, *"a single willful failure to declare the currency*

8    *constitutes the crime, the gravity of which is not*

9    *exacerbated or mitigated by another alleged offense."*

10        So I think that pretty squarely addresses the

11   question here of whether this Court should be considering

12   other violations.  Certainly those violations weren't in

13   front of the Code Enforcement Board when they determined

14   what fine to levy.  And as Bajakajian suggests, it's

15   probably not appropriate for the Court to consider that

16   here.

17        I think it's also worth mentioning, Your Honor,

18   that while he had been cited in the past, he had never

19   been fined before and this was the first instance of a

20   tall grass violation since he was actually found to be in

21   violation of a 2015 case, so this is an instance of

22   somebody who had been compliant in the period of time

23   since the last violation.  And certainly, Your Honor, you

24   know this plays into and links to the next consideration

25   under the Bajakajian factor which is what are the other

1    penalties authorized?  What else could the City have done

2    here before moving to the maximum fine allowed by State

3    law?

4         Nobody here is arguing that the City could not

5    have fined Jim, but they could certainly have fined him

6    far, far less.  What they couldn't have done is fined him

7    anymore.  That would have been illegal, but both code

8    enforcement officers told us that this was an

9    unprecedented fine.  This is a common violation and an

10   unprecedented fine.

11        Officer Colbert in his deposition had no memory of

12   a fine like this for tall grass.  And Officer Kepto

13   testified that he could only remember one scenario in

14   which somebody received a $500 fine for tall grass and

15   that was a case involving a woman who wanted to turn her

16   property into a wildlife refuge, and there was concern for

17   neighbors that coyotes were eating neighborhood cats and

18   dogs and that was the only other instance where there was

19   a $500 fine.  Weighing this against the other possible

20   fines that the City could have issued here I think says a

21   lot about whether or not these fines are excessive.

22        The third factor, Your Honor, is the harm caused.

23   Nobody is seriously arguing that tall grass is a threat to

24   the health and safety of the good people of Dunedin, and

25   any suggestion to the contrary is really just fanciful.

1          And, finally, Your Honor, other cases have come up

2     with other factors outside of the three outlined in

3     Bajakajian, and they've all kind of held generally that

4     there is no finite list of things that the Court ought to

5     consider, and one of those things is the culpability of

6     the parties.  Jim was somebody who was out of town when

7     his grass grew -- his lawn man died -- and when he came

8     back he was facing massive fines.  The City on the other

9     hand was well aware of the condition and they came to the

10    property over at least a dozen times to track the

11    violation and to tabulate it while Jim was unaware that he

12    was being fined by the City.

13         So considering these two things together, it

14    certainly weighs in favor of fining the excessiveness or

15    finding that the fines are excessive in light of who knew

16    what and when, and this, of course, plays a fact to what

17    the City was supposed to do under its own ordinances in

18    order to prevent all of this from happening.  Your Honor,

19    as the record shows, Jim did take action when he was

20    required to.  The City could have fined him but just not

21    in this way, and all of this could have been resolved with

22    a Post-it note to be quite frank and we probably wouldn't

23    be here.  But instead this is how the City went about

24    doing things, and as a result Jim owes nearly $30,000 for

25    tall grass.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1        Unless Your Honor has any questions, I'd like to

2   reserve a little bit of time for rebuttal.

3        THE COURT:  Not at this time.  All right.

4   Response to the Plaintiffs' motion, Mr. Daigneault.

5        MR. DAIGNEAULT:  Thank you, Your Honor.  I

6   appreciate you taking time for us this morning.  If this

7   matter could have been resolved with a Post-it note, there

8   wouldn't be 11 prior violations at this property.  It's

9   simply -- I know that this case for Mr. Ficken's part has

10  a lot of emotional appeal.  It has appeal in the media

11  which has been leveraged ad infinitum.  It has, you know,

12  this sort of visceral, oh, my gosh, the poor guy getting

13  fined for tall grass, but that does not look at the facts

14  of this case which we've explained explicitly in our

15  briefing.  Mr. Ficken simply is the precise person to whom

16  the code enforcement statutes are directed because

17  Mr. Ficken, for whatever reason, simply has not diligently

18  and consistently maintained his property.

19        Now, we can laugh and say, well, folks, it's just

20  tall grass, no one's ox is really gored here, but the fact

21  of the matter is that these ordinances are legislatively

22  imposed for a reason and to cast them aside with the ease

23  with which Mr. Ficken has done is very troubling.  Bear in

24  mind, the Amended Complaint in this case says

25  Mr. Ficken -- and Mr. Bargil has made the same argument

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    today, *"I didn't know I was being fined."* Mr. Bargil at

2    several points today said Mr. Ficken was being fined as of

3    July 5th, 2018 without his knowledge.  That's factually

4    unsupportable.  It's false.  Mr. Ficken was not and cannot

5    by law be fined unless and until he goes to the Code

6    Enforcement Board, which as Your Honor knows and

7    Mr. Bargil knows is the form in which it is determined by

8    a seven-member body in this instance whether the violation

9    existed at all and whether considering the statutory

10   factors at issue Mr. Ficken should be fined and in what

11   amount and that's precisely what happened in this case.

12          So the idea and the explicit statement that

13   Mr. Ficken was being fined before he went to a hearing is

14   incorrect.  The MAK Investment Group case out of the Tenth

15   Circuit that's cited by Plaintiffs in their briefing and

16   here this morning is distinguishable on its facts and it's

17   distinguishable on its facts because in that case the

18   statute at issue didn't require notice to property owners

19   after the City Council, the governing body, determined

20   that their property was blighted even though that base

21   determination began a clock running of 30 days which those

22   same owners had to challenge that determination, so a

23   determination was made and they never had the opportunity

24   to challenge it.  That's not what happened here.

25          A determination here was made, not by the City

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    Council and not by the Code Enforcement Board, but by the

2    Code Enforcement inspectors that a violation, a repeat

3    violation had occurred.

4         Now, Mr. Ficken -- and, Your Honor, this is

5    another reason that the case has such emotional appeal.

6    Mr. Ficken has raised at several points and leveraged the

7    fact that his mom was ill and ultimately passed away and

8    he came back and, you know, his poor lawn man passed away

9    and that lawn man was either the guy who repaired the

10   mower during his periods of absence or he was the guy who

11   actually mowed the lawn during the time that Mr. Ficken

12   was away.

13        What the facts show in the case, the facts, not

14   the emotion, what the facts show is Mr. Ficken simply

15   doesn't live here.  I'm not disputing the fact that he's

16   here from time to time, and maybe he lives here now, but

17   during the course of these events, he simply wasn't here.

18   It's important to remember that he admitted the violation.

19   We don't have a case here where Mr. Ficken's going to say,

20   wait a minute, this didn't really ever happen.  He knew

21   when he came back from South Carolina in the summer of '18

22   that his lawn was overgrown and then he began to feed the

23   Code Enforcement Board varying stories as to why that was,

24   so -- and he had the chance, not just in 2018 when he was

25   imposed this fine, but in 2015.  And the record is

1    interesting in 2015.  Well, Mr. Kepto, I can't keep the

2    lawn mowed because I can't find my lawnmower.  My

3    lawnmower is broken down.  I had a guy who used to mow it

4    but I can't find now.  I'm not sure what's going on.

5         As we approach -- as we approach the Thanksgiving

6    holiday, I'm reminded of the story that we frequently hear

7    about the Thanksgiving turkey having many excuses for why

8    he or she shouldn't be slaughtered.  I'm not suggesting

9    that Mr. Ficken be slaughtered here, but the record

10   demonstrates that there's a lot of points in time where

11   Mr. Ficken doesn't take care of his property and, hey,

12   that's his choice to do, and then he says, well, I can't,

13   I can't take care of the property because my mom is sick

14   and I'm in South Carolina.  I can't go to the hearing.  I

15   can't have somebody else appear in my place.  I can't hire

16   a lawyer, and you should give me some more time.  You

17   should continue the hearing.

18        Mr. Ficken, whatever his reasons are, simply does

19   not wish to participate in the statutorily mandated

20   process for code violation.  So this case is not like MAK

21   in terms of its -- in terms of the due process at issue

22   because not only did Mr. Ficken have the opportunity,

23   which he did not avail himself of, to take his complaints

24   about the timing of the issuance of the notice of

25   violation relative to the initial observance of the

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    violation by the code enforcement officer.  He had the

2    opportunity to take those to the Code Enforcement Board.

3    He didn't take that.  He had the opportunity to take that

4    matter to appeal.  He didn't do that.  So in terms of the

5    Federal due process claim, whether he did or he didn't is

6    not material, because to make a Federal due process claim

7    under the 14th Amendment, Mr. Ficken needs to show and

8    cannot the element of constitutionally inadequate process.

9         The fact is that Chapter 162 provides for

10   constitutionally adequate process, and the Courts that

11   have reviewed that said that it's fine.  Whether

12   Mr. Ficken opted to avail himself of that process or not,

13   the fact is that it's there, and Mr. Bargil can't tell you

14   that it's not there.  The statute says what it says, and

15   the record says what it says if he didn't do that.

16        As to the State requirement, the State's

17   requirement is a little different.  It's an exhaustion of

18   remedies, and Mr. Bargil has indicated in his briefing and

19   is confused a little bit.  I'm not arguing.  I want to

20   make clear for the record, I'm not arguing the Chapter

21   1983 -- Section 1983, pardon me, has an exhaustion

22   requirement.  I'm aware that it doesn't, but the Federal

23   claim doesn't fail on exhaustion.  It fails on the

24   required element of constitutionally inadequate process.

25        But the claim under the State constitution fails

1    because Mr. Ficken -- and this is a factual circumstance

2    that this very court has passed on in the past in the same

3    city.  You know, I guess that's a coincidence but that's

4    the fact.  The fact is that under the Florida Constitution

5    Mr. Ficken needed to exhaust his remedies under the code

6    enforcement statutes before he can bring his due process

7    claim to this court.  He didn't do that.  There's no

8    question, there's not a factual question that he didn't do

9    that and frankly it's just the end of a very long list of

10   things that Mr. Ficken didn't do relative to his

11   maintenance of this property and others.

12         Look, we can wash it away and we can laugh at it

13   and say, well, it's just some grass and we should just let

14   it go and the City could have done that.  What the record

15   makes very clear is Mr. Ficken was using the city's code

16   enforcement officers and its staff as his de facto

17   property manager and that's just not appropriate.  He lost

18   the ability to do it when -- in 2015 when he was found in

19   violation.

20         I find it really interesting in the briefing where

21   there's a complaint that Mr. Ficken wasn't -- he wasn't

22   fined before in 2015.  That's been sort of turned around

23   on the City and the Code Enforcement Board as sort of a

24   weapon.  It really should be a shield, not a sword, in

25   this case, but because what it shows is the Code

1    Enforcement Board is seeking compliance and what they have

2    in this case is a property owner who just doesn't own one

3    property.  I know we have -- the Court's been sold and so

4    have the newspapers on this narrative that poor

5    Mr. Ficken, poor Mr. Ficken.  Mr. Ficken is a real estate

6    investors who owns multiple properties, all of which have

7    had problems with compliance and maintenance and all of

8    those things, one of which he hasn't even been to in a

9    number of years, so the Code Enforcement Board in this

10   case in 2015 says, look, you know, we have 10 violations

11   where you've complied within the time set for compliance.

12   We're not going to be doing that any more because in this

13   particular one you didn't.  They could have fined him in

14   2015, they could have, up to $250.

15          He received explicit notice, explicit notice on

16   June 20 of 2015, that's the date that he received the Code

17   Enforcement Board's order from 2015 indicating to him

18   explicitly informing him that future violations within the

19   five years could result in a fine up to the statutory

20   maximum of $500.

21          So the due process arguments in this case, they

22   simply fail.  They fail on a Federal level.  They fail on

23   the State level and the case provided by Plaintiffs'

24   Counsel does not change that analysis.

25          Turning to the matter of the excessiveness of the

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1     fines.

2           THE COURT:  Well, before you go there, let me stop

3     you.  With regard to the due process violation and the

4     argument made by Mr. Bargil that the Defendant -- I'm

5     sorry, that the Plaintiff didn't have any notice of the

6     fine, the $500 fine, advise the Court of the notice that

7     Mr. Ficken received with regard to the $500 fine?

8     Mr. Bargil specifically referred to the Dunedin statute as

9     well as Chapter 162 and its provisions that includes

10    providing notice.

11          MR. DAIGNEAULT:  Mr. Ficken was advised.  There

12    was notice of repeat violation issued on August 22nd of

13    2018, and the notice provided as follows:  It advised

14    that -- and this is Exhibit 33 to Joan McHale's affidavit.

15    She's the City Code Enforcement Board's clerk.  She says

16    you're going to have a hearing.  There's been a repeat

17    violation observed and it was sent with a notice of

18    hearing of repeat violation.  And it says, and I quote,

19    *"If you wish to present your side of the case, you must*

20    *appear before the Code Enforcement Board on that date."*

21    And that date was September 4th, 2018.  *"Failure to appear*

22    *may result in the Board proceeding in your absence,"* and

23    ultimately he was absent and he did not appear.  *"Should*

24    *you be found in violation of the above code, the Code*

25    *Enforcement Board has the power by law to levy fines of up*

1   *to $500 a day against you and your property.  Should you*
2   *desire, you have the right to obtain an attorney at your*
3   *own expense to represent you before the Board.  You will*
4   *also have the opportunity to present witnesses as well as*
5   *question the witnesses against you prior to the Board*
6   *making a determination."*  And that is really where the
7   rubber meets the road, Your Honor.  That's what
8   distinguishes this case from the MAK case and that's where
9   this case needs to allay the standard.  You have the
10  opportunity to question the witness against you and
11  present evidence prior to the Board making its
12  determinations so they had been told this morning that he
13  was being fined as of July 25th of 2018.  The fact of the
14  matter is he couldn't have been because those code
15  enforcement inspectors lacked the authority to issue a
16  fine.  That remains with the Code Enforcement Board based
17  on the evidence received by it.
18          Now, it's very possible, and I think perhaps even
19  likely, that the case would have turned out very
20  differently had Mr. Ficken appeared at the Code
21  Enforcement Board hearing or sent someone in his stead but
22  those are, you know, wishing doesn't make it so.  Those
23  are not the facts of our case.  But the fact is that
24  Mr. Ficken was well-advised of what the -- not just in
25  2015, but in 2018 in advance of the hearing what the

1    potential consequences were.

2          May I move on to the excessive fines analysis now,

3    Your Honor?

4          THE COURT:  Yes.

5          MR. DAIGNEAULT:  Mr. Bargil and I don't

6    necessarily disagree on the standard of proportionality of

7    fines, and it's really -- it is a proportionality

8    analysis.  The cases I think are not especially -- I don't

9    want to call them uninstructive.  They're just fact

10   specific.  Bajakajian has some place here but it

11   doesn't -- it doesn't carry the day because of the facts

12   of our case.  And Your Honor has already hit on this.

13         What Mr. Ficken desperately wants to avoid in this

14   case is the statute because the statute does say, which

15   you've already touched on, there are three factors to be

16   considered by the Code Enforcement Board in determining

17   the amount of the fine.  The first as we've discussed at

18   length is the gravity of the violation.  Here, the gravity

19   of the violation is pretty clear from Mr. Bargil's

20   argument, they think very little of the gravity of the

21   violation.  It may be low.  So let's concede that it is

22   just for the sake of argument even though it can be

23   serious at times.

24         The actions taken to correct the violation.  Well,

25   in this case, you have a shifting story from Mr. Ficken.

1    First of all, Mr. Ficken admits the violation; right?  He

2    wasn't even in town.  He wasn't in town, and so, oh, my

3    gosh, what do you do when you're not in town?  I got to

4    explain why this lawn is out of compliance again for

5    the -- you know, times exceeding a dozen over a five-year

6    period.  How do I do that?

7            Well, he tries to mow it and says his lawnmower is

8    now broken down, but, you know, he mowed part of it and

9    his stories now are all over the place.  First, Mr. Kellum

10   was the guy who repaired his mower, so Ficken called

11   Kellum to fix it but he couldn't fix it.  Apparently he

12   had passed away, but now he's the guy who used to mow his

13   lawn.  I can only speculate that that shifting story was

14   intended to convey to the Code Enforcement Board that he

15   actually had someone taking care of the lawn while he was

16   away in South Carolina.  Of course I'm speculating, but

17   what I think to me what it says is if I tell the Code

18   Enforcement Board that this guy was only going to repair

19   my mower if it broke, it suggests again strongly that I

20   wasn't trying to correct the violation.  I wasn't having

21   anybody taking care of my property.

22           So the second factor under the statute is the

23   actions taken to correct the violation, and here there

24   were virtually none.  He let the thing go.  Again, all

25   right, now, he did go out and by a new mower, right, and

1    so would have and could have been presented to the Code

2    Enforcement Board.

3         And the third factor in that statutory

4    proportionality analysis is the previous violations.  And

5    here there are previous violations, and not just -- I want

6    to point out, Your Honor, also that the Board is

7    authorized not to just consider previous violations at the

8    property, but what the statutory language is is that they

9    can consider previous violations by the violator, and in

10   this particular -- in this very, very same hearing there

11   was a violation committed by Mr. Ficken at his Highland

12   property at issue.  So those simply can't be extracted

13   from the proportionality analysis.

14        As you know, courts and bodies like this are not

15   always required to explicate on their reasoning, but those

16   are the statutory factors at issue.

17        The other thing that I wish to note about the

18   excessive force analysis is that the Eighth Amendment was

19   intended as a prescription on courts, not on legislatures,

20   and the legislative determinations are proportionality

21   should and must receive significant deference from this

22   court, and what the cases show is that when those types of

23   fines are -- they fall within those statutorily authorized

24   boundaries, that they are -- I won't say without exception

25   because that's not accurate, but they are almost always

1    found to be compliant with the Eighth Amendment.  And I

2    think I suggest to Your Honor that this case fits in those

3    class of cases where it was proportional.

4         Mr. Ficken always had, he didn't take it, but he

5    always had the opportunity to keep this property in

6    compliance and he always had, again, though, he didn't

7    take it, the ability to explain why he couldn't keep the

8    property to the Code Enforcement Board which was the

9    authority charged with issuing these fines, so with that,

10   Your Honor, I haven't anything else to add but I'm happy

11   to answer any questions that you may have.

12        THE COURT:  Plaintiff appears to argue that the

13   notice is some type of notice that should have been given

14   to him on or about I guess July 5th, 2018 when the fine

15   began to accrue, and I realize that was before there was

16   any Code Enforcement Board hearing, et cetera, but I

17   presume the argument, and I'll let Mr. Bargil clear this

18   up, but the argument is that the code enforcement

19   inspector should have perhaps left a note or something at

20   the property, something that made Mr. Ficken aware that

21   his property was accruing a fine or was subject to the

22   accrual of a fine.  Why don't you address that aspect of

23   the argument?

24        MR. DAIGNEAULT:  And, again, this is a point on

25   which Mr. Bargil and I don't think disagree, though I'm

1     sure he'll correct me if I'm wrong.  The distinction

2     between a first violation and a repeat violation within

3     the statute is that in an initial violation, the code

4     enforcement inspector is required to give the violator a

5     time -- a reasonable time to comply.  And so if you say

6     your grass is too long under our code, you have four days

7     to mow it, if you don't mow it by day five, then you can

8     go to the -- and this is exactly what happened in the 2015

9     violation.  Then you go to the Code Enforcement Board and

10    they can fine you but they may not.

11          In a repeat violation, though, it's a little bit

12    different.  The statute, as Mr. Bargil said, does say that

13    the code enforcement inspector shall notify the violator

14    of a repeat violation.  What the statute does not do,

15    though, is prescribe a specific time frame or a specific

16    time at which the violator is to be notified after the

17    observation of the repeat violation, and so that's -- I

18    think that that's what Mr. Bargil is arguing here.

19          His argument, though, is incorrectly contingent on

20    the idea that the due process violation is complete at

21    that time, so even if you accept Mr. Bargil's argument

22    that the time between the notice of violation issuing on

23    August 22nd and July 5th is somehow -- is unreasonable

24    under Chapter 162, the due process violation can't be

25    complete until he's deprived of an opportunity to

1    meaningful notice of the proceeding and an opportunity to

2    be heard, both of which he had and was provided but did

3    not take, so I don't think the Court needs to spend a lot

4    of time on the gap period because the gap period could

5    have been, whether it was one hour, two weeks or four

6    weeks or six weeks, it could have been -- it could have

7    been evaluated and adjudicated within the code enforcement

8    proceeding but it was not.

9         THE COURT:  Okay.  Thank you.  Mr. Bargil.

10        MR. BARGIL:  Thank you, Your Honor.  A couple

11   points on rebuttal.  I think to start, you know,

12   Mr. Daigneault has tried to frame this case as a decision

13   between emotional appeal, which is our position as he's

14   framing it, or the facts and the law.  And I don't think

15   that that distinction is appropriate.  Certainly I think

16   it indicates their recognition that perhaps this looks

17   bad, but let's drill down into the facts and law as

18   they've described them.

19        First of all, Your Honor, they offered a

20   distinction of the MAK case that I think is completely

21   unavailing.  He said in that case a determination was made

22   that triggered a series of events that effected the

23   property interest of the Plaintiffs in that case.  That is

24   exactly what happened here.  Somebody came to Jim's

25   property, they observed a violation and he immediately

1    became liable for fines from that point going forward.   A

2    determination was made.   Jim's property interests were on

3    the line.   Now, Your Honor --

4            THE COURT:   Let me just stop you there, though,

5    because is that correct?   Someone came to the property,

6    saw that the grass was overgrown, noted that he was a

7    repeat offender, but the fine itself is not assessed until

8    you go to the Code Enforcement Board hearing.   Isn't it

9    the Board that has the sole authority to actually

10   determine the fine and assess the fine?

11           MR. BARGIL:   Okay.   So two responses to that, Your

12   Honor.   The first is once that happened, once that person,

13   the code enforcement officer observed the violation, under

14   the City's ordinances the code inspector was required to

15   notify the violator of the repeat violation.   That didn't

16   happen here.   Okay.   But turning --

17           THE COURT:   What ordinance are you referring to,

18   because Mr. Daigneault doesn't seem to know about that

19   ordinance.   So what is that ordinance so the Court can

20   look at it?   What ordinance number -- which number are you

21   referring to?

22           MR. BARGIL:   It's 22-79(a).   I think it's telling,

23   Your Honor, that when you asked about it, he shifted to a

24   discussion of State statute.

25           THE COURT:   What does 22-79(a) say?   I know it's

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    in the record.  Just tell me.

2          MR. BARGIL:  It says the following -- It says that

3    for a repeat -- a fine for a repeat violation may accrue,

4    quote, *"for each day the repeat violation continues past*

5    *the date of notice to the violator of the repeat*

6    *violation."*

7          Now, Mr. Daigneault explained to you that the

8    first time when you asked when was notice provided, he

9    said August 22nd.  Your Honor, not only was that more than

10   a month and a half after the violation was first observed,

11   it was after Jim cut his grass and brought the property

12   into compliance.

13         Now, there's this separate suggestion that I think

14   bears discussion about, well, when as a matter of

15   technical administration is the fine actually assessed?

16   His position is, well, it doesn't happen until you go in

17   front of the Code Enforcement Board.  Your Honor, that is

18   completely belied by the testimony in this case.  This is

19   the testimony of Officer Kepto, quote, *"fines start*

20   *accruing when we first observe that it's a repeat*

21   *violation."*  This is City Attorney Trask who's the City's

22   representative in this case, quote, *"a repeat violator*

23   *does not receive the same type of notice as a nonrepeat*

24   *violator."*  When it gets to the Code Enforcement Board,

25   they are actually considering the fine retroactively to

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    the date of the inspection.

2         Again, City Attorney Trask here.  *"Fines begin to*

3    *run on the day of the inspection."*  That's the way it's

4    been done for 30 years.  There are three separate

5    instances in the record where the City Attorney, the

6    City's own representative and the City's code enforcement

7    officers actually explain an enforcement process that is

8    completely contrary to what Mr. Daigneault just described

9    here.

10        Now, their big issue in this case is that Jim has

11   these excuses, that he's a bad guy.  Nobody is saying they

12   couldn't have fined Jim.  What we're saying is when those

13   fines are assessed, he's entitled to notice.  If he

14   doesn't take any action, the fines will go day by day.

15        THE COURT:  Is assessment the same as an accrual?

16   You seem to be equating the two.  I mean, an assessment --

17   is assessment the same as an accrual?

18        MR. BARGIL:  Is it the same as a what?

19        THE COURT:  Accrual.  In other words, when the

20   fine accrues, is that an automatic assessment?  I don't

21   think it is.  Isn't -- doesn't the actual assessment --

22   isn't the assessment imposed by the Board, the amount that

23   the Board has to determine?  It's accruing.  In other

24   words, they can apply it retroactively but they could also

25   find that there was no fine.  I mean that's the purpose of

1    having the Board, this quasi-judicial entity, if you will,

2    consider the case.

3            MR. BARGIL:  I think for all intents and purposes,

4    Your Honor, it is the same.  But I would direct your

5    attention to the actual MAK case where the Court said when

6    in the absence of notice, property owners are likely to

7    lose a property right in a cause of action or otherwise,

8    the Mullane rule applies, so it almost doesn't matter

9    whether you classify it as an accrual or an immediate

10   tabulation that just gets calculated at the time of the

11   code enforcement meeting.  What matters is, look, you have

12   rights on the line as of this moment.  We need to apprise

13   you of that.  The City is under an obligation to apprise

14   people of that, otherwise this is what's going to happen.

15           Your Honor, this is not a code enforcement system

16   that reflects, although this is the city's argument, a

17   desire to obtain compliance.  If compliance is what is

18   desired, then you'll comply with your own ordinances and

19   provide people notice once you observe a repeat violation,

20   and then in that scenario, the only people who will get

21   really high fines are those who were made aware but then

22   didn't take any action, and that's actually what happens

23   in the cases that they cite in support of their fines.

24   The Moustakis case, the Conley case, the Marfut case,

25   those were all scenarios where the people who had been

1    fined were aware of the fines against them.  And so

2    there's a lot of discussion also being made about, well,

3    Jim just didn't avail himself of his rights.

4         Your Honor, I think we should talk about what Jim

5    did do.  He sent three letters to the Code Enforcement

6    Board seeking a continuance, and they said no.  He offered

7    to appear by phone, and they said no.  He asked for

8    reconsideration of the fines twice and they denied it

9    without allowing him to speak at the hearing because the

10   City has a policy of non-negotiation with repeat

11   violators.

12        So this discussion about what's available under

13   162 I think misses the fact that 162 presumes a certain

14   amount of fair play on the part of the City and its

15   compliance with its end of the bargain under 162.  162.06

16   requires that they provide notice.  162.07 says they shall

17   hear the testimony of the alleged violator, which they

18   didn't do, and, of course, 162.11, and this matters a lot,

19   Your Honor, says that the --

20        THE COURT:  Okay.  Let me stop you, again, though.

21   How can you hear the testimony of the alleged violator if

22   he doesn't appear?  I mean that's just like in court.  I

23   schedule a hearing time and somebody doesn't appear, oh,

24   well.  That doesn't mean I have to continue my hearing.

25        MR. BARGIL:  Well, Your Honor, I agree with that

1    but that -- there's a pretty big distinction between

2    someone who just doesn't show up and someone who begs for

3    a continuance because they know they're going to be out of

4    town and are not expecting that the fines will exceed the

5    cost of their flight change.

6         THE COURT:  But doesn't that -- isn't that left

7    with the Board to decide?  I mean in other words, because

8    somebody asked me to continue their case doesn't mean I

9    have to continue it.  I deny continuances all the time.

10   That means you either need to come or I'm proceeding

11   without you.  That's in the discretion of the person who's

12   making the determination, the hearing officer, if you

13   will.  In this case it was a Board, the Code Enforcement

14   Board, so I think if they provide you with a hearing and

15   an opportunity to be heard and you don't appear for

16   whatever reason, that's the risk you run for your

17   non-appearance.  I mean they don't have to accept your

18   request to continue it or reschedule it.  I don't know

19   anywhere in the law that that's required.

20        MR. BARGIL:  Well, 162 does say, you know, the

21   basic requirements of due process apply here.  And --

22        THE COURT:  That's not a due process requirement.

23   They have to provide the hearing.  That's a due process

24   requirement, but they don't have to make you come.

25        MR. BARGIL:  That's right, Your Honor.  There's

1    sort of a conflation here between the requirements of

2    Mathews which is what we're really talking about now and

3    the requirements of Mullane where I think that distinction

4    is important.  Mullane requires a certain type of notice

5    before the process that Mullane initiates begins, and that

6    process that Mullane initiates is essentially the Mathews

7    process.  And we're talking about Mathews now where this

8    is really much more of a Mullane issue.

9           Now, the testimony of the City attorney here is,

10   in fact, that Jim, for whatever this is worth, did meet

11   the criteria for getting a continuance.  And assuming that

12   the City's interested in maintaining compliance and

13   allowing the people to make their record so that they can

14   actually take up the appeal that they're saying Jim should

15   have taken up would certainly weigh in favor of allowing

16   him to appear at a later date or by phone which is what he

17   also offered, and, of course, they didn't do that and now

18   Jim according to 162 is limited to the record that was in

19   front of the Code Enforcement Board.  And I think cases

20   like Lindbloom and Massey have a great deal to say about

21   what happens when somebody isn't entitled to relief and

22   then later on -- I'm sorry -- had a lot to say about what

23   happens when somebody is accused of not meaningfully

24   participating in the appellate process but where there

25   were things that happened earlier in the 162 hearing

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    process that completely impaired their ability to take up

2    that appeal to begin with, and so --

3          THE COURT:  Well, what impaired Mr. Ficken's

4    ability to file a petition for writ of cert with regard to

5    the Code Enforcement Board's actions?  I was a State court

6    judge and we used to get them all the time when there was

7    someone that was aggrieved by the City of Tampa's Code

8    Enforcement Board proceeding, and I used to hear their

9    petitions before me.  Basically it was brought before the

10   State court judge on a petition for writ of cert.

11         MR. BARGIL:  That is the process, Your Honor, and

12   as you likely well know, once that petition for writ of

13   cert got to you, the amount of information and the

14   universe of evidence that you were allowed to consider

15   would have been completely limited to whatever was created

16   below.  Here --

17         THE COURT:  Well, it's based upon what the law

18   says, though.  That's what the law required.  In other

19   words, the law is what establishes -- that established for

20   me as a State court judge the parameters of my review.

21         MR. BARGIL:  That's right, Your Honor.

22         THE COURT:  The law requires it.

23         MR. BARGIL:  That's right, it does, Your Honor,

24   and I think Lindbloom and Massey have a lot to say about

25   when that universe of information is so deeply infected by

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    what happened below that there is nothing for a person in

2    Mr. Ficken's position to actually argue in their case.

3          I do think that makes a big distinction.  And it

4    brings us back to the original violation, the Mullane

5    violation where had Jim been made aware of these fines as

6    they were accruing, all of this would have been completely

7    different.

8          This is what Massey has to say about that under

9    the question of whether or not an appeal is required under

10   162.  It says, quote, *There remains a serious risk of*

11   *erroneous deprivation because the amount of fines imposed*

12   *and the propriety of the lien depended on factual findings*

13   *that the Masseys were never given an opportunity to*

14   *protest."*  This is -- they have the same right as

15   Mr. Ficken did, but nevertheless, the Court said they

16   didn't have the opportunity to contest them and that's our

17   contention here, but I think we --

18         THE COURT:  Where is the Massey case from?  I'm

19   not familiar with that one.

20         MR. BARGIL:  The Massey case is a First DCA case

21   from 2003.

22         MR. DAIGNEAULT:  That's a Second DCA case I think,

23   Ari.

24         MR. BARGIL:  I'm sorry.  I thought it was a First

25   DCA case, but in any case, it's an intermediate Appellate

1    Court case from 2003, but I think all of this discussion

2    is forgetting the fact that these are exhaustion

3    arguments, and exhaustion is not required for a 1983 claim

4    as a matter of black letter law according to the U. S.

5    Supreme Court.  That's something that they decided in

6    Knick very recently, reaffirming the Patsy decision from

7    around 1983, so I think we are getting a little bit too

8    far ahead of ourselves in talking about what he was

9    supposed to do.

10        There was a due process violation that occurred

11   early on that infected this entire process and an appeal

12   through Chapter 162 wasn't going to correct that, and

13   that's the main inquiry.

14        THE COURT:  All right.  Let me hear from you,

15   Mr. Daigneault, with regard to the Dunedin Code Section

16   22-79(a) which Mr. Bargil argues was the source for the

17   violation of the notice requirement.

18        MR. DAIGNEAULT:  I appreciate that, Your Honor.

19   I'm sorry.  I'll let you finish your question.  I

20   apologize.

21        THE COURT:  Because Mr. Bargil said that in your

22   earlier argument you went right to the State statute, that

23   you didn't really address the Dunedin provision with

24   regard to notice which is also something that he's relying

25   upon to argue that there was no notice.

1          MR. DAIGNEAULT:  The ordinance that he's relying

2     on hasn't to do with notice.  It has to do with the

3     accrual of the fine, and it's been applied as testified to

4     by the City Attorney for many years to indicate that the

5     fine would accrue from the date of violation indicated in

6     the notice of violation.

7          Mr. Bargil receives that as the City violating its

8     own ordinance.  I don't believe that that's supportable by

9     the language of the ordinance.  I think it's -- and even

10    if it did, Mr. Bargil hasn't told you why it would violate

11    due process and he hasn't given you a case to suggest that

12    it does violate due process.

13         There's -- there is a suggestion that the City

14    violated the ordinance based on when -- the beginning

15    point of the accruing fine and Your Honor made a series of

16    observations as to, you know, being subject to liability

17    or being imposed liability, and so the accrual date I

18    think is what he's trying to get at with the 22-79

19    argument but it doesn't change the result in this case.

20         And I'd like to also -- again, I have not argued,

21    and I've explicitly stated as clear as I can that I'm not

22    here arguing that there's an exhaustion requirement under

23    1983.  I'm aware that there's not.  I think it is very

24    clear law.

25         The exhaustion requirement applies to a Florida

1    constitutional claim here for procedural due process

2    violation.  It's a different argument in the Federal

3    claim.  It has to do with the failure of a required

4    element of the claim of the constitutionally inadequate

5    process.

6           THE COURT:  Okay.  And, Mr. Daigneault, was there

7    anything else that you wanted to argue with regard to your

8    motion?

9           And sometimes it gets a little tricky but I want

10   to make sure that I give everybody an opportunity to make

11   all arguments when I have cross motions, so we were

12   hearing the Plaintiffs' dispositive motion.  Of course,

13   the Defendant City of Dunedin and the Code Enforcement

14   Board also have a dispositive motion for summary judgment.

15          Is there anything you'd like to offer with regard

16   to your motion that hasn't been addressed?

17          MR. DAIGNEAULT:  Nothing that's not been addressed

18   other than to say I want to correct the record.  No one on

19   the City's side ever said that Jim was a bad guy or that

20   we called -- in the briefings it was alleged that we

21   called him a lout.  I didn't call him a lout.  I deposed

22   him for a good long day.  He seems like a really, really

23   nice guy.

24          The facts are that he didn't take care of his

25   property on multiple occasions.  The facts are that he was

1    given adequate and more than ample opportunity to come to

2    a hearing.  The facts are that he simply is not here.

3    Whether he's a good guy or a bad guy, what he is most

4    definitely not is a person that at least at the time

5    relevant not present in the State of Florida.  And asked

6    for continuances, yes.

7         The Conley case addressed continuance as well

8    because the legal secretary had requested continuances on

9    behalf, and, you know, said that she was assured by the

10   Code Enforcement Board clerk that the matter would be

11   continued.  It's no more availing here than it is there.

12   It doesn't make any sense.

13        The fact of the matter is if the City Code

14   Enforcement Board had to wait until Mr. Ficken was

15   available for a hearing, the fine would have been

16   $800,000.  The fact of the matter is he's just not here.

17   He's just not here.  Again, that's not a value judgment at

18   all.  It's a matter of fact.

19        We have put into evidence how many days he was

20   actually in Florida during these time frames.  The fact is

21   he lives in South Carolina.  The fact is that he -- his

22   homesteaded real property is in Clearwater, Florida, not

23   this home in Dunedin.  It's been homesteaded for almost 30

24   years.  And so the play to the emotions of the Court to

25   say that poor Mr. Ficken is going to lose his home because

1      he was treated unfairly simply doesn't withstand the

2      factual analysis or the legal analysis required in this

3      case.  I appreciate it, Your Honor.

4              THE COURT:  Mr. Bargil, anything further, sir?

5              MR. BARGIL:  Yes, Your Honor.  Just one thing to

6      add in light of the comment Mr. Daigneault offered.  The

7      question about whether there's law on the point of while

8      violating our own ordinances is a signal of a due process

9      violation, it absolutely is.  Mullane requires notice

10     that's reasonable under the circumstances.

11             There is case law from the Second Circuit, I'll

12     give you the cite, the Brody case, 434 F.3d on Page 129,

13     and there where the Court says, *"Where there is an*

14     *ordinance that describes what the City is supposed to do*

15     *in terms of providing notification, that explains what*

16     *notice reasonable under the circumstances is."*  So here,

17     we have a Mullane issue.  We're not talking about all the

18     Mathews stuff about, you know, whether or not he could get

19     a continuance or what the process was once the Code

20     Enforcement Board talked about it.

21             Our arguments on due process are focused on what

22     Jim was entitled to know when a city code enforcement

23     officer came to his property and viewed that his grass was

24     too tall.  Now, there are two narratives here.  One is

25     that they were required to do nothing and they could just

1    wait until he brought the property into compliance,

2    whether he owed 30,000 or 800,000 as he just said.  The

3    other is that city ordinance actually speaks to this, that

4    Federal law actually speaks to this, that Mullane says

5    that you got to provide notice reasonable under the

6    circumstances.  The MAK case has interpreted that to mean

7    that when your property is on the line, the City can't

8    just sit on its hands and do nothing.  Sure, they could

9    have fined you.  Nobody is suggesting that they couldn't

10   have fined you, but the question is can they, consistent

11   with due process and the Eighth Amendment, let a condition

12   exist on a property for months on end and then stick

13   somebody with a bill for $30,000 and then still say, all

14   of this is motivated by compliance.

15          Your Honor, what they did in this case doesn't

16   reflect any devotion or motivation for compliance.

17   Whatever they want to say about Jim about where he lived

18   or his previous code violations, there's no need to

19   address that because due process applies all the same to

20   residents and nonresidents alike and the Eight Amendment's

21   protections apply evenly regardless of whether somebody is

22   likeable or not likeable.  And so, Your Honor, unless you

23   have any further questions, we're content to rest on our

24   brief.

25          THE COURT:  Let me ask you because you suggest

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    that if the City let the grass grow and the fine I guess

2    continue to run, but what about the property owner?

3    Doesn't the property owner have some responsibility with

4    regard to the grass on his property?  Who is it that

5    really let the grass grow?

6              MR. BARGIL:  That's absolutely right, Your Honor.

7    That's why our entire contention in this case is not that

8    you can't fine him.  It's that you can fine him subject to

9    the prerequisites of due process.  And so if the City

10   would have called him or posted a note or done anything

11   that reflects notice reasonable under the circumstances,

12   and this is how high the fines ended up getting, that's a

13   completely different case.  I mean I think -- I still

14   think $500 per day on this complaint is a pretty severe

15   sanction for something that there seems to be general

16   agreement isn't a huge deal, but all of this is going back

17   to the point about, yes, you can fine, but you must

18   provide appropriate notice.  That certainly would reflect

19   a commitment to obtain a compliance and it's how you

20   guarantee that people don't have their rights violated

21   like this.  The City didn't do that here.

22             THE COURT:  All right.  Anything else, Counsel?

23             MR. BARGIL:  No, Your Honor.  Thank you.

24             MR. DAIGNEAULT:  No, Your Honor, appreciate the

25   time again.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

 1           THE COURT:  Okay.  Thank you, all.  I am going to
 2     take this matter under advisement and, of course, issue a
 3     written opinion.  I've got two bench trials coming up so
 4     it's going to be probably closer to the end of the year
 5     before I get an order out on it, but I want you to know
 6     that I am considered it.  I have reviewed your initial
 7     submissions.  I haven't completed the review of the case
 8     law yet and your exhibits, but once that's completed an
 9     order will enter on the cross motions for summary
10     judgment.  If there's nothing else, Counsel, that
11     concludes this proceeding.  We are adjourned, and you are
12     free to leave the meeting.  Thank you.
13     (End of proceedings.)
14
15
16
17
18
19
20
21
22
23
24
25

              UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
 1

 2   UNITED STATES DISTRICT COURT  )

 3                                 )

 4   MIDDLE DISTRICT OF FLORIDA    )

 5

 6           I, SHARON A. MILLER, Official Court Reporter for

 7     the United States District Court, Middle District of

 8     Florida, do hereby certify that pursuant to Section 753,

 9     Title 28, United States Code that the foregoing is a true

10     and correct transcript of the stenographic notes taken by

11     computer-aided transcription taken in the above-entitled

12     cause by the undersigned and that the transcript format is

13     in conformance with the regulations of the Judicial

14     conference of the United States.

15   /S/Sharon A. Miller, CSR, RPR, CRR, FCRR

16   Official Court Reporter

17

18

19

20

21

22

23

24

25

     UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION
```