# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

Sam M. Gibbons U.S. Courthouse
Office of the Clerk
801 North Florida Avenue
Tampa, FL 33602
(813) 301-5400
www.flmd.uscourts.gov

Elizabeth M. Warren                                          Keshia M. Jones
Clerk of Court                                          Tampa Division Manager

**DATE:** May 25, 2021

**TO:**    Clerk, U.S. Court of Appeals for the Eleventh Circuit

JAMES FICKEN and SUNCOAST FIRST TRUST,

      Plaintiffs,

v.                                          Case No: 8:19-cv-1210-CEH-SPF

CITY OF DUNEDIN, FLORIDA and DUNEDIN CODE
ENFORCEMENT BOARD,

      Defendants.

_____

**U.S.C.A. Case No.:        UNKNOWN**

Enclosed are documents and information relating to an appeal in the above-referenced action.  Please acknowledge receipt on the enclosed copy of this letter.

- Honorable Charlene Edwards Honeywell, United States District Judge appealed from.

- Honorable Sean P. Flynn, United States Magistrate Judge appealed from.

- Appeal filing fee was paid.

- Certified copy of Notice of Appeal, docket entries, judgment and/or Order appealed from.  Opinion was not entered orally.

- No hearing from which a transcript could be made.

                ELIZABETH M. WARREN, CLERK

                By:      s/MB, Deputy Clerk

APPEAL, CLOSED

# U.S. District Court
## Middle District of Florida (Tampa)
## CIVIL DOCKET FOR CASE #: 8:19–cv–01210–CEH–SPF

| | |
|---|---|
| Ficken et al v. City of Dunedin, Florida et al | Date Filed: 05/17/2019 |
| Assigned to: Judge Charlene Edwards Honeywell | Date Terminated: 04/26/2021 |
| Referred to: Magistrate Judge Sean P. Flynn | Jury Demand: None |
| Case in other court:  Pinellas County, 5/7/2019, 19–003181–CI | Nature of Suit: 440 Civil Rights: Other |
| Cause: 28:1446 Notice of Removal | Jurisdiction: Federal Question |

**Plaintiff**

**James Ficken**                                   represented by   **Andrew H. Ward**
*Trustee, Suncoast First Trust*                                     Institute for Justice
                                                                    901 N Glebe Rd Ste 900
                                                                    Arlington, VA 22203
                                                                    703–682–9320
                                                                    Fax: 703–682–9321
                                                                    Email: andrew.ward@ij.org
                                                                    *LEAD ATTORNEY*
                                                                    *PRO HAC VICE*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Ari Simon Bargil**
                                                                    Institute for Justice
                                                                    2 S Biscayne Blvd Ste 3180
                                                                    Miami, FL 33131
                                                                    305–721–1600
                                                                    Fax: 305–721–1601
                                                                    Email: abargil@ij.org
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Justin M. Pearson**
                                                                    Institute for Justice
                                                                    Suite 3180
                                                                    2 South Biscayne Boulevard
                                                                    Miami, FL 33131
                                                                    305/721–1600
                                                                    Fax: 305/721–1601
                                                                    Email: jpearson@ij.org
                                                                    *TERMINATED: 10/10/2019*
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Suncoast First Trust**                           represented by   **Andrew H. Ward**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *PRO HAC VICE*

1

*ATTORNEY TO BE NOTICED*

**Ari Simon Bargil**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin M. Pearson**
(See above for address)
*TERMINATED: 10/10/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**City of Dunedin, Florida**                    represented by   **Jay Daigneault**
Trask, Metz & Daigneault LLP
1001 S Fort Harrison Ave, Ste 201
Clearwater, FL 33756
727/733–0494
Fax: 727/733–2991
Email: jay@cityattorneys.legal
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randol D. Mora**
Trask Daigneault LLP
1001 S. Ft. Harrison Ave., Ste. 201
Clearwater, FL 33756
727–733–0494
Fax: 727–733–2991
Email: randy@cityattorneys.legal
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dunedin Code Enforcement Board**              represented by   **Jay Daigneault**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randol D. Mora**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Michael Bowman**                             represented by   **Jay Daigneault**
*in his official capacity as Code*                              (See above for address)

2

*Enforcement Board Chairman*
*TERMINATED: 09/30/2020*

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randol D. Mora**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lowell Suplicki**                          represented by   **Jay Daigneault**
*in his official capacity as Code*                            (See above for address)
*Enforcement Board Vice−Chair*                               *LEAD ATTORNEY*
*TERMINATED: 09/30/2020*                                      *ATTORNEY TO BE NOTICED*

**Randol D. Mora**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Arlene Graham**                            represented by   **Jay Daigneault**
*in her official capacity as a member of*                     (See above for address)
*the Code Enforcement Board*                                  *LEAD ATTORNEY*
*TERMINATED: 09/30/2020*                                      *ATTORNEY TO BE NOTICED*

**Randol D. Mora**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ken Carson**                               represented by   **Jay Daigneault**
*in his official capacity as a member of the*                 (See above for address)
*Code Enforcement Board*                                      *LEAD ATTORNEY*
*TERMINATED: 09/30/2020*                                      *ATTORNEY TO BE NOTICED*

**Randol D. Mora**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**William Motley**                           represented by   **Jay Daigneault**
*in his official capacity as a member of the*                 (See above for address)
*Code Enforcement Board*                                      *LEAD ATTORNEY*
*TERMINATED: 09/30/2020*                                      *ATTORNEY TO BE NOTICED*

**Randol D. Mora**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Defendant**

**Dave Pauley**                                             represented by   **Jay Daigneault**
*in his official capacity as a member of the*                               (See above for address)
*Code Enforcement Board*                                                    *LEAD ATTORNEY*
*TERMINATED: 09/30/2020*                                                    *ATTORNEY TO BE NOTICED*

                                                                           **Randol D. Mora**
                                                                           (See above for address)
                                                                           *LEAD ATTORNEY*
                                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Bunny Dutton**                                            represented by   **Jay Daigneault**
*in her official capacity as a member of*                                   (See above for address)
*the Code Enforcement Board*                                                *LEAD ATTORNEY*
*TERMINATED: 09/30/2020*                                                    *ATTORNEY TO BE NOTICED*

                                                                           **Randol D. Mora**
                                                                           (See above for address)
                                                                           *LEAD ATTORNEY*
                                                                           *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 05/17/2019 | 1 | | COMPLAINT and NOTICE OF REMOVAL from the 6th Judicial Circuit in and for Pinellas County, Florida, case number 19–003181–CI filed in State Court on 5/7/2019. Filing fee $ 400, receipt number TPA05616 filed by Lowell Suplicki, Bunny Dutton, City of Dunedin, Florida, Arlene Graham, William Motley, Ken Carson, Dunedin Code Enforcement Board, Dave Pauley, Michael Bowman. (Attachments: # 1 State Court COMPLAINT, # 2 Exhibit State Complaint, # 3 State Court Pending Motions, # 4 State Court Other Documents, # 5 Civil Cover Sheet)(CTR) (Entered: 05/20/2019) |
| 05/20/2019 | 2 | | **RELATED CASE ORDER AND NOTICE of designation under Local Rule 3.05 – track 2. Notice of pendency of other actions due by 6/3/2019. Signed by Judge Charlene Edwards Honeywell on 5/20/2019. (BGS)** (Entered: 05/20/2019) |
| 05/20/2019 | 3 | | **INTERESTED PERSONS ORDER. Certificate of interested persons and corporate disclosure statement due by 6/3/2019. Signed by Judge Charlene Edwards Honeywell on 5/20/2019. (BGS)** (Entered: 05/20/2019) |
| 05/21/2019 | 4 | | NOTICE to counsel of Local Rule 2.01 (signed by deputy clerk). (CTR) (Entered: 05/21/2019) |
| 05/21/2019 | 5 | | NOTICE to counsel of Local Rule 2.02 (signed by deputy clerk). (CTR) (Entered: 05/21/2019) |
| 05/24/2019 | 6 | | NOTICE of Appearance by Justin M. Pearson on behalf of James Ficken, Suncoast First Trust (Pearson, Justin) (Entered: 05/24/2019) |

4

| 05/28/2019 | 7 | | NOTICE by Michael Bowman, Ken Carson, City of Dunedin, Florida, Dunedin Code Enforcement Board, Bunny Dutton, Arlene Graham, William Motley, Dave Pauley, Lowell Suplicki re 1 Notice of Removal (Attachments: # 1 Supplement)(Daigneault, Jay) (Entered: 05/28/2019) |
| 05/28/2019 | 8 | | Unopposed MOTION for Andrew H. Ward to appear pro hac vice by James Ficken, Suncoast First Trust. (Pearson, Justin) Motions referred to Magistrate Judge Sean P. Flynn. (Entered: 05/28/2019) |
| 05/28/2019 | 9 | | **ENDORSED ORDER granting 8 motion to appear pro hac vice. Attorney Andrew H. Ward may appear pro hac vice on behalf of Plaintiffs, with Attorney Justin M. Pearson designated as local counsel pursuant to Local Rule 2.02(a). Please note that a local attorney must also be present for any evidentiary hearing before the district judge and during trial. Within twenty−one (21) days of the date of this Order, counsel shall comply with the electronic filing requirement and file a notice of compliance with said requirement. Signed by Magistrate Judge Sean P. Flynn on 5/28/2019. (CKR)** (Entered: 05/28/2019) |
| 05/31/2019 | | | ***PRO HAC VICE FEES paid by attorney Andrew H. Ward (Filing fee $150 receipt number TPA056734.) Related document: 8 Unopposed MOTION for Andrew H. Ward to appear pro hac vice. (ARC) (Entered: 05/31/2019) |
| 06/03/2019 | | | Mail returned as Undeliverable/Not Deliverable as Addressed from Institute for Justice Florida Chapter,Suite 720, 999 Brickell Ave,Miami, FL 33131 re: 4 Notice to counsel of Local Rule. Mail not resent to Ari Simon Bargil. (CTR) (Entered: 06/03/2019) |
| 06/03/2019 | 10 | | NOTICE of pendency of related cases re 2 Related case order and track 2 notice per Local Rule 1.04(d) by James Ficken. Related case(s): Yes (Pearson, Justin) (Entered: 06/03/2019) |
| 06/03/2019 | 11 | | CERTIFICATE of interested persons and corporate disclosure statement re 3 Interested persons order by James Ficken. (Pearson, Justin) (Entered: 06/03/2019) |
| 06/05/2019 | 12 | | CERTIFICATE of interested persons and corporate disclosure statement re 3 Interested persons order by Michael Bowman, Ken Carson, City of Dunedin, Florida, Dunedin Code Enforcement Board, Bunny Dutton, Arlene Graham, William Motley, Dave Pauley, Lowell Suplicki. (Daigneault, Jay) (Entered: 06/05/2019) |
| 06/10/2019 | | | Mail returned as Undeliverable/Attempted−Not Known from Institute for Justice Florida Chapter Suite 720 999 Brickell Ave, Miami, FL 33131 re: 9 Order on motion to appear pro hac vice. Mail not resent to Ari Simon Bargil. (CTR) (Entered: 06/10/2019) |
| 06/13/2019 | | | Mail returned as Undeliverable/ Unable to Forward from Suite 720 999 Brickell Ave, Miami, FL 33131 re: 3 Interested persons order, 2 Related case order and track 2 notice. Mail not resent to Ari Simon Bargil. (Spoke to assistant to enter a change of address (This address in system since 2013)) (CTR) (Entered: 06/13/2019) |
| 06/14/2019 | 13 | | NOTICE of compliance re 9 Order on motion to appear pro hac vice *Notice of Compliance with Electronic Filing Requirement* by James Ficken (Ward, |

| | | | |
|---|---|---|---|
| | | | Andrew) (Entered: 06/14/2019) |
| 07/15/2019 | 14 | | CASE MANAGEMENT REPORT. (Ward, Andrew) (Entered: 07/15/2019) |
| 07/22/2019 | 15 | | MOTION to Dismiss Plaintiffs' Complaint *and Incorporated Memorandum of Law* by All Defendants. (Daigneault, Jay) (Entered: 07/22/2019) |
| 07/22/2019 | 16 | | MOTION to Strike 1 Notice of Removal *Plaintiffs' Complaint* by All Defendants. (Daigneault, Jay) Motions referred to Magistrate Judge Sean P. Flynn. (Entered: 07/22/2019) |
| 08/05/2019 | 17 | | **CASE MANAGEMENT AND SCHEDULING ORDER: Discovery due by 3/6/2020, Dispositive motions due by 4/10/2020, Pretrial statement due by 8/18/2020, All other motions due by 8/25/2020, Final Pretrial Conference set for 9/15/2020 at 3:30 PM in Tampa Courtroom 13A before Judge Charlene Edwards Honeywell, Bench Trial set for term commencing 10/5/2020 in Tampa Courtroom 13A before Judge Charlene Edwards Honeywell. Conduct mediation hearing by 12/13/2019. Lead counsel to coordinate dates. Signed by Judge Charlene Edwards Honeywell on 8/5/2019. (BGS)** (Entered: 08/05/2019) |
| 08/05/2019 | 18 | | RESPONSE in Opposition re 15 MOTION to Dismiss Plaintiffs' Complaint *and Incorporated Memorandum of Law* filed by James Ficken, Suncoast First Trust. (Bargil, Ari) (Entered: 08/05/2019) |
| 08/05/2019 | 19 | | RESPONSE in Opposition re 16 MOTION to Strike 1 Notice of Removal *Plaintiffs' Complaint* filed by James Ficken, Suncoast First Trust. (Ward, Andrew) (Entered: 08/05/2019) |
| 08/09/2019 | 20 | | NOTICE of unavailability of counsel by James Ficken, Suncoast First Trust from August 23 to September 9, 2019 and September 18–20, 2019. (Bargil, Ari) (Entered: 08/09/2019) |
| 08/16/2019 | 21 | | NOTICE OF SELECTION of Hon. Melvia B. Green as mediator by James Ficken, Suncoast First Trust. (Bargil, Ari) (Entered: 08/16/2019) |
| 09/27/2019 | 22 | | AMENDED COMPLAINT against Michael Bowman, Ken Carson, City of Dunedin, Florida, Dunedin Code Enforcement Board, Bunny Dutton, Arlene Graham, William Motley, Dave Pauley, Lowell Suplicki filed by Suncoast First Trust, James Ficken.(Bargil, Ari) (Entered: 09/27/2019) |
| 09/27/2019 | 23 | | **ENDORSED ORDER denying as moot 16 Defendants' Motion to Strike and Incorporated Memorandum of Law; denying as moot 15 Defendants' Dispositive Motion to Dismiss Complaint and Incorporated Memorandum of Law. Plaintiffs filed an amended complaint on September 27, 2019 which supersedes the original complaint. Signed by Judge Charlene Edwards Honeywell on 9/27/2019. (BGS)** (Entered: 09/27/2019) |
| 09/30/2019 | 24 | | MOTION to Dismiss Amended Complaint by Michael Bowman, Ken Carson, City of Dunedin, Florida, Dunedin Code Enforcement Board, Bunny Dutton, Arlene Graham, William Motley, Dave Pauley, Lowell Suplicki. (Daigneault, Jay) (Entered: 09/30/2019) |
| 09/30/2019 | 25 | | MOTION to Strike *and Incorporated Memorandum of Law* by All Defendants. (Daigneault, Jay) Motions referred to Magistrate Judge Sean P. Flynn. (Entered: 09/30/2019) |

| 10/04/2019 | 26 | | NOTICE of mediation conference/hearing to be held on November 15, 2019 at 9:30 a.m. before Hon. Melvia B. Green. (Bargil, Ari) (Entered: 10/04/2019) |
|---|---|---|---|
| 10/04/2019 | 27 | | SECOND NOTICE to counsel Randy Mora of Local Rule 2.01, General Admission to Practice, which states – *No person shall be permitted to appear or be heard as counsel for another in any proceeding in this Court unless first admitted to practice in the Court pursuant to this rule (or heretofore admitted under prior rules of the Court)*. Apply for membership to the bar of this Court at www.flmd.uscourts.gov (Signed by Deputy Clerk). (CTR) (Entered: 10/04/2019) |
| 10/10/2019 | 28 | | Unopposed MOTION for Justin M. Pearson to withdraw as attorney *for Plaintiffs* by James Ficken, Suncoast First Trust. (Pearson, Justin) Motions referred to Magistrate Judge Sean P. Flynn. (Entered: 10/10/2019) |
| 10/10/2019 | 29 | | **ENDORSED ORDER granting 28 Motion to Withdraw as Attorney. Attorney Justin M. Pearson terminated. Signed by Magistrate Judge Sean P. Flynn on 10/10/2019. (Flynn, Sean)** (Entered: 10/10/2019) |
| 10/14/2019 | 30 | | RESPONSE in Opposition re 25 MOTION to Strike *and Incorporated Memorandum of Law* filed by James Ficken, Suncoast First Trust. (Ward, Andrew) (Entered: 10/14/2019) |
| 10/14/2019 | 31 | | RESPONSE in Opposition re 24 MOTION to Dismiss Amended Complaint filed by James Ficken, Suncoast First Trust. (Bargil, Ari) (Entered: 10/14/2019) |
| 11/18/2019 | 32 | | MEDIATION report Hearing held on November 15, 2019. Hearing outcome: Impasse.. (Daigneault, Jay) (Entered: 11/18/2019) |
| 01/17/2020 | 33 | | MOTION to Compel Production of Documents and Interrogatory Responses by City of Dunedin, Florida. (Attachments: # 1 Exhibit James Ficken deposition of September 25, 2019)(Daigneault, Jay) Motions referred to Magistrate Judge Sean P. Flynn. (Entered: 01/17/2020) |
| 01/30/2020 | 34 | | MEMORANDUM in opposition re 33 Motion to Compel filed by James Ficken, Suncoast First Trust. (Attachments: # 1 Affidavit / Declaration of Ari S. Bargil with Exhibits A–E)(Bargil, Ari) (Entered: 01/30/2020) |
| 01/30/2020 | 35 | | NOTICE of unavailability of counsel by James Ficken, Suncoast First Trust from March 19, 2020 to March 23, 2020. (Bargil, Ari) (Entered: 01/30/2020) |
| 02/21/2020 | 36 | | MOTION to Compel Production of Documents and Interrogatory Responses by All Plaintiffs. (Attachments: # 1 Affidavit /Declaration of Andrew H. Ward with Exhibits A–G)(Ward, Andrew) Motions referred to Magistrate Judge Sean P. Flynn. (Entered: 02/21/2020) |
| 03/04/2020 | 37 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 36 MOTION to Compel Production of Documents and Interrogatory Responses by City of Dunedin, Florida. (Daigneault, Jay) Motions referred to Magistrate Judge Sean P. Flynn. (Entered: 03/04/2020) |
| 03/04/2020 | 38 | | **ENDORSED ORDER granting 37 Motion for Extension of Time to File Response / Reply re 36 MOTION to Compel Production of Documents and Interrogatory Responses. Response due by 3/13/2020. Signed by Magistrate Judge Sean P. Flynn on 3/4/2020. (Flynn, Sean)** (Entered: 03/04/2020) |

| 03/05/2020 | 39 | | **ORDER granting 33 Defendant's Motion to Compel Production of Documents and Interrogatory Responses. Signed by Magistrate Judge Sean P. Flynn on 3/5/2020. (CKR)** (Entered: 03/05/2020) |
|---|---|---|---|
| 03/06/2020 | 40 | | Second MOTION to Compel Production of Documents by James Ficken, Suncoast First Trust. (Attachments: # 1 Declaration of Andrew H. Ward (with Exhibit))(Ward, Andrew) Motions referred to Magistrate Judge Sean P. Flynn. (Entered: 03/06/2020) |
| 03/13/2020 | 41 | | RESPONSE to Motion re 36 MOTION to Compel Production of Documents and Interrogatory Responses , 40 Second MOTION to Compel Production of Documents filed by Michael Bowman, Ken Carson, City of Dunedin, Florida, Dunedin Code Enforcement Board, Bunny Dutton, Arlene Graham, William Motley, Dave Pauley, Lowell Suplicki. (Daigneault, Jay) (Entered: 03/13/2020) |
| 04/10/2020 | 42 | | MOTION for Summary Judgment *Dispositive Motion* by All Defendants. (Attachments: # 1 Exhibit Ficken Depo Part 1 of 3, # 2 Exhibit Ficken Depo Part 2 of 3, # 3 Exhibit Ficken Depo Part 3 of 3, # 4 Affidavit McHale, # 5 Exhibit Kepto Depo, # 6 Exhibit CEB Hearing 05–05–15, # 7 Exhibit Colbert Depo, # 8 Affidavit Mendez, # 9 Exhibit CEB Hearing Transcript 09–04–18, # 10 Exhibit CEB Hearing Transcript 11–06–18, # 11 Exhibit Trask Depo Part 1, # 12 Exhibit Trask Depo Part 2, # 13 Affidavit Causey, # 14 Affidavit Dunn, # 15 Affidavit Watkins)(Daigneault, Jay) Motions referred to Magistrate Judge Sean P. Flynn. (Entered: 04/10/2020) |
| 04/10/2020 | 43 | | MOTION for Summary Judgment *Dispositive* by James Ficken, Suncoast First Trust. (Attachments: # 1 Index of Exhibits, # 2 Affidavit /Declaration of James Ficken, # 3 Exhibit 1 to Ficken Decl., # 4 Exhibit 2 to Ficken Decl., # 5 Exhibit 3 to Ficken Decl., # 6 Exhibit 4 to Ficken Decl., # 7 Exhibit 5 to Ficken Decl., # 8 Exhibit 6 to Ficken Decl., # 9 Exhibit 7 to Ficken Decl., # 10 Exhibit 8 to Ficken Decl., # 11 Exhibit 9 to Ficken Decl., # 12 Exhibit 10 to Ficken Decl., # 13 Exhibit 11 to Ficken Decl., # 14 Exhibit 12 to Ficken Decl., # 15 Exhibit 13 to Ficken Decl., # 16 Affidavit /Declaration of Ari S. Bargil, # 17 Exhibit 1 to Bargil Decl., # 18 Exhibit 2 to Bargil Decl., # 19 Exhibit 3 to Bargil Decl., # 20 Exhibit 4 to Bargil Decl., # 21 Exhibit 5 to Bargil Decl., # 22 Exhibit 6 to Bargil Decl., # 23 Exhibit 7 to Bargil Decl., # 24 Exhibit 8 to Bargil Decl., # 25 Exhibit 9 to Bargil Decl., # 26 Exhibit 10 to Bargil Decl., # 27 Exhibit 11 to Bargil Decl., # 28 Exhibit 12 to Bargil Decl., # 29 Exhibit 13 to Bargil Decl., # 30 Exhibit 14 to Bargil Decl., # 31 Exhibit 15 to Bargil Decl., # 32 Exhibit 16 to Bargil Decl.)(Bargil, Ari) Motions referred to Magistrate Judge Sean P. Flynn. (Entered: 04/10/2020) |
| 04/13/2020 | 44 | | SUMMARY JUDGMENT NOTICE. (BGS) (Entered: 04/13/2020) |
| 04/13/2020 | 45 | | **STANDING ORDER: Filing of documents that exceed twenty–five pages. 1. Plaintiffs are directed to provide to Chambers, in a binder, a courtesy copy of the Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law 43 (including exhibits) within TEN (10) DAYS from the date of this Order. 2. Defendants are directed to provide to Chambers, in a binder, a courtesy copy of the Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law 42 (including exhibits) within TEN (10) DAYS from the date of this Order. Signed by Judge Charlene Edwards Honeywell on 4/13/2020. (BGS)** (Entered: 04/13/2020) |

| 04/17/2020 | 46 | NOTICE by Michael Bowman, Ken Carson, City of Dunedin, Florida, Dunedin Code Enforcement Board, Bunny Dutton, Arlene Graham, William Motley, Dave Pauley, Lowell Suplicki *Notice to the Court of Pending Dispositive Motion to Dismiss* (Daigneault, Jay) (Entered: 04/17/2020) |
| 04/21/2020 | 47 | NOTICE by Michael Bowman, Ken Carson, City of Dunedin, Florida, Dunedin Code Enforcement Board, Bunny Dutton, Arlene Graham, William Motley, Dave Pauley, Lowell Suplicki re 42 MOTION for Summary Judgment *Dispositive Motion* (Attachments: # 1 Exhibit Plaintiff's Supplemental Responses to City of Dunedin's Second Set of Interrogatories, # 2 Exhibit Dunedin Code Enforcement Board Rules of Procedure)(Daigneault, Jay) (Entered: 04/21/2020) |
| 04/22/2020 | 48 | **ORDERED: 1. Defendants' Dispositive Motion to Dismiss Amended Complaint and Incorporated Memorandum of Law 24 is DENIED. Defendants shall answer the Amended Complaint on or before May 6, 2020. 2. Defendants' Motion to Strike and Incorporated Memorandum of Law 25 is DENIED. Signed by Judge Charlene Edwards Honeywell on 4/22/2020. (GLP)** (Entered: 04/22/2020) |
| 04/24/2020 | 49 | RESPONSE to Motion re 43 MOTION for Summary Judgment *Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law* filed by Michael Bowman, Ken Carson, City of Dunedin, Florida, Dunedin Code Enforcement Board, Bunny Dutton, Arlene Graham, William Motley, Dave Pauley, Lowell Suplicki. (Daigneault, Jay) (Entered: 04/24/2020) |
| 04/24/2020 | 50 | NOTICE of TELEPHONIC hearing on 36 Plaintiff's MOTION to Compel Production of Documents and Interrogatory Responses, 40 Second MOTION to Compel Production of Documents. Telephonic Motion Hearing set for 5/6/2020 at 10:00 AM before Magistrate Judge Sean P. Flynn. (CKR) (Entered: 04/24/2020) |
| 04/24/2020 | 51 | RESPONSE in Opposition re 42 MOTION for Summary Judgment *Dispositive Motion* filed by James Ficken, Suncoast First Trust. (Attachments: # 1 Index of Exhibits, # 2 Affidavit /Declaration of Ari S. Bargil, # 3 Exhibit 1 to Bargil Decl., # 4 Exhibit 2 to Bargil Decl., # 5 Exhibit 3 to Bargil Decl., # 6 Exhibit 4 to Bargil Decl.)(Bargil, Ari) (Entered: 04/24/2020) |
| 05/06/2020 | 52 | Minute Entry. Proceedings held before Magistrate Judge Sean P. Flynn: MOTION HEARING held on 5/6/2020 re 36 MOTION to Compel Production of Documents and Interrogatory Responses filed by James Ficken, Suncoast First Trust, 40 Second MOTION to Compel Production of Documents filed by James Ficken, Suncoast First Trust. (DIGITAL) (LYB) (Entered: 05/06/2020) |
| 05/06/2020 | 53 | **ORDER granting in part and denying in part 36 Plaintiffs' Motion to Compel Production of Documents and Interrogatory Responses and 40 Second Motion to Compel Production of Documents. Signed by Magistrate Judge Sean P. Flynn on 5/6/2020. (CKR)** (Entered: 05/06/2020) |
| 05/06/2020 | 54 | *Defendants'* ANSWER and affirmative defenses to 22 Amended Complaint by Michael Bowman, Ken Carson, City of Dunedin, Florida, Dunedin Code Enforcement Board, Bunny Dutton, Arlene Graham, William Motley, Dave Pauley, Lowell Suplicki.(Daigneault, Jay) (Entered: 05/06/2020) |
| 05/29/2020 | 55 | |

9

| | | | |
|---|---|---|---|
| | | | Unopposed MOTION to Supplement *the Record on Summary Judgment with Additional Exhibits* by James Ficken, Suncoast First Trust. (Attachments: # 1 Affidavit / Declaration of Ari S. Bargil, # 2 Exhibit A to Bargil Declaration, # 3 Exhibit B to Bargil Declaration, # 4 Exhibit C to Bargil Declaration, # 5 Exhibit D to Bargil Declaration)(Bargil, Ari) (Entered: 05/29/2020) |
| 06/09/2020 | 56 | | **ENDORSED ORDER granting 55 Plaintiff's Unopposed Motion for Leave to Supplement the Record on Summary Judgment with Additional Exhibits. Signed by Judge Charlene Edwards Honeywell on 6/9/2020. (GLP)** (Entered: 06/09/2020) |
| 06/09/2020 | 57 | | TRANSCRIPT of Electronically Recorded Telephonic Motion Hearing held on 05/06/2020 before Judge Sean P. Flynn. Court Reporter/Transcriber Rebekah Lockwood,Telephone number (813) 317.8286, e−mail: r.lockwooduscr@gmail.com. Tape Number: FTR. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/30/2020, Redacted Transcript Deadline set for 7/10/2020, Release of Transcript Restriction set for 9/8/2020. (RML) (Entered: 06/09/2020) |
| 06/09/2020 | 58 | | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT of Electronically Recorded Telephonic Motion Hearing held on 05/06/2020 before Judge Sean P. Flynn. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal. Court Reporter: Rebekah Lockwood. (RML) (Entered: 06/09/2020) |
| 07/17/2020 | 59 | | **ORDER: The parties shall file a stipulation of agreed material facts within FOURTEEN (14) DAYS from the date of this Order. Signed by Judge Charlene Edwards Honeywell on 7/17/2020. (GLP)** (Entered: 07/17/2020) |
| 07/24/2020 | 60 | | Joint MOTION to Continue *Joint Final Pretrial Statement* by James Ficken, Suncoast First Trust. (Bargil, Ari) (Entered: 07/24/2020) |
| 07/24/2020 | 61 | | **ENDORSED ORDER denying without prejudice for failure to comply with Local Rule 3.01(a) 60 Joint Motion to Continue Joint Final Pretrial Statement. The motion lacks a memorandum of legal authority in support of its request. Local R. M.D. Fla. 3.01(a). Signed by Judge Charlene Edwards Honeywell on 7/24/2020. (GLP)** (Entered: 07/24/2020) |
| 07/29/2020 | 62 | | Joint MOTION to Continue *Joint Final Pretrial Statement and Incorporated Memorandum of Law* by James Ficken, Suncoast First Trust. (Bargil, Ari) (Entered: 07/29/2020) |
| 07/29/2020 | 63 | | STATEMENT of undisputed facts re: 59 Order pdf *Joint Statement of Undisputed Facts for Cross−Motions for Summary Judgment* by James Ficken, Suncoast First Trust.. (Bargil, Ari) (Entered: 07/29/2020) |
| 07/29/2020 | 64 | | **ENDORSED ORDER granting 62 Joint Motion to Continue Joint Pretrial Statement and Incorporated Memorandum of Law. The deadline for the** |

| | | | |
|---|---|---|---|
| | | | parties to meet to prepare their joint final pretrial statement is extended to, and including, August 28, 2020. The parties may meet by video conference. Further, the deadline for the parties to submit their joint pretrial statement is extended to, and including, September 8, 2020. Signed by Judge Charlene Edwards Honeywell on 7/29/2020. (GLP) (Entered: 07/29/2020) |
| 08/20/2020 | 65 | | Joint MOTION to Vacate 17 Case management and scheduling order, 64 Order on Motion to Continue *Pretrial Schedule Pending Decision on Cross–Motions for Summary Judgment* by All Plaintiffs. (Attachments: # 1 Affidavit / Declaration of Ari S. Bargil)(Bargil, Ari) (Entered: 08/20/2020) |
| 08/25/2020 | 66 | | MOTION In Limine *and Incorporated Memorandum of Law* by James Ficken, Suncoast First Trust. (Bargil, Ari) (Entered: 08/25/2020) |
| 08/25/2020 | 67 | | MOTION In Limine regarding exclusion of evidence by All Defendants. (Mora, Randol) (Entered: 08/25/2020) |
| 08/28/2020 | 68 | | **ORDER: The remaining pretrial deadlines, pretrial conference and October 2020 non–jury trial are stayed or cancelled pending resolution of the parties' cross–motions for summary judgment (Docs. 42, 43). The Court will re–schedule the pretrial conference and non–jury trial, if needed, after these pending motions have been resolved. Signed by Judge Charlene Edwards Honeywell on 8/28/2020. (BGS)** (Entered: 08/28/2020) |
| 08/28/2020 | 69 | | NOTICE canceling Final Pretrial Conference hearing scheduled for September 15, 2020 and Jury Trial set for term commencing October 5, 2020. (BGS) (Entered: 08/28/2020) |
| 08/28/2020 | 70 | | **ENDORSED ORDER denying as moot 65 Joint Motion to Vacate Pretrial Schedule Pending Decision on Cross–Motions for Summary Judgment and Incorporated Memorandum of Law. Signed by Judge Charlene Edwards Honeywell on 8/28/2020. (BGS)** (Entered: 08/28/2020) |
| 08/28/2020 | 71 | | NOTICE OF ORAL ARGUMENT on Motions re 42 MOTION for Summary Judgment *Dispositive Motion*, 43 MOTION for Summary Judgment *Dispositive*. Oral Argument set for 9/11/2020 at 11:00 AM in Tampa Courtroom 13A before Judge Charlene Edwards Honeywell. The hearing scheduled for SEPTEMBER 11, 2020 will be conducted via ZOOM VIDEO CONFERENCE. The Clerk will be sending everyone an invitation to the meeting via email. If you have any questions, please contact courtroom deputy, Bettye Samuel, at Bettye_Samuel@flmd.uscourts.gov. Although the hearing is taking place by video, all parties should dress appropriately for this Court proceeding. Furthermore, the parties are hereby reminded that under Local Rule 4.11(b) the taking of photographs, the operation of recording or transmission devices, and the broadcasting or televising of proceedings in any courtroom or hearing room of this Court, or the environs thereof, either while the Court is in session or at recesses between sessions when Court officials, lawyers, jurors, witnesses or other persons connected with judicial proceedings of any kind are present, are prohibited. (BGS) (Entered: 08/28/2020) |
| 09/01/2020 | 72 | | NOTICE OF RESCHEDULING ORAL ARGUMENT (AS TO TIME ONLY): The Oral Argument hearing previously scheduled for September 11, 2020 is rescheduled. NEW HEARING TIME: Oral Argument set for 9/11/2020 at 10:00 AM in Tampa Courtroom 13A before Judge Charlene Edwards Honeywell. The hearing scheduled for SEPTEMBER 11, 2020 will be |

| | | | |
|---|---|---|---|
| | | | conducted via ZOOM VIDEO CONFERENCE. The Clerk will be sending everyone an invitation to the meeting via email. If you have any questions, please contact courtroom deputy, Bettye Samuel, at Bettye_Samuel@flmd.uscourts.gov. Although the hearing is taking place by video, all parties should dress appropriately for this Court proceeding. Furthermore, the parties are hereby reminded that under Local Rule 4.11(b) the taking of photographs, the operation of recording or transmission devices, and the broadcasting or televising of proceedings in any courtroom or hearing room of this Court, or the environs thereof, either while the Court is in session or at recesses between sessions when Court officials, lawyers, jurors, witnesses or other persons connected with judicial proceedings of any kind are present, are prohibited. (BGS) (Entered: 09/01/2020) |
| 09/02/2020 | <u>73</u> | | Unopposed MOTION to Continue *Reschedule Oral Argument presently set for September 11, 2020* by All Defendants. (Daigneault, Jay) (Entered: 09/02/2020) |
| 09/02/2020 | 74 | | **ENDORSED ORDER granting <u>73</u> Defendants' Unopposed Motion to Reschedule Oral Argument Presently Set for September 11, 2020. The hearing will be rescheduled by separate notice. Signed by Judge Charlene Edwards Honeywell on 9/2/2020. (GLP)** (Entered: 09/02/2020) |
| 09/03/2020 | 75 | | NOTICE OF RESCHEDULING ORAL ARGUMENT HEARING: The Oral Argument hearing previously scheduled for September 11, 2020 is rescheduled. NEW SCHEDULING DATE AND TIME: Oral Argument set for 9/28/2020 at 11:00 AM in Tampa Courtroom 13A before Judge Charlene Edwards Honeywell. The hearing scheduled for SEPTEMBER 28, 2020 will be conducted via ZOOM VIDEO CONFERENCE. The Clerk will be sending everyone an invitation to the meeting via email. If you have any questions, please contact courtroom deputy, Bettye Samuel, at Bettye_Samuel@flmd.uscourts.gov. Although the hearing is taking place by video, all parties should dress appropriately for this Court proceeding. Furthermore, the parties are hereby reminded that under Local Rule 4.11(b) the taking of photographs, the operation of recording or transmission devices, and the broadcasting or televising of proceedings in any courtroom or hearing room of this Court, or the environs thereof, either while the Court is in session or at recesses between sessions when Court officials, lawyers, jurors, witnesses or other persons connected with judicial proceedings of any kind are present, are prohibited.(BGS) (Entered: 09/03/2020) |
| 09/28/2020 | <u>76</u> | | Minute Entry. Proceedings held before Judge Charlene Edwards Honeywell: MOTION HEARING held on 9/28/2020 re <u>42</u> MOTION for Summary Judgment *Dispositive Motion* filed by Ken Carson, Arlene Graham, Lowell Suplicki, Dunedin Code Enforcement Board, Dave Pauley, City of Dunedin, Florida, William Motley, Bunny Dutton, Michael Bowman, <u>43</u> MOTION for Summary Judgment *Dispositive* filed by James Ficken, Suncoast First Trust. Court Reporter: Sharon A. Miller (BGS) (Entered: 09/28/2020) |
| 09/30/2020 | <u>77</u> | | AMENDED COMPLAINT *(Second Amended Complaint)* against City of Dunedin, Florida, Dunedin Code Enforcement Board filed by Suncoast First Trust, James Ficken.(Bargil, Ari) (Entered: 09/30/2020) |
| 10/05/2020 | 78 | | **ENDORSED ORDER denying as moot <u>42</u> Defendants' Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law; denying as moot <u>43</u> Plaintiffs' Dispositive Motion for Summary Judgment and** |

| | | | |
|---|---|---|---|
| | | | **Incorporated Memorandum of Law. In accordance with the Court's ruling at the hearing on September 28, 2020, Plaintiffs have filed a second amended complaint. Signed by Judge Charlene Edwards Honeywell on 10/5/2020. (GLP)** (Entered: 10/05/2020) |
| 10/06/2020 | 79 | | ANSWER and affirmative defenses to 77 Amended Complaint *Second Amended Complaint* by City of Dunedin, Florida, Dunedin Code Enforcement Board.(Daigneault, Jay) (Entered: 10/06/2020) |
| 10/12/2020 | 80 | | Joint MOTION for Miscellaneous Relief, specifically to Renew Summary Judgment Briefing by James Ficken, Suncoast First Trust. (Attachments: # 1 Defendants' Dispositive Motion for Summary Judgment and Memo of Law with Parts 1 and 2 of Ficken Deposition (ECF Nos. 42, 42–1, and 42–2), # 2 Ficken Deposition Part 3 of 3 (ECF No. 42–3), # 3 Affidavit of Joan McHale (ECF No. 42–4), # 4 Kepto Deposition (ECF No. 42–5), # 5 May 2015 CEB Hearing Transcript, Colbert Deposition, Mendez Affidavit, Sept. and Nov. 2018 CEB Hearing Transcripts (ECF Nos. 42–6 through 42–10), # 6 Trask Deposition Transcript Part 1 of 2 (ECF No. 42–11), # 7 Trask Deposition Transcript Part 2 of 2 (ECF No. 42–12), # 8 Affidavits of Stacie Causey, Angela Dunne, and Sherry Watkins (ECF Nos. 42–13, 42–14, 42–15), # 9 Defendants' Opposition to Plaintiffs' Dispositive Motion for Summary Judgment (ECF No. 49), # 10 Plaintiffs' Motion for Summary Judgment and Ficken Declaration and Exhibits (ECF Nos. 43, 43–1 through 43–15), # 11 Bargil Declaration and Exhibits (ECF Nos. 43–16 through 43–32), # 12 Plaintiffs' Opposition to Defs' Motion for Summary Judgment, Bargil Declaration and Exhibits (ECF Nos. 51, 51–1 through 51–6), # 13 Joint Statement of Undisputed Facts for Cross–Motions for Summary Judgment (ECF No. 63))(Bargil, Ari) (Entered: 10/12/2020) |
| 10/14/2020 | 81 | | **ENDORSED ORDER granting 80 Joint Motion to Renew Summary Judgment Briefing. Oral argument will be scheduled by separate notice. Signed by Judge Charlene Edwards Honeywell on 10/14/2020. (GLP)** (Entered: 10/14/2020) |
| 10/27/2020 | 82 | | NOTICE of Hearing on Motion re 42 MOTION for Summary Judgment *Dispositive Motion*, 43 MOTION for Summary Judgment *Dispositive*. Motion Hearing set for 11/16/2020 at 11:00 AM in Tampa Courtroom 13A before Judge Charlene Edwards Honeywell. The hearing scheduled for NOVEMBER 16,2020 will be conducted via ZOOM VIDEO CONFERENCE. The Clerk will be sending everyone an invitation to the meeting via email. If you have any questions, please contact courtroom deputy, Bettye Samuel, at Bettye_Samuel@flmd.uscourts.gov. Although the hearing is taking place by video, all parties should dress appropriately for this Court proceeding. Furthermore, the parties are hereby reminded that under Local Rule 4.11(b) the taking of photographs, the operation of recording or transmission devices, and the broadcasting or televising of proceedings in any courtroom or hearing room of this Court, or the environs thereof, either while the Court is in session or at recesses between sessions when Court officials, lawyers, jurors, witnesses or other persons connected with judicial proceedings of any kind are present, are prohibited.(BGS) (Entered: 10/27/2020) |
| 11/16/2020 | 83 | | Minute Entry. Proceedings held before Judge Charlene Edwards Honeywell: MOTION HEARING held on 11/16/2020 re 42 MOTION for Summary Judgment *Dispositive Motion* filed by Ken Carson, Arlene Graham, Lowell |

| | | | |
|---|---|---|---|
| | | | Suplicki, Dunedin Code Enforcement Board, Dave Pauley, City of Dunedin, Florida, William Motley, Bunny Dutton, Michael Bowman, <u>43</u> MOTION for Summary Judgment *Dispositive* filed by James Ficken, Suncoast First Trust. Court Reporter: Sharon A. Miller (BGS) (Entered: 11/16/2020) |
| 12/04/2020 | <u>84</u> | | TRANSCRIPT of MOTION HEARING (Docs 42, 43) held on NOVEMBER 16,20202 before Judge CHARLENE EDWARDS HONEYWELL. Court Reporter/Transcriber SHARON A. MILLER,Telephone number 813–301–5041. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter.. Redaction Request due 12/28/2020, Redacted Transcript Deadline set for 1/4/2021, Release of Transcript Restriction set for 3/4/2021. (SAM) (Entered: 12/04/2020) |
| 12/04/2020 | 85 | | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal. Court Reporter: Sharon A. Miller. (SAM) (Entered: 12/04/2020) |
| 12/30/2020 | 86 | | **ENDORSED ORDER ruling deferred <u>66</u> Motion in Limine; ruling deferred <u>67</u> Motion in Limine. As a result of the coronavirus, civil jury trials have not resumed in the Tampa Division. Therefore, the Court will defer a ruling on these motions until a trial date has been rescheduled. Signed by Judge Charlene Edwards Honeywell on 12/30/2020. (CEH)** (Entered: 12/30/2020) |
| 02/02/2021 | <u>87</u> | | NOTICE of Change in Local Rules. (BGS) (Entered: 02/02/2021) |
| 04/26/2021 | <u>88</u> | | **ORDER: 1. Defendants' Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law <u>42</u> is GRANTED. 2. Plaintiffs' Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law <u>43</u> is DENIED. 3. The Clerk is directed to enter JUDGMENT in favor of Defendants City of Dunedin, Florida and Dunedin Code Enforcement Board and against Plaintiffs James Ficken and Suncoast First Trust. 4. The Clerk is further directed to terminate all pending motions and close this case. Signed by Judge Charlene Edwards Honeywell on 4/26/2021. (GLP)** (Entered: 04/26/2021) |
| 04/26/2021 | <u>89</u> | | **JUDGMENT in favor of City of Dunedin, Florida, Dunedin Code Enforcement Board against Suncoast First Trust, James Ficken. Signed by Deputy Clerk on 4/26/2021. (CTR)** (CTR). (Entered: 04/26/2021) |
| 05/10/2021 | <u>90</u> | | PROPOSED BILL OF COSTS by City of Dunedin, Florida, Dunedin Code Enforcement Board. (Attachments: # <u>1</u> Exhibit Exhibit A)(Daigneault, Jay) (Entered: 05/10/2021) |
| 05/24/2021 | <u>91</u> | | Joint MOTION to Stay *Taxation of Costs Pending Appeal* by James Ficken, Suncoast First Trust. (Bargil, Ari) (Entered: 05/24/2021) |
| 05/24/2021 | <u>92</u> | | |

| | | | NOTICE OF APPEAL as to <u>88</u> Order on Motion for Summary Judgment, <u>53</u> Order on Motion to Compel, <u>89</u> Judgment by James Ficken, Suncoast First Trust. Filing fee $ 505, receipt number AFLMDC−18287726. (Bargil, Ari) (Entered: 05/24/2021) |
|---|---|---|---|

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES FICKEN, trustee,
SUNCOAST FIRST TRUST, and
SUNCOAST FIRST TRUST,

      Plaintiffs,

v.                                    Case No. 8:19-cv-1210-T-36SPF

CITY OF DUNEDIN, FLORIDA, et al.,

      Defendants.
_____/

## **ORDER**

This matter is before the Court on Plaintiffs' Motion to Compel Production of Documents and Interrogatory Responses (Doc. 36) and Second Motion to Compel Production of Documents (Doc. 40). Defendants filed a Response to the motions (Doc. 41). The Court held a hearing on the motions on May 6, 2020 at which it heard argument from the parties.

For the reasons stated at the hearing, it is hereby

**ORDERED**:

(1) Plaintiffs' Motion to Compel Production of Documents and Interrogatory Responses (Doc. 36) and Second Motion to Compel Production of Documents (Doc. 40) are GRANTED IN PART and DENIED IN PART as follows:

      a. granted as to Request for Production 5 and Interrogatory 6 with respect to information regarding the effects of overgrown lawns the code enforcement board relied on when considering the gravity of Plaintiff's violation(s) in 2018;

    b. granted as to Request for Production 3 and Third Request for Production 1 but limited to assessments, audits or studies by the City of Dunedin or the code enforcement board commissioned covering the period from July 5, 2018 to August 21, 2018, and denied as to drafts and communications;

    c. denied as to Interrogatory 4;

    d. denied as to Interrogatory 8;

    e. as to Interrogatory 9, the motion is denied as to the May 16, 2019 Tampa Bay Times story but otherwise granted, and the City of Dunedin shall provide a list of every interaction between code-enforcement officials and Plaintiff from July 5, 2018 to August 21, 2018;

    f. denied as to Request for Production 4 and Interrogatory 1;

    g. granted as to Interrogatory 7 but limited to fiscal years 2010, 2014, and 2018; and

    h. granted as to Request for Production 6 as to any information in the personnel files of Tom Colbert and Mike Kepto in which they make reference to code enforcement actions made in an effort to generate revenue from 2015 through 2018.

(2) Defendants shall produce the requested discovery within 14 days of the date of this Order.

**ORDERED** in Tampa, Florida, this 6th day of May 2020.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

2

17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES FICKEN and SUNCOAST
FIRST TRUST,

       Plaintiffs,

v.                            Case No: 8:19-cv-1210-CEH-SPF

CITY OF DUNEDIN, FLORIDA,
and DUNEDIN CODE
ENFORCEMENT BOARD,

       Defendants.
_____/

## O R D E R

This cause comes before the Court upon Defendants' Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 42) and Plaintiff's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 43). Both motions are ripe for the Court's review (Docs. 49, 51).

This action arises from a property owner's repeated failure to cut grass. The Dunedin Code Enforcement Board imposed nearly $30,000 in fines for that failure, and, with the fines outstanding, thereafter authorized foreclosure. Constitutional challenges are now raised.

The Court, having considered the parties' submissions and being fully advised in the premises, will grant Defendants' Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law and deny Plaintiff's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law.

# I.    BACKGROUND

## A. Undisputed Facts[1]

### i.  Lady Marion Property and Other Properties

James Ficken ("Ficken") is the settlor and sole trustee of Suncoast First Trust. Doc. 42-1[2] at 20:1–19, 96:25, 96:1–2; Doc. 63 ¶1; Doc. 43-2 ¶2. He created the trust in 2007 to hold title on the real property located at 1341 Lady Marion Lane in Dunedin, Florida (the "Lady Marion Property"). Doc. 42-1 at 20:8–13. The parties agree that, as trustee of Suncoast First Trust, Ficken owns the Lady Marion Property. Doc. 63 ¶1. The sole beneficiary of Suncoast First Trust is the Marinelle E. Ficken Living Trust. Doc. 42-1 at 21:5–17. The Lady Marion Property is the subject of this action.

Ficken is also the settlor, sole trustee, and sole beneficiary of the Clearwater Residential Trust, which holds real property located at 1608 North Osceola Avenue in Clearwater, Florida (the "Clearwater Property") as its only asset. Doc. 42-1 at 27:12–25, 28:1–21; see Doc. 43-2 ¶4. Ficken owned the Clearwater Property individually and conveyed it to the Clearwater Residential Trust in the mid-1990s. Doc. 42-1 at 74:10–15, 75:1–6. After purchasing the Clearwater Property, he lived in an improved structure on the property. Id. at 75:21–25, 76:1–4. Ficken still used the Clearwater

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including declarations and exhibits, as well as the parties' Joint Statement of Undisputed Facts for Cross-Motions for Summary Judgment.

[2] Doc. 42-1 is Ficken's deposition.

Property as a residence when he conveyed it to the Clearwater Residential Trust. *Id.* at 76:10–12. He does not live there today. *Id.* at 76:22–23; Doc. 43-2 ¶4.

Additionally, Ficken is the settlor and sole trustee of Suncoast Third Trust, which was created to hold title on real property located at 53 Highland Avenue in Dunedin, Florida (the "Highland Property"). Doc. 42-1 at 22:3–17. The Highland Property is the sole asset of Suncoast Third Trust. *Id.* at 22:24–25, 23:1. Suncoast Third Trust acquired the Highland Property in approximately 2006 or 2007 to "flip" the property, and Ficken has used the property to store items left behind by the previous owner. *Id.* at 93:22–24, 94:3–5, 95:2–7.

Ficken has claimed a homestead exemption on the Clearwater Property for each and every year following his conveyance to the Clearwater Residential Trust. *Id.* at 78:8–13; Doc. 43-2 ¶4. Ficken has not elected to claim the homestead exemption on another property because of "possible tax implications" and his intention to repair the Clearwater Property. Doc. 42-1 at 97:10–16; Doc. 43-2 ¶4.

*ii.  2015 Violation*

In March of 2015, City Code Enforcement Inspector Michael Kepto ("Kepto") issued a notice of violation regarding grass overgrowth at the Lady Marion Property (the "2015 Notice of Violation"). Doc. 42-4 at 10; Doc. 43-2 ¶11. At the time, Ficken was in South Carolina, where he had been since August of 2014, attending to his elderly mother, "with the occasional trip back to Pinellas County, Florida." Doc. 42-1 at 103:15–18; Doc. 43-2 ¶11; Doc. 42-4 at 65.

On March 30, 2015, Ficken sent an e-mail to Kepto, in which he requested more time "to get the lawn mowed" because he was out of town caring for his mother and would not return until the week of April 12, 2015. Doc. 42-4 at 65; Doc. 43-2 ¶12; Doc. 43-3 at 4. Ficken advised that his "travel opportunities" were "constrained" because he served as his mother's "24/7/365 caretaker." Doc. 42-4 at 65; Doc. 43-3 at 4. He indicated that he should be able to mow the lawn later in the week of April 12, 2015. Doc. 42-4 at 65; Doc. 43-3 at 4. Later that day, Kepto responded that he would not extend the compliance date "based on the past history for this property and mowing . . . ." Doc. 42-4 at 67; Doc. 43-3 at 5. Kepto also stated:

> This case will be presented to the Code Enforcement Board and ANY time in the next five years we document that the property is overgrown you could receive up to a $500 PER DAY lien as a "Repeat Violation." I would strongly suggest that you schedule regular mowing for this property to prevent any liens being placed.

Doc. 42-4 at 67; Doc. 43-3 at 5.

On April 3, 2015, Ficken expressed his disappointment that Kepto declined to extend the compliance date and offered several reasons for the Lady Marion Property's lack of maintenance: he did not have the contact information for a car repair service and, therefore, could not transport his mower; he sent an e-mail to a lawn service provider, but did not receive a response; and the mower of the lawn service provider that he previously used was broken, but the provider planned on receiving a new mower that day, although the provider would need to catch up on other scheduled clients before working at the Lady Marion Property. Doc. 42-4 at 69; Doc. 43-2 ¶12;

4

Doc. 43-3 at 7. As such, Ficken advised that he was hopeful that the yard would be cut "in the next few days." Doc. 42-4 at 69; Doc. 43-3 at 7. On April 7, 2015, Ficken advised Kepto that the yard at the Lady Marion Property had been cut by a lawn service provider that day. Doc. 42-4 at 69; Doc. 43-3 at 8. Accordingly, Ficken wrote, "I hope you approve and cancel the Code Board hearing." Doc. 42-4 at 69; Doc. 43-3 at 8.

But, Kepto advised that the Code Enforcement Board (the "Board") would still hear the case, notwithstanding a lawn service provider mowing the lawn on April 7, 2015. Doc. 42-4 at 69; Doc. 43-3 at 9. Kepto predicted, "The Board will find that you were NOT in compliance by the compliance date however you ARE in compliance now." Doc. 42-4 at 69; Doc. 43-3 at 9. Kepto further emphasized:

> This means that anytime within the next five years that we see any of your properties with overgrowth there will be a photo taken to document the violation and EACH DAY the violation occurs you will be sent back to the Code Enforcement Board for a "REPEAT VIOLATION" which could result in a higher fine of $500 per day. This is to encourage you to maintain the property without Code Enforcement becoming your property manager advising you of the condition of the property.

Doc. 42-4 at 69; Doc. 43-3 at 9.

The case was scheduled to be heard by the Board on May 5, 2015. Docs. 42-4 at 79; 43-3 at 11–12. On May 1, 2015, Ficken requested a continuance of the meeting or, alternatively, permission to appear via telephone, because he was "unable to travel to Florida" as a result of caring for his mother. Doc. 42-4 at 85; Doc. 42-1 at 113:1–2; Doc. 43-3 at 18. Ficken did not attend the hearing, but a former neighbor of the

Clearwater Property attended on his behalf. Doc. 42-1 at 113:8–24, 114:4–6; Doc. 43-2 ¶12. During the hearing on May 5, 2015, the Board passed a motion finding that the Lady Marion Property was in compliance, but had not been in compliance by the compliance date. Doc. 42-6 at 18:3–25, 19:1–25; Doc. 43-24 at 19:3–25, 20:1–25; Doc. 43-2 ¶12; Doc. 63 ¶2. The Board issued a written order, dated May 13, 2015, which reflected that the Lady Marion Property had been in violation past the March 29, 2015 date for compliance, but was presently in compliance. Doc. 42-4 at 117–118; Doc. 43-2 ¶13; Doc. 43-4 at 2–3; Doc. 63 ¶2. Although the Board did not impose a fine, Doc. 42-1 at 116:15–17; Doc. 43-2 ¶13, the written order advised, "This matter is deemed to be of a recurring nature and should it recur, by law the Board can levy fines up to $500.00 a day plus daily interest and any recording fees shall be imposed against the Respondent," Doc. 42-4 at 118; Doc. 43-4 at 3.

### iii.  2018 Violation

On July 5, 2018, Dunedin Code Enforcement Officer Thomas Colbert ("Colbert") visited the Lady Marion Property and observed that the grass was longer than ten inches. Doc. 63 ¶3. For the period between July 5, 2018 and August 20, 2018, there is only one record of any interaction between Ficken and Colbert, which occurred on August 20, 2018. *Id.* at ¶4. On August 21, 2018, Ficken mowed the lawn of the Lady Marion Property. *Id.* at ¶5. However, on August 22, 2018, Colbert issued a "notice of violation" for the Lady Marion Property. *See id.* at ¶¶6, 8.

On August 24, 2018, Ficken requested a continuance of the hearing because an August 25, 2018 plane ticket for his departure from Florida to South Carolina could

6

not be "changed or refunded." Doc. 42-4 at 179; Doc. 43-7 at 2; Doc. 43-2 ¶¶22, 24. He alternatively requested to appear by telephone. Doc. 42-4 at 179; Doc. 43-7 at 2. He also stated his belief that the Lady Marion Property was in compliance from July 21, 2018 to approximately August 11, 2018. Doc. 42-4 at 179; Doc. 43-7 at 2.

On the same day, Ficken also provided a letter for inclusion in the record, if the Board denied his request for a continuance. Doc. 42-4 at 151; Doc. 43-7 at 3. Therein, Ficken admitted the repeat violation, but disputed the period of non-compliance. Doc. 42-4 at 151; Doc. 43-7 at 3. Ficken asserted that his focus both before and after the March 2015 violation had been on attending to his mother in South Carolina and settling the out-of-state portion of her estate following her death. Doc. 42-4 at 151; Doc. 43-7 at 3. Further, Ficken advised that his lawnmower had "malfunctioned during the late July lawn cutting, but it was completed," and the individual who had previously repaired the mower had died during his most recent absence. Doc. 42-4 at 151; Doc. 43-7 at 3. Ficken claimed that he had unsuccessfully attempted to fix the mower on three occasions after it "halted during service" on August 12, 2018. Doc. 42-4 at 151; Doc. 43-7 at 3. Ficken advised that after receiving a warning from Colbert regarding the "impending action" on August 20, 2018, he purchased a new mower and mowed the yard on August 21, 2018. Doc. 42-4 at 151; Doc. 43-7 at 3. Consequently, Ficken represented, "I now have a reliable machine for when I'm here, and have hired a firm, my fourth over the years, to cut the yard when I'm gone." Doc. 42-4 at 151; Doc. 43-7 at 3.

Ficken subsequently sent another letter, dated August 30, 2018, to the Board for inclusion in the record, if the Board denied his request for a continuance. Doc. 42-4 at 153; Doc. 43-7 at 5. Therein, although he objected to the inclusion of "an inspection list going back more than a decade," Ficken recognized that he had completed the requested mitigation in all prior cases, except for the 2015 case and the instant case. Doc. 42-4 at 153; Doc. 43-7 at 5. Additionally, he emphasized that future compliance would not be a problem because he was spending more time in Dunedin and had a "stronger, reliable mower." Doc. 42-4 at 153; Doc. 43-7 at 5.

The Board heard the case on September 4, 2018. *See generally* Doc. 42-9; Doc. 43-26. Ficken did not attend the hearing on September 4, 2018, nor did anyone attend on his behalf. Doc. 42-1 at 140:6–11; Doc. 43-2 ¶¶23–24. The Board "voted to fine Mr. Ficken as a repeat offender at the statutory maximum daily fine of $500." Doc. 63 ¶7. The parties agree that the "repeat offender" classification was based on the 2015 violation. *Id.* The Board voted to impose two fines: one for the period from July 5 to August 20 and another, continuing fine, running from August 31. *Id.* The Board issued two written orders: (1) the first order, dated September 12, 2018, found Suncoast First Trust was in repeat violation from July 5, 2018 through August 20, 2018 and imposed a fine of $500 per day for each day that the violation existed; and (2) the second order, dated September 12, 2018, found Suncoast First Trust in repeat violation and ordered the assessment of a $500 daily fine, beginning on August 31, 2018, for each day until compliance was achieved. Doc. 42-4 at 199–203; Doc. 43-9 at 2–5.

The Board later accepted an affidavit attesting that the Lady Marion Property was in compliance as of September 10, 2018. Doc. 63 ¶8. As such, the fine was in the amount of $28,500.00, plus interest.[3] *Id.* Ficken filed his Petition to Reconsider or Rehear. Doc. 42-4 at 209–210; Doc. 43-12 at 2–3. Ficken claimed, among other things, that he had learned on July 18, 2018 that the individual who had been cutting the yard in his absence—Russ Kellum—had died. Doc. 42-4 at 209; Doc. 43-12 at 2. Ficken averred that the Lady Marion Property was in compliance from July 20 until approximately August 12 and from August 21 until the present. Doc. 42-4 at 209–210. Ficken subsequently filed an Amended Petition to Reconsider or Rehear, in which he amended prior factual allegations. Doc. 42-4 at 221–22; Doc. 43-13 at 2–3.

The Board heard Ficken's request for reconsideration or rehearing on November 6, 2018, which Ficken attended. Doc. 43-28 at 5–7. *See generally* Doc. 42-10; Doc. 51-6. At the hearing, the Board passed a motion denying Ficken's request for rehearing. Doc. 42-10 at 16:8–25, 17:1–16; Doc. 43-28 at 7.

The City recorded copies of the orders imposing fines in the public records, constituting liens on the Lady Marion Property. Doc. 63 ¶9. In a February 13, 2019 letter addressed to Suncoast First Trust, City Attorney Thomas Trask ("Trask") advised that two liens had been placed on the Lady Marion Property on September 18, 2018. Doc. 42-4 at 229; Doc. 43-14 at 2. Trask sought the collection of the liens in

---

[3] The parties stipulate that this amount is calculated by multiplying $500 by 57, which represents the total number of days (47 days for the first period and 10 days for the second period). Doc. 63 ¶8 n.1.

the amount of $29,833.50, which included interest and costs. Doc. 63 ¶11; Doc. 42-4 at 229; Doc. 43-14 at 2. The letter advised that the City would begin foreclosure proceedings, unless payment was made to the City within fifteen days of the date of the letter. Doc. 42-4 at 230; Doc. 43-14 at 3. Doc. 63 ¶11. On May 7, 2019, the Board authorized Trask to pursue foreclosure of the Lady Marion property to collect on the liens. *Id.* at ¶12. Ficken and Suncoast First Trust initiated this action on the same day. *Id.* at ¶13.

### B. Claims

Ficken and Suncoast First Trust (collectively, "Plaintiffs") bring four claims against the City and the Board (collectively, "Defendants") in the operative, second amended complaint (the "Second Amended Complaint"). Doc. 77 ¶¶94–144.

Plaintiffs first bring a claim for violation of the Excessive Fines Clause of the Eighth Amendment to the United States Constitution (Count I), in which they allege that, as applied, the City's daily fines of $500 and aggregate fines of over $29,000 are disproportionate to the "offense of having tall grass." *Id.* at ¶98. They also allege in this claim that, as applied, the "ultimate penalty" imposed by the City—the foreclosure—is disproportionate to the "offense of having tall grass." *Id.* at ¶100. And, they allege that on its face and as applied, the "City's system of limitless fines for all non-irreparable code violations" violates the Excessive Fines Clause of the Eighth Amendment. *Id.* at ¶102. Consequently, Plaintiffs allege that the City must be enjoined from collecting fines and foreclosing on the Lady Marion Property. *Id.* at ¶¶103–104. Plaintiffs also bring a claim for violation of the Excessive Fines Clause of Section 17

10

of Article I of the Florida Constitution (Count II), which mirrors Count I, except that Plaintiffs also allege that, as applied, the City's daily fines of $500 and aggregate fines of over $29,000, as well as the foreclosure of the Lady Marion Property as a result of tall grass, shocks the conscience. *Id.* at ¶¶110, 114.

In Count III, which is labeled as "Procedural Due Process under the U.S. Constitution," Plaintiffs claim that the City's purported failure to notify Ficken of "the consequences of his 'repeat violator' classification" and supply him with "an opportunity to contest such classification before it was applied to him" constituted a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, as Ficken was allegedly entitled to "appropriate notice and an opportunity to be heard regarding his qualification for a legal status that, once applied, would result in the deprivation of certain procedural protections." *Id.* at ¶126. According to Plaintiffs, the City's imposition of fines against Ficken, without providing notice to Ficken that the fines "were being imposed on an ongoing basis" constitutes a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* at ¶128. Consequently, Plaintiffs claim, the City must be enjoined from collecting the fines and foreclosing on the Lady Marion Property. *Id.* at ¶¶129–130. In Count IV, which is labeled "Procedural Due Process under the Florida Constitution," Plaintiffs repeat these allegations, except they tailor them to the Due Process Clause of Section 9 of Article I of the Florida Constitution. *Id.* at ¶¶133–144.

11

Plaintiffs now move for summary judgment on all claims. <u>Doc. 43 at 31</u>. Defendants likewise move for summary judgment on all claims. <u>Doc. 42 at 26</u>. Responses in opposition to the motions have been filed, and the Court held oral argument on the motions.[4] Docs. 49, 51, 82.

## II.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. <u>Fed. R. Civ. P. 56(c)</u>; *Celotex Corp. v. Catrett*, <u>477 U.S. 317, 322</u> (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, <u>477 U.S. at 323</u>; *Hickson Corp. v. N. Crossarm Co.*, <u>357 F.3d 1256, 1259</u>–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, <u>477 U.S. at 325</u>.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence

---

[4] The parties renewed their motions after the Court dismissed the prior complaint as a shotgun pleading. Docs. 76, 80. Unlike the prior complaint, the Second Amended Complaint does not name members of the Board in their official capacities as defendants. *See generally* Docs. 22, 77. Further, although the Case Management and Scheduling Order provided Plaintiffs and Defendants with leave to file a reply, neither Plaintiffs nor Defendants filed a reply. <u>Doc. 17 at 7</u>.

present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. But, a party cannot defeat summary judgment by relying on conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006). Summary judgment should be granted only if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th

13

Cir. 1975)). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555–56.

## III.  DISCUSSION

The Court will first (A) examine the relevant language of Chapter 162, Florida Statutes, Chapter 22, Dunedin Code of Ordinances ("DCO") and then analyze (B) the due process claims and (C) the excessive fines claims. For the reasons articulated below, Defendants' Dispositive Motion for Summary Judgment is due to be granted.

### A. Chapter 162, Florida Statutes, and Chapter 22, DCO

#### i.  Introduction

The analysis begins, as it must, with an examination of Chapter 162, Florida Statutes, and Chapter 22, DCO. The intent of the Local Government Code Enforcement Act, Section 162.01 *et seq.*, Florida Statutes, is to

> promote, protect, and improve the health, safety, and welfare of the citizens of the counties and municipalities of this state by authorizing the creation of administrative boards with authority to impose administrative fines and other noncriminal penalties to provide an equitable, expeditious, effective, and inexpensive method of enforcing any codes and ordinances in force in counties and municipalities, where a pending or repeated violation continues to exist.

Fla. Stat. §§ 162.01, 162.02.

To that end, the Florida Legislature authorized municipalities to create, by ordinance, local government code enforcement boards. *Id.* § 162.03(1). Municipalities may, by ordinance, adopt an alternate code enforcement system that provides code

14

enforcement boards with "the authority to hold hearings and assess fines against violators of the respective . . . municipal codes and ordinances." *Id.* § 162.03(2).

The DCO largely mirrors the language of Chapter 162.[5] By ordinance, the City "created a code enforcement board" to "hold hearings and make findings and impose fines for violations," as provided in Chapter 22, DCO. *Id.* § 22-41.

### ii.  Violations, Repeat Violations, Notice, and Fines

A "code inspector"—"code enforcement officer" under the DCO—maintains the duty to initiate code enforcement proceedings of the various codes and ordinances. Fla. Stat. § 162.06(1); City of Dunedin, Fla., Code of Ordinances § 22-71. Members of the Board do not have the power to initiate proceedings. Fla. Stat. § 162.06(1); City of Dunedin, Fla., Code of Ordinances § 22-71. The DCO defines "code enforcement officer" as "any authorized agent or employee of the city whose duty it is to ensure code compliance . . . ."[6] City of Dunedin, Fla., Code of Ordinances § 22-42.

---

[5] For example, Section 22-1, DCO, provides that the City's intent through Chapter 22 of the DCO is to

> promote, protect, and improve the health, safety, and welfare of the citizens of the city by creating a volunteer administrative board with authority to impose administrative fines and other noncriminal penalties to provide an equitable, expeditious, effective, and inexpensive method of enforcing any codes and ordinances in force in the city, where a pending or repeated violation continues to exist.

City of Dunedin, Fla., Code of Ordinances § 22-1. *See id.* § 22-3 (providing that the legislative intent of Chapter 22 is to supply "an additional or supplemental means of obtaining compliance with city codes and ordinances").

[6] "*Code* means a compilation of regulations, standards, rules and/or ordinances, such as any of the several chapters of the City Code or its ordinances, the Land Development Code, or

Section 162.06(2), Florida Statutes, and Section 22-72, DCO, set forth the procedures to be followed if the code enforcement official finds a violation. This procedure differs from the procedure for repeat violations. Fla. Stat. § 162.06(2)–(3); City of Dunedin, Fla., Code of Ordinances §§22-72, 22-73. Under the statute, except as provided in Section 162.06(3), Florida Statutes—addressing repeat violations—and Section 162.06(4), Florida Statutes—addressing instances in which the code inspector has reason to believe that a violation or a condition causing a violation "presents a serious threat to public health, safety, and welfare" or the violation is irreversible or irreparable—"if a violation is found, the code inspector shall notify the violator and give him or her a reasonable time to correct the violation." Fla. Stat. § 162.06(2)–(4). If the violation continues past the time specified for correction, the code inspector must notify an enforcement board and request a hearing. *Id.* § 162.02(2). The code enforcement board must schedule a hearing, and written notice of the hearing must be hand-delivered or mailed in the manner provided in the statute to the violator. *Id.* The code enforcement board may further serve notice by publication or posting, as provided in the statute. *Id.* If the violation is corrected and subsequently recurs, or if the violation is not corrected by the time specified by correction, the case may be presented to the code enforcement board, regardless if the violation has been corrected before the board hearing, and the notice shall so state. *Id.*

The DCO mirrors this language regarding violations:

---

any other codes or technical codes of the city." City of Dunedin, Fla., Code of Ordinances § 22-42 (emphasis in original).

16

> Except as provided in sections 22-73 [addressing repeat violations] and 22-74 [addressing instances in which the code enforcement officer has reason to believe that a violation or a condition causing a violation serves as a serious threat to public health, safety, and welfare or the violation or condition is irreversible or irreparable], if a violation of the codes or ordinances is found, the code enforcement officer shall notify the violator and give him a reasonable time to correct the violation. Should the violation continue past the time specified for correction, the code enforcement officer shall notify the code enforcement board and request a hearing. The code enforcement board, through its clerical staff, shall schedule a hearing, and written notice of such hearing shall be hand delivered or mailed as provided in section 22-84 to the violator. At the option of the code enforcement board, notice may additionally be served by publication or posting as provided in section 22-84. If the violation is corrected and then recurs, or if the violation is not corrected by the time specified for correction by the code enforcement officer, the case may be presented to the code enforcement board even if the violation has been corrected prior to the board hearing, and the notice shall so state.

City of Dunedin, Fla., Code of Ordinances § 22-72.

But, a "repeat violation" is treated differently. A "repeat violation"

> means a violation of a provision of a code or ordinance by a person who has been previously found through a code enforcement board or any other quasi-judicial or judicial process, to have violated or who has admitted violating the same provision 5 years prior to the violation, notwithstanding the violations occur at different locations.

Fla. Stat. § 162.04(5). *See* City of Dunedin, Fla., Code of Ordinances § 22-42.

"If a repeat violation is found, the code inspector shall notify the violator *but is not required to give the violator a reasonable time to correct the violation*. The code inspector, upon notifying the violator of a repeat violation, shall notify an enforcement board and request a hearing." Fla. Stat. § 162.06(3) (emphasis added). The code enforcement board, through its staff, must schedule a hearing and provide the notice required under

17

the statute. *Id.* The case may be presented to the code enforcement board even if the repeat violation is corrected before the hearing, and the notice shall so state. *Id.* Further, "[i]f the repeat violation has been corrected, the code enforcement board retains the right to schedule a hearing to determine costs and impose the payment of reasonable enforcement fees upon the repeat violator." *Id.* The repeat violator also may elect to waive his or her rights to the hearing and pay the costs determined by the code enforcement board. *Id.* Once again, the DCO mirrors all of this language, except that the DCO provides that "[t]he case may be presented to the enforcement board even if the repeat violation has been corrected prior to the board hearing, *the automatic fine shall be levied*, and the notice shall so state." City of Dunedin, Fla., Code of Ordinances § 22-73 (emphasis added).

All required notices must be provided to the alleged violator by one of four specified methods. Fla. Stat. § 162.12(1)(a)–(d); City of Dunedin, Fla., Code of Ordinances § 22-84(a)(1)–(4). One of the specified methods for notice under the DCO is by "[c]ertified mail to the address listed in the tax collector's office for tax notices, or to any other address provided by the property owner in writing to the city commission for the purpose of receiving notices." City of Dunedin, Fla., Code of Ordinances §22-84(a)(1). As an additional form of notice, a code enforcement board may elect to utilize notice by publication or posting. Fla. Stat. § 162.12(b); City of Dunedin, Fla., Code of Ordinances § 22-84(b).

During a hearing, a code enforcement board must take testimony from the code enforcement officer and the alleged violator. Fla. Stat. § 162.07(3); City of Dunedin,

Fla., Code of Ordinances § 22-75(e). At the hearing's conclusion, an enforcement board must issue findings of facts, based on evidence of record, and conclusions of law, and the board must "issue an order affording the proper relief" consistent with those powers granted. Fla. Stat. § 162.07(3); City of Dunedin, Fla., Code of Ordinances § 22-75(f). Additionally, the order "may include a notice that it must be complied with by a specified date and that a fine may be imposed . . . if the order is not complied with by such date." Fla. Stat. § 162.07(3). *See* City of Dunedin, Fla., Code of Ordinances § 22-75(f).

Under the statute, a code enforcement board, upon being notified by the code inspector that an order of the board "has not been complied with by the set time" or "upon a finding that a repeat violation has been committed," may order the violator to pay a fine in the amount specified for fines under Chapter 162, Florida Statutes, "for each day the violation continues past the date set by the enforcement board for compliance or, in the case of a repeat violation, for each day the repeat violation continues, beginning with the date the repeat violation is found to have occurred by the code inspector." Fla. Stat. § 162.09(1). Similarly, the DCO provides that the Board, upon notification by a code enforcement officer that an order of the Board "has not been complied with by the time set" or, "upon finding that a repeat violation has been committed," may order the violator to pay a fine in the amount specified in Chapter 22, DCO, "for each day the violation continues past the date set by the code enforcement board for compliance or, in the case of a repeat violation, for each day the repeat violation continues past the date of notice to the violator of the repeat

violation." If a finding of a violation or repeat violation has been made, a hearing is not necessary for issuing an order imposing the fine. Fla. Stat. § 162.09(1); City of Dunedin, Fla., Code of Ordinances § 22-79(c). Fines imposed pursuant to this section may not exceed $250 per day for a first violation, may not exceed $500 per day for a repeat violation, and may include costs of repair. Fla. Stat. § 162.09(2)(a); City of Dunedin, Fla., Code of Ordinances § 22-79(d).

A code enforcement board, in determining the amount of any fine, must consider the following factors: (1) the gravity of the violation; (2) any actions taken by the violator to correct the violation; and (3) any previous violations committed by the violator. Fla. Stat. § 162.09(2)(b); City of Dunedin, Fla., Code of Ordinances § 22-80(1)–(3). The DCO adds another factor for consideration: "[t]he courtesy and cooperation the violator extends to the code enforcement officer." City of Dunedin, Fla., Code of Ordinances § 22-80(4).

### iii.   Liens and Appeal

Significantly, a certified copy of a code enforcement board order imposing a fine may be recorded in the public records of the county and subsequently such order shall constitute a lien against the land upon which the violation exists and upon any other real property or personal property which is owned by the violator. Fla. Stat. § 162.09(3); City of Dunedin, Fla., Code of Ordinances § 22-81. The DCO deems this lien superior to all other liens or encumbrances against the property, except taxes. City of Dunedin, Fla., Code of Ordinances § 22-81. Further, upon petition to the circuit court, the order "may be enforced in the same manner as a court judgment by the

20

sheriffs of the state," but the order shall not be deemed a court judgment, except for purposes of enforcement. Fla. Stat. § 162.09(3); City of Dunedin, Fla., Code of Ordinances § 22-81. A fine imposed pursuant to the aforementioned language shall continue to accrue until either the violator comes into compliance or a judgment is rendered in a suit to foreclose on a lien filed pursuant to the sections governing liens, whichever occurs first. Fla. Stat. § 162.09(3); City of Dunedin, Fla., Code of Ordinances § 22-81. Like the statute, the DCO provides that, after three months from the filing of such lien that remains unpaid, the Board may authorize the city attorney to foreclose on the lien. City of Dunedin, Fla., Code of Ordinances § 22-81; Fla. Stat. § 162.09.

Finally, an "aggrieved party" may appeal a final administrative order of a code enforcement board to the circuit court. Fla. Stat. § 162.11; City of Dunedin, Fla., Code of Ordinances § 22-83. This appeal shall be limited to appellate review of the record created before the enforcement board, not a hearing *de novo*. Fla. Stat. § 162.11; City of Dunedin, Fla., Code of Ordinances § 22-83. "An appeal must be filed within 30 days of the execution of the order to be appealed." Fla. Stat. § 162.11; City of Dunedin, Fla., Code of Ordinances § 22-83.

With this framework in mind, the Court will now analyze the due process claims and the excessive fines claims.

### B. Due Process

As discussed above, Plaintiffs bring due process claims under the United States Constitution and the Florida Constitution against Defendants. These claims will be

21

addressed together. The Court will (i) examine relevant law before (ii) analyzing Defendants' Dispositive Motion for Summary Judgment and (iii) analyzing Plaintiffs' Dispositive Motion for Summary Judgment. For the reasons set forth below, Defendants' Dispositive Motion for Summary Judgment will be granted as to these due process claims.

### i. Relevant Law

The Fourteenth Amendment to the United States Constitution provides, in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. "The Supreme Court's interpretation of this clause explicates that the amendment provides two different kinds of constitutional protection: procedural due process and substantive due process." *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Here, Plaintiffs style their claims as procedural due process claims.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 429 U.S. 319, 333 (1976). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (internal quotation marks omitted). Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances," but instead "is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (internal

22

quotation marks omitted). Determining the requirements of due process in a particular situation requires a court to apply the balancing test articulated in *Mathews*. *Grayden v. Rhodes*, 345 F.3d 1225, 1233 (11th Cir. 2003). Under this test,

> identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335. *See also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be afforded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

Similarly, the Florida Constitution provides, in relevant part, that "[n]o person shall be deprived of life, liberty, or property without due process of law . . . ." Fla. Const. art. I, § 9. "Procedural due process requires both fair notice and a real opportunity to be heard." *Keys Citizens for Responsible Gov't, Inc. v. Fla. Keys Aqueduct Auth.*, 795 So. 2d 940, 948 (Fla. 2001). *See also Scull v. State*, 569 So. 2d 1251, 1252 (Fla. 1990) ("The essence of due process is that fair notice and a reasonable opportunity to be heard must be given to interested parties before judgment is rendered."). "The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their

23

appearance." *Keys Citizens*, <u>569 So. 2d at 1252</u> (internal quotation marks omitted) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, <u>339 U.S. 306, 314</u> (1950)). And, this opportunity to be heard must be "'at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Mathews*, <u>424 U.S. at 333</u>).

Relevant to the federal procedural due process claim here, the Eleventh Circuit has established a three-prong test for establishing a procedural due process claim under <u>42 U.S.C. § 1983</u>.[7] *Foxy Lady, Inc. v. City of Atlanta*, <u>347 F.3d 1232, 1236</u> (11th Cir. 2003). Under this test, a plaintiff must establish: (1) "a deprivation of a constitutionally-protected interest"; (2) state action; and (3) a "constitutionally

---

[7] The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

<u>42 U.S.C. § 1983</u>. "A municipality may be liable under this section if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, <u>563 U.S. 51, 60</u> (2011). "Plaintiffs who seek to impose liability of local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* "Official municipal policy includes decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.*

24

inadequate process." *Id.* (internal quotation marks omitted) (quoting *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)). There also must be a causal connection between the state action and the deprivation. *Kupke v. Orange Cnty.*, 293 F. App'x 695, 697 (11th Cir. 2008).[8]

However, "even if a procedural deprivation exists during an administrative hearing, [a procedural due process] claim will not be cognizable under § 1983 if the state provides a means by which to remedy the alleged deprivation." *Foxy Lady*, 347 F.3d at 1238 (citing *McKinney*, 20. F.3d at 1565). Indeed, "a procedural due process violation is not complete 'unless and until the State fails to provide due process.'" *McKinney*, 20 F.3d at 1557 (quoting *Zinermon*, 494 U.S. at 123). "In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural violation does a constitutional violation actionable under section 1983 arise." *Id.*

"[T]he *McKinney* rule looks to the existence of an opportunity—to whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered." *Horton v. Bd. of Cnty. Comm'rs of Flagler Cnty.*, 202 F.3d 1297, 1300 (11th Cir. 2000). "If state courts would, then there is no federal procedural due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so." *Id.* Further, "[i]f state courts generally would not provide an adequate remedy for that type of

---

[8] Unpublished decisions of the Eleventh Circuit are not binding precedent, but may be cited as persuasive authority. 11th Cir. R. 36-2.

procedural deprivation, then the federal court determines whether the Fourteenth Amendment Due Process Clause requires such a remedy, and if it does, the federal court remedies the violation." *Id.* In considering whether adequate remedies exist, a court must consider which remedies are available under state law, not whether the plaintiff took advantage of those remedies. *Kupke*, 293 F. App'x at 698 (citing *Horton*, 202 F.3d at 1300). To that end, "Florida law ordinarily provides for pre-deprivation process, namely notice and a hearing before the Enforcement Board before a citation will issue, with appellate review to follow." *Id.*

### *ii. Defendants' Dispositive Motion for Summary Judgment*

Each of the procedural due process claims is premised on two alleged failures: the City's purported failure to inform Ficken of the consequences of his[9] "'repeat violator' classification and provide him with an opportunity to contest such classification before it was applied to him," as he "was entitled to appropriate notice and an opportunity to be heard regarding his qualification for a legal status that, once applied, would result in the deprivation of certain procedural protections"; and the City's "imposition of fines" against Ficken without providing him notice "that the fines were being imposed on an ongoing basis." Doc. 77 ¶¶126, 128, 138, 140.

---

[9] The allegations and arguments are styled in this manner, even though Suncoast First Trust served as the respondent in the code enforcement proceedings and the 2018 Board orders stated that Suncoast First Trust was in repeat violation. Doc. 42-4 at 199–203. As such, in certain places in this order, the Court adopts that practice in referencing or discussing the allegations or arguments.

Because it is relevant to the analysis, the Court notes that the parties treat Plaintiffs' federal procedural due process claim as a procedural due process claim under Section 1983.[10] Therefore, the Court construes the federal due process claim as a procedural due process claim under Section 1983. The Court also construes both claims as as-applied challenges.

Defendants argue the following: the evidence contravenes Plaintiffs' allegation that Ficken did not receive due process and Ficken's claim that Defendants failed to notify him that he was classified as a repeat offender; Plaintiffs fail to establish a federal due process claim under Section 1983 and, even if a deprivation occurred, Chapter 162, Florida Statutes, and Chapter 22, DCO, provided an opportunity for Ficken to seek review before the state court of the procedural due process issues that he now raises; and Ficken's claim for a procedural due process violation under the Florida Constitution fails because he received due process and failed to exhaust his administrative remedies by not appealing any of the Board's orders. Doc. 42 at 22–25.

---

[10] In setting forth a basis for the claim's alleged failure, Defendants cite the three-prong test for establishing a procedural due process claim under Section 1983, arguing that Plaintiffs must meet these factors to "establish such a claim." Doc. 42 at 23. Defendants also argued during oral argument that, to establish a federal due process claim under the Fourteenth Amendment, Plaintiffs must show "the element of constitutionally inadequate process," which is one of the elements under this test. Doc. 84 at 19:4–8. In responding to the due process arguments raised in Defendants' Dispositive Motion for Summary Judgment, Plaintiffs represent that "this is a section 1983 case and the procedural due process violation was already complete when the City failed to provide notice." Doc. 51 at 24. Plaintiffs relatedly claim that Defendants' exhaustion argument falls short because the Supreme Court has held that exhaustion is not required for Section 1983 claims. *Id.* Finally, the Second Amended Complaint, which brings the same claims as the prior complaints, alleges that the state court from which this action was initially removed originally had jurisdiction, in part, as a result of Section 1983. Doc. 77 ¶6.

## 1. Evidence

To understand the genesis of Ficken's designation as a "repeat violator," the Court must examine the 2015 violation at the Lady Marion Property. The parties do not dispute that the City issued a citation for overgrown grass at the Lady Marion Property in 2015. Among other evidence, Defendants provide the affidavit of Joan McHale ("McHale"), Business Manager for the City's Code Enforcement Operations, who serves as the custodian of the City's records for code enforcement cases. Doc. 42-4 at 2. McHale provides numerous records with her affidavit. Relevant here, Kepto generated the 2015 Notice of Violation on March 17, 2015, which indicated "Grass or Weeds Exceed 10 Inches in Height" as the violation for the Lady Marion Property and directed the violation to be corrected by March 29, 2015. Doc. 42-4 at 10, 60–61. A notice to appear for a hearing before the Board would be sent if the violation was not "remedied and discontinued." *Id.* at 60. The 2015 Notice of Violation also provided:

> You are hereby notified to correct the attached violation(s) and notify the above signed Special Codes Inspector within the time limits specified. Failure to comply will result in charges being filed against you with the Code Enforcement Board of the City of Dunedin which may result in a potential fine up to $250.00 per day. Repeat violators can be fined up to $500.00 per day. Such charges will be a lien upon the real and/or personal property of the violator and may be collected pursuant to law. The City is also entitled to collect all costs incurred in recording and satisfying a lien against the property.

*Id.* at 61 (original emphasis removed).

Thus, in addition to advising him that failure to correct the violation could result in a fine of $250.00 per day, the 2015 Notice of Violation advised Ficken that repeat

violators could be fined up to $500.00 per day. These fines are consistent with Chapter 162, Florida Statutes, and Chapter 22, DCO, for violations and repeat violations. Kepto mailed the 2015 Notice of Violation to Suncoast First Trust at the Lady Marion Address by March 18, 2015. *Id.* at 10. Kepto also e-mailed to Ficken the "substantive contents" of the 2015 Notice of Violation, which appears to have omitted the language excerpted above. *Id.*; Doc. 42-4 at 63. Nonetheless, Plaintiffs do not challenge the notice provided for the 2015 Notice of Violation. It is undisputed that Ficken, who was in South Carolina at this time caring for his mother, responded on March 30, 2015—one day past the date set for compliance in the 2015 Notice of Violation—to request more time.

In his communications with Ficken, Kepto reiterated that a repeat violator may face a fine up to $500 per day. In rejecting Ficken's request to extend the compliance date, Kepto emphasized that, assuming the Board found Ficken to be in violation, any documented overgrowth within the next five years could result in a "$500 PER DAY lien as a 'Repeat Violation.'" Doc. 42-4 at 67. Additionally, when Ficken asked Kepto on April 7, 2015—over one week after the date set for compliance—to cancel the scheduled hearing because a lawn service provider had mowed the Lady Marion Property's lawn, Kepto predicted that the Board would find that the Lady Marion Property had not been in compliance, meaning that any documented instance of overgrowth observed at one of Ficken's properties within the next five years would result in Ficken returning before the Board for a repeat violation, "which could result in a higher fine of $500 per day." Doc. 42-4 at 69. Although these communications do

not constitute "notice" under Chapter 162, Florida Statutes, or Chapter 22, DCO, they demonstrate efforts to advise Ficken of the consequences of repeat violations. In moving for summary judgment, Plaintiffs also provide these communications and do not dispute that Ficken received them.

Because the violation had continued past the March 29, 2015 compliance date, Kepto requested a hearing before the Board. *Id.* at 11, 73–74. Kepto searched the Property Appraiser records to ensure identification of the owner of record for the Lady Marion Property and sent a Notice of Hearing via certified mail to Suncoast First Trust at the address for the Lady Marion Property. *Id.* at 12, 81. The delivery receipt is dated April 13, 2015, and signed by "J. Ficken." *Id.* at 81. Further, Kepto executed an Affidavit of Service, indicating that he also sent the Notice of Hearing via first class mail, posted a copy at the Lady Marion Property, posted a copy at the City's offices. *Id.* at 12, 83.

The parties agree that the Board heard the case for the 2015 grass overgrowth violation for the Lady Marion Property on May 5, 2015. The parties also agree that Ficken did not attend the hearing. The parties likewise agree that the Board found the Lady Marion Property was in compliance, but had not been in compliance by the March 29, 2015 compliance date. According to McHale, the May 5, 2015 hearing was the first instance that the Board adjudicated Ficken to have violated the DCO.[11] *Id.* at

---

[11] Although unnecessary to the analysis, records provided by McHale also demonstrate that code enforcement officers issued at least twelve notices of violation for overgrowth at the Lady Marion Property between 2007 and 2013. Doc. 42-4 at 3–9. In many of these instances, no further action was taken once the grass was mowed. *See id.*

10. Significantly, the Board's written order, which stated that the Lady Marion Property had been in violation past the compliance date, but was presently in compliance, provided:

> The Board has determined that Respondent is in compliance with IMPC Section 302.4. *This matter is deemed to be of a recurring nature and should it recur, by law the Board can levy fines up to $500.00 a day plus daily interest and any recording fees shall be imposed against the Respondent* [Suncoast First Trust].

Doc. 42-4 at 118 (emphasis added).

The City mailed a copy of the Board's written order to Suncoast First Trust at the address for the Lady Marion Property on May 14, 2015, the receipt for which evidences a signature of "J. Ficken" on June 20, 2015. *Id.* at 13, 120. Plaintiffs do not dispute Ficken's receipt of the Board's written order. Indeed, in moving for summary judgment, Plaintiffs provide a copy of the written order as an exhibit to Ficken's declaration in support of Ficken's proposition that he "later learned" that "the City would treat [him] as a repeat violator for any case involving tall grass in the next five years" as a consequence of the Board's finding. Doc. 43-2 ¶13. Thus, even when viewing the evidence in the light most favorable to Plaintiffs, the record demonstrates that Ficken received the Board's 2015 written order. Ficken admitted in his deposition, which Defendants provide, that he did not appeal the Board's 2015 written order or otherwise ask the Board to reconsider the order. Doc. 42-1 at 116:9–14. Plaintiffs do not provide any evidence to the contrary.

Turning to the 2018 repeat violation, it is undisputed that Colbert observed that the grass at the Lady Marion Property was longer than ten inches on July 5, 2018.

Likewise, the parties agree that Ficken mowed the lawn of the Lady Marion Property on August 20, 2018, and that there is only one record of any interaction between Colbert and Ficken, which also occurred on that date.[12] Although labeled by the parties as a "notice of violation" in their Joint Statement of Undisputed Facts, the records provided by McHale demonstrate that Colbert issued a notice of repeat violation for the Lady Marion Property on August 22, 2018 (the "2018 Notice of Repeat Violation"). Doc. 42-4 at 14, 144–145. The 2018 Notice of Violation, which was addressed to Suncoast First Trust at the address for the Lady Marion Property, stated that an inspection of the Lady Marion Property on July 5, 2018, revealed a repeat violation and provided:

> The violation listed on the attachment must be corrected immediately or a REPEAT FINE WILL BE ASSESSED FOR EACH DAY it occurs. You will receive a notice to appear for a hearing before the Dunedin Code Enforcement Board for repeating the violation. **If** you are found to have committed a repeat violation by the Dunedin Code Enforcement Board, you will be assessed the repeat fine for each day the violation has occurred and that fine will become a lien on your real and/or personal property and may be collected pursuant to law.

Doc. 42-4 at 144 (emphasis in original).

Colbert sent this notice via "regular mail" to Suncoast First Trust at the Lady Marion Property. *Id.* at 14, 144. Additionally, Colbert prepared another notice,

---

[12] During his deposition, Colbert claimed that he encountered Ficken in his yard on July 5, 2018, but also stated that this encounter occurred on August 20, 2018. Doc. 42-7 at 94:11–25, 95:1–19, 112:19–25, 113:1–25. Ficken asserts that the first time he communicated with Colbert regarding the 2018 case was on August 20, 2018, when Colbert purportedly advised Ficken, "You're going to get a big bill from the city." Doc. 43-2 ¶18. As Defendants highlight in their motion, this is not material because a verbal warning is not required.

entitled "Notice of Hearing (Repeat Violation)," also dated August 22, 2018 (the "2018 Hearing and Repeat Violation Notice"). *Id.* at 137 (emphasis in original). The 2018 Hearing and Repeat Violation Notice cited the ordinance that had been violated, listed the date of the violation as July 5, 2018, indicated the violation was a repeat violation, and advised that a hearing was set for September 4, 2018. *Id.* Further, the 2018 Hearing and Repeat Violation Notice provided:

> If you wish to present your side of the case, you must appear before the Code Enforcement Board on that date. Failure to appear may result in the Code Enforcement Board proceeding in your absence. *Should you be found in violation of the above Code*, the Dunedin Code Enforcement Board has the power by law to levy fines of up to $500.00 a day against you and your property for every day that any violation continues beyond the date set in an order of the Board for compliance and the City shall be entitled to recover attorney's fees and all costs incurred in prosecuting the case before the Board. If the violation is corrected before the date of the hearing stated above, the case may still be presented to the Board and a fine may be assessed.
>
> . . .
>
> You will also have the opportunity to present witnesses as well as question the witnesses against you *prior to the Board making a determination*.

*Id.* (emphasis added).

McHale sent a copy of the 2018 Hearing and Repeat Notice Violation via certified mail to Suncoast First Trust at the Lady Marion Property on August 22, 2018. *Id.* at 14. McHale provides an electronic mailing record, which she claims indicates that the 2018 Hearing and Repeat Notice Violation was held at the post office at the customer's request. *Id.* Indeed, an attached electronic delivery confirmation indicates that a document described as "NOH 9-4-2018" was held at the post office at

"Customer Request" on August 24, 2018.[13] *Id.* at 139. Ficken confirmed that he made this request. Doc. 42-1 at 124:2–5. It is undisputed that, on the same day, Ficken requested a continuance of the hearing, or permission to appear telephonically, because his planet ticket could not be "changed or refunded." It is also undisputed that Ficken admitted the repeat violation, although he contested the period of non-compliance. Additionally, Colbert executed an affidavit of service, which provided that, on August 22, 2018, a copy of "Notice of Hearing/Order" was: (1) mailed via certified mail, return receipt requested; (2) posted on the Lady Marion Property; and (3) posted at the City's offices. Doc. 42-3 at 70; Doc. 42-4 at 14, 147. The attached "Notice of Hearing/Order" is not provided, but Defendants represent that this document was the 2018 Hearing and Repeat Notice Violation. Ficken's deposition testimony supports this representation, as he indicated that he first learned of the hearing when he found a notice at the Lady Marion Property. Doc. 42-1 at 125:16–25, 126:1–4.

Ficken did not attend the September 4, 2018 hearing, nor did anyone attend on his behalf. McHale provides the minutes from the hearing, which demonstrate that Colbert explained that he had observed the overgrowth on July 5, 2018 and, because the Board heard "this same violation on May 5, 2015" and found that "any future violations would be a repeat violation with a higher fine," the overgrowth at the Lady Marion Property constituted a repeat violation. Doc. 42-4 at 176. Colbert also

---

[13] Defendants also provide this document as an exhibit to Ficken's deposition. Doc. 42-3 at 67.

provided several photographs of the overgrowth taken during July and August of 2018. *Id.* at 15, 183–197. According to the minutes, Kepto explained that the "City is asking for a two-part order from the Board": (1) a finding by the Board that the Lady Marion Property was in repeat violation for a period of time until it came into compliance; and (2) a finding that the Lady Marion Property was in repeat violation beginning on August 31, 2018, and continuing until the compliance was achieved. *Id.* Colbert recommended that the Board impose a $500 per day fine "based on the facts and circumstances," "the history of the property with the same owner," and the "same violation." *Id.* The parties agree that the Board thereafter voted to fine Suncoast First Trust as a repeat offender at the statutory maximum daily fine of $500. The Board's written orders followed.

### 2.  *Analysis*

Upon consideration of the evidence, the relevant law, and the arguments of the parties, Defendants are entitled to summary judgment on the due process claims. First, the City informed Ficken of the consequences of the repeat violator classification and provided him with a meaningful opportunity to contest this classification before it was applied.[14] The 2015 Notice of Violation notified Ficken of the overgrowth violation. The 2015 Notice of Violation gave Ficken a reasonable time to correct the violation,

---

[14] In responding to the due process arguments raised by Defendants in their summary judgment motion, Plaintiffs focus on only the City's purported delay in informing Ficken in 2018 that he "had been fined" and why the mere existence of an appellate mechanism did not bar Ficken from filing this action. Doc. 15 at 21–29.

and, critically, advised of the consequences that repeat violators may face: fines up to $500 per day. Kepto's communications with Ficken also emphasized that a repeat violator could face a fine up to $500 per day.

When Ficken failed to correct the violation by the deadline, a hearing was scheduled, pursuant to Section 162.06, Florida Statutes, and Section 22-72, DCO, and notice of that hearing was provided to Ficken in accordance with Section 162.12, Florida Statutes, and Section 22-84, DCO. However, Ficken elected not to attend the hearing for this violation. The Board found Suncoast First Trust in violation. Significantly, the Board's written order, which Ficken received, also articulated the consequences of the "repeat violator" classification, advising that the matter was deemed to be of a recurring nature and that, if it recurred, the Board could levy fines up to $500 per day. And, if Ficken took issue with the Board's finding, he could appeal to a circuit court. He did not do so. Thus, going into 2018, Ficken received notice of the consequences of the repeat violator classification and an opportunity to contest such classification before it was applied.

He also received notice and an opportunity in 2018. Although Ficken did not receive notification of the repeat violation observed on July 5, 2018, until over one month later, neither Section 162.06, Florida Statutes, nor Chapter 22-73, DCO, required Colbert to notify Ficken upon observation of a repeat violation. Indeed, for repeat violations, Colbert was required to notify Ficken, but was not required to give Ficken a reasonable time to correct the violation. Colbert was required, upon notifying Ficken, to notify the Board and request a hearing. Even when viewed in the light most

36

favorable to Plaintiffs, the evidence demonstrates that the 2018 Notice of Repeat Violation and the 2018 Hearing and Repeat Violation Notice, the latter of which set the hearing, were separately sent to Suncoast First Trust on August 22, 2018. While an inference could be drawn that the City scheduled a hearing before notifying Ficken of the violation, the due process claims are not premised upon any alleged failure of the City to notify Ficken of the repeat violation before scheduling a hearing, nor have Plaintiffs made this argument. McHale sent the 2018 Hearing and Repeat Violation Notice to Suncoast First Trust via certified mail, as required.[15] In addition to receiving notice, the September 4, 2018 hearing afforded Ficken a meaningful opportunity to challenge the observed repeat violation before the Board made a determination. Like the 2015 hearing, Ficken decided not to attend.[16]

---

[15] The 2018 Hearing and Repeat Violation Notice provided that the Board could levy fines of up to $500 per day "for every day that the violation continues beyond the date set in an order of the Board for compliance," which appears to be language geared towards a violation, not a repeat violation. Doc. 42-4 at 137. Nonetheless, this recognition does not affect the analysis, as Section 162.06(2), Florida Statutes, and Section 22-73(a), DCO, required the 2018 Hearing and Repeat Violation Notice only to notify Ficken of the scheduled hearing for the repeat violation, which it did.

[16] Ficken claimed during his deposition that he asked Kristen Mendez ("Mendez") to attend the September 4, 2018 hearing on his behalf. (Doc. 42-1 at 126:18–25, 127:1–10). According to her affidavit, supplied by Defendants, Mendez, a licensed real estate agent, contacted Ficken to see if he desired to sell the Lady Marion Property after she drove by the Lady Marion Property in the summer of 2018 and noticed that the property appeared to be unoccupied. Doc. 42-8 at 2. Ficken and Mendez do not have either a personal or professional relationship. *Id.* at 3. When Ficken indicated that he did not want to sell the property, Mendez told him to notify her if he changed his mind. *Id.* Thereafter, Ficken contacted Mendez to ask her to attend the 2018 hearing. *Id.* at 2. Mendez's only prior interaction with Ficken was when she contacted him to determine if he wanted to sell the Lady Marion Property. *Id.* According to Ficken, Mendez initially agreed to attend the hearing, but then informed him on September 3, 2018, less than twenty-four hours prior to the hearing, that she would not be able to appear. Doc. 42-1 at 127:8–25, 128:1–8. However, Mendez claims that, upon Ficken's request, she

Additionally, Plaintiffs' assertion, upon which they base their due process claims, that the City's imposition of fines against Ficken without providing him notice that the fines were being imposed on an ongoing basis is flawed. Neither the City nor the Board *imposed* fines against Ficken or Suncoast First Trust ahead of the hearing. Plaintiffs' contention to the contrary in the Amended Complaint and on summary judgment is not supported by the law. Under both Chapter 162, Florida Statutes, and Chapter 22, DCO, the Board must first "find[] that a repeat violation has been committed" before ordering the repeat violator to pay a fine. Fla. Stat. § 162.09(1); City of Dunedin, Fla., Code of Ordinances § 22-79(a). Additionally, a "fine *imposed* pursuant to" this procedure cannot exceed $500 per day for a repeat violation. Fla. Stat. § 162.09(2)(a); City of Dunedin, Fla., Code of Ordinances § 22-79(d) (emphasis added). If a finding of repeat violation has been made as provided in this procedure, "a hearing shall not be necessary for issuance of the order *imposing* the fine." Fla. Stat. § 162.09(1); City of Dunedin, Fla., Code of Ordinances § 22-79(c) (emphasis added). At the conclusion of a hearing, the Board must issue findings of fact and conclusions of law, and its order may include "that a fine may be imposed . . . ." Fla. Stat. § 162.07(4); City of Dunedin, Fla., Code of Ordinances § 22-75(f).

---

told him that she would need to check with her broker, who advised against attending the hearing because she did not represent Ficken or the Lady Marion Property and otherwise lacked a relationship with either. Doc. 42-8 at 2. Even if Ficken's testimony is taken as true and all reasonable inferences are drawn in his favor, Plaintiffs do not explain why any failure of Mendez to attend the hearing on Ficken's behalf demonstrates a deprivation of due process.

The evidence provided by Defendants, even when viewed in the light most favorable to Plaintiffs and drawing all reasonable inferences in Plaintiffs' favor, also demonstrates that Plaintiffs' contention regarding imposition of the fines is unsupported. The 2018 Notice of Repeat Violation advised Ficken that the fines "*will be* assessed" if he was "found to have committed a repeat violation." Doc. 42-4 at 114 (emphasis added). Similarly, the 2018 Hearing and Repeat Notice Violation advised Ficken to appear at the hearing if he "wish[ed] to present [his] side of the case." Doc. 42-4 at 137. The minutes from the September 4, 2018 hearing demonstrate that Kepto explained that the City sought a two-part order "finding" the Lady Marion Property in violation during two periods of time. Doc. 42-4 at 176. Colbert presented evidence of the overgrowth. Colbert recommend the maximum fine allowed under the law for a repeat violation. After the Board voted to impose the fines, the written orders of repeat violations issued, which, consistent with the law, imposed the fines.

The Court applies the *Mathews* test to determine what process is constitutionally required. "*Mathews* applies only where an individual has a liberty or a property interest that the government seeks to eliminate, and the *Mathews* test concerns the administrative procedures required." *Grayson v. King*, 460 F.3d 1328, 1340 (11th Cir. 2006). Florida courts also employ this analysis in examining due process claims under the Florida Constitution. *See Keys Citizens for Responsible Gov't*, 795 So. 2d at 948.

During oral argument, Plaintiffs' counsel claimed that Ficken "clearly . . . had a property interest at stake" because "[h]e was going to be fined $500 per day and, in fact, was being fined $500 per day without his knowledge." Doc. 84 at 9:2–4. But,

assuming that Plaintiffs have a property interest, the risk of an erroneous deprivation of this interest through the procedures used is low. The evidence shows that notice and a hearing were provided. In 2015, the hearing, which provided Ficken with an opportunity to be heard at a meaningful time and in a meaningful manner, was scheduled only after the Lady Marion Property failed to achieve compliance by the compliance date. The resulting Board order in 2015 advised that the matter was of a "recurring nature" and that the Board could levy fines up to $500 per day, if it recurred. Doc. 42-4 at 118. Thus, Plaintiffs were on notice of the "repeat violator" classification. The afforded process complied with Chapter 162, Florida Statutes, and Chapter 22, DCO.

Similarly, in 2018, the City notified Ficken of the repeat violation through the 2018 Notice of Violation, and the 2018 Hearing and Repeat Violation Notice scheduled the hearing. Although this notice came several weeks after Colbert's first observation of the violation on July 5, 2018, the Board's 2015 order had placed Plaintiffs on notice of the recurring nature of the matter and the consequences. Further, neither the City nor the Board imposed fines against Ficken or Suncoast Trust on an ongoing basis or ahead of the hearing, as discussed in more detail herein. The 2018 hearing, during which time the Board considered whether to impose any fines and the amount of those fines, afforded Ficken a meaningful opportunity to "present [his] side of the case," present witnesses, and question the witnesses against him. Doc. 42-4 at 137.

40

The probable value of additional or substitute safeguards is also minimal, given that notice and a hearing were provided in 2015 and 2018 and the fines were not imposed until the Board made a determination at the hearing. Defendants have an interest in protecting the health, safety, and welfare of City residents, and providing additional notice and a hearing would likely be burdensome on Defendants. For example, affording additional notice and another hearing after finding the violation in 2015, but before finding the matter to be of a recurring nature, would likely result in aggrieved parties seeking to relitigate findings of violation.

Plaintiffs contend that Defendants' arguments fail because Ficken did not receive notice that he was being fined, which therefore violated his right to due process. In opposing Defendants' Dispositive Motion for Summary Judgment, Plaintiffs repeat many of their arguments submitted in support of their summary judgment motion, which is discussed below. Plaintiffs claim that "[i]t is not disputed that the first time the City provided formal notice to [Ficken] *that he had been fined* was in a letter dated August 22, 2018—nearly seven weeks *after the fines began*." Doc. 51 at 21 (emphasis added). Plaintiffs similarly argue that "the City's daily fines—which were *imposed and accrued* without notice to [Ficken]—are thus 'judgments without notice.'" But, as demonstrated above, the fines were not imposed until the Board decided to impose fines for the repeat violation at the hearing. Even if Chapter 22, DCO, may be construed as providing that a repeat violation fine may *accrue*, accrual is distinct from imposition. Plaintiffs have not provided any law persuasively demonstrating otherwise. Therefore, Plaintiffs' arguments in opposition are unavailing.

41

The federal due process claim also fails because Plaintiffs have not proven a "constitutionally inadequate process." *Foxy Lady, Inc.*, <u>347 F.3d at 1236</u> (internal quotation marks omitted). As discussed above, the bases for Plaintiffs' claim of constitutional inadequacy fail. Further, even if a deprivation of due process occurred, the federal procedural due process claim is not cognizable under Section 1983 because a means by which to remedy the alleged deprivation exists. Specifically, both Section 162.11, Florida Statutes, and Section 22-83, DCO, provided Ficken with the opportunity to appeal the Board's orders to the circuit court. Upon appeal, the circuit court's review would have been "limited to appellate review of the record created before the code enforcement board." <u>Fla. Stat. § 162.11</u>; City of Dunedin, Fla., Code of Ordinances § 22-83. Section 162.11, Florida Statutes, "provides for a plenary appeal to the circuit court as a matter of right from a final administrative order of an enforcement board." *C. Fla. Inv., Inc. v. Orange Cnty.*, <u>295 So. 3d 292, 293</u> (Fla. 5th DCA 2019). An appeal of the Board's 2015 order would have allowed the circuit court to conduct appellate review of the violation that led to Suncoast First Trust being designated as a "repeat violator." On appellate review, "all errors below may be corrected: jurisdictional, procedural, and substantive." *Id.* at 295 (distinguishing review by appeal from review by certiorari). Further, an appeal of the Board's 2018 orders would have allowed the circuit court to conduct appellate review of the record created before the Board that resulted in the Board imposing fines for the repeat violation. Ficken did not appeal these orders, but only sought reconsideration of the

42

2018 orders.[17] This remedial procedure is adequate. *See Lindbloom v. Manatee Cnty.*, No. 8:18-cv-02642-T-02AEP, 2019 WL 2503145, at *4 (M.D. Fla. June 17, 2019) (stating that an adequate state remedial procedure need not provide all relief available under Section 1983, but must be able to correct any existing deficiencies and provide the plaintiff with whatever process is due), *aff'd* F. App'x 745 (11th Cir. 2020), *cert. denied sub nom. Lindbloom v. Manatee Cnty., Fla.*, 141 S. Ct. 679 (2020). As such, the federal due process claim additionally fails because Plaintiffs have not proven a "constitutionally inadequate process" and, even if a deprivation of due process occurred, a means to remedy the alleged deprivation exists.

Plaintiffs argue in response that exhaustion is not required for Section 1983 cases. Doc. 51 at 24–25. As highlighted above, Defendants do not argue exhaustion of administrative remedies for the federal procedural due process claim, but instead that, even if a deprivation of due process occurred, the federal claim is not cognizable under Section 1983 because a means by which to remedy the alleged deprivation exists. The cases cited by Plaintiffs for the proposition that a claim is not barred on exhaustion grounds where the due process violation is not complete, and that the procedural due process errors preceded the Board's review, are distinguishable, and the analysis above highlights that any due process violation upon which the federal claim is premised was

---

[17] Plaintiffs seek to weaponize the Board's decision to consider the requests for reconsideration by arguing that Ficken would have been able to appeal the orders within the 30-day deadline if the Board "had not delayed its action" on Ficken's request. Doc. 51 at 26. But, the law does not require Ficken to seek reconsideration of the orders before appealing. This argument is unavailing.

not complete. *See McKinney*, 20 F.3d at 1562 (stating that procedural due process violations "do not become complete 'unless and until the state refuses to provide due process'"). Plaintiffs also briefly question the utility of an appeal and claim that Ficken "had neither the opportunity to confront" Colbert "nor mount a basic defense," leading Plaintiffs to characterize the record before the Board as "biased." Doc. 51 at 26–27. However, the Court declines to use Ficken's decision not to attend the hearing to disregard the process afforded or the availability of the appeal. Plaintiffs' remaining arguments in opposition are unpersuasive.

Finally, Defendants argue that they are also entitled to summary judgment on the procedural due process claim under the Florida Constitution because Ficken failed to exhaust his administrative remedies. Doc. 42 at 24–25. Defendants rely on one case for this proposition: *Conley v. City of Dunedin*, No. 8:08-cv-1793-T-24AEP, 2010 WL 146861 (M.D. Fla. Jan. 11, 2010). In *Conley*, the Conleys argued, among other things, that the City violated their procedural due process rights to notice and an opportunity to be heard under the Florida Constitution by refusing their request to continue two code enforcement hearings on citations. 2010 WL 146861, at *6. The Court acknowledged that, although Section 162.11, Florida Statutes, provided the Conleys with thirty days to appeal, they waited more than two years to initiate the constitutional challenge. *Id.* The Court explained that Florida law required the Conleys to "exhaust their administrative remedies" before they could "challenge the City's actions as applied to them on state constitutional grounds." *Id.* Although *Conley* is persuasive for other propositions, the claims or facts in the cases upon which *Conley*

44

relies for this conclusion are distinct from those in the present action. Further, "[f]ailure to file an appeal to the circuit court pursuant to section 162.11, Florida Statutes, is technically not an administrative remedy." *Wilson v. Cnty. of Orange*, 881 So. 2d 625, 631 (Fla. 4th DCA 2004). However, notwithstanding these recognitions, Defendants are entitled to summary judgment on the claim for due process under the Florida Constitution because, as articulated above, due process was provided.

Thus, based on the foregoing analysis, Defendants have demonstrated that there is no genuine dispute of material fact as to the procedural due process claims and that they are entitled to judgment as a matter of law as to those claims. As such, Defendants' Dispositive Motion for Summary Judgment will be granted as to the due process claims.

### iii.   *Plaintiffs' Dispositive Motion for Summary Judgment*

In moving for summary judgment on the due process claims, Plaintiffs submit two arguments: (1) that the City violated Ficken's right to due process when it failed to inform him that he would be fined; and (2) that the City violated Ficken's due process rights by classifying him as a repeat violator. Many of the points raised in the summary judgment motion overlap with the analysis above. For the reasons set forth below, Plaintiffs' Dispositive Motion for Summary Judgment will be denied.

Plaintiffs claim that the City's failure to notify Ficken that the Lady Marion Property was the subject of "open code enforcement cases" violates due process. As Plaintiffs highlight, both Section 162.06(3), Florida Statutes, and Section 22-73(a), DCO, required Colbert to notify Ficken of the repeat violation. However, as Plaintiffs

45

concede, both the statute and the ordinance are silent on precisely when notice must be provided. Plaintiffs seize on this silence to argue that the "answer is not after tens of thousands in fines have accrued." Doc. 43 at 29. In further support of the alleged lack of due process, Plaintiffs point out that Section 22-79(a), DCO, "adopts such a reading" by stating that the Board, upon finding that a repeat violation has been committed, may order the repeat violator to pay a fine for each day the repeat violation continues past the date of notice of the repeat violation. *Id.* On this basis, Plaintiffs contend that Ficken was entitled to "reasonable notice once he was on the hook for daily fines" and that the City never told him, "as it was required to do," that a repeat violation had been discovered. *Id.* at 30.

True, "Florida courts 'fill the procedural gaps in [chapter 162] by the common-sense application of basic principles of due process." *Kupke*, 293 F. App'x at 699 (alteration in original) (quoting *Massey*, 842 So. 2d at 145). But, Plaintiffs' argument ignores the notice that was provided. The Court declines to repeat its analysis above, which demonstrates that due process was afforded. And, given the provided notice and hearings, Plaintiffs' reading of the statute is unpersuasive. In moving for summary judgment, Ficken submits a declaration, in which he admits that his "understanding was that, as a 'repeat violator,' the City could technically fine [him] up to $500 per day for another violation." Doc. 43-2 ¶13. Despite this concession, Ficken claims, without any persuasive justification, that he nonetheless "never thought" that the City "would issue a fine like that for something as insignificant as tall grass and that he "was sure the City would at least tell [him] that [his] grass was too tall" before fining him as a

46

repeat violator. *Id*. However, the 2015 order from the Board was clear: the matter was deemed to be of a recurring nature and, if it recurred, the Board had the ability to levy fines up to $500 per day. Ficken's expectation that the City "would at least" tell him about the grass being too tall seeks to shift property ownership responsibility onto the City. For the reasons set forth above, this view lacks support in the law and the provided evidence.

Further, as previously discussed, neither the City nor the Board imposed fines resulting from the repeat violation on an ongoing basis or prior to the Board's determination at the noticed 2018 hearing. Plaintiffs point to certain evidence to argue that fines begin accruing from when the repeat violation is first observed. Doc. 43 at 29. For example, Kepto testified that fines start accruing for a repeat violation from when that repeat violation is first observed. Doc. 43-19 at 49:16–25, 50:1–2. Similarly, notes from a May 2019 meeting indicate that Trask represented that fines for repeat violations "begin to run on the day of the inspection of the property." Doc. 42-25 at 6. Again, there is a distinction between accrual and imposition, and this general evidence of supposed practice, when viewed in the light most favorable to Defendants, does not evidence that the Board imposed fines resulting from the repeat violation on an ongoing basis or prior to its determination at the 2018 hearing.

Next, in support of its argument that the City violated Ficken's procedural due process rights when it classified him as a repeat violator, Plaintiffs contend that "it was not made known at the time of the 2015 hearing" that the 2015 violation would "strip[]" Ficken of "any entitlement to notice for future violations." Doc. 43 at 30–31.

47

Of course, Plaintiff elected not to attend this hearing and, as discussed above, notice for the repeat violation was provided. Although Plaintiffs cite certain statements made by a Board member during the 2015 hearing that a fine for a repeat violation is not an "automatic $500"and Ficken would "know" if there was an "issue," Plaintiffs do not demonstrate that this statement binds the Board to future action, creates or evidences the absence of a genuine dispute of material fact, or establishes a due process violation. *Id.* at 31.

Therefore, based on the foregoing reasons, Plaintiffs have not demonstrated that there is no genuine dispute of material fact or that they are entitled to judgment as a matter of law as to the procedural due process claims. As such, Plaintiffs' Dispositive Motion for Summary Judgment will be denied as to the procedural due process claims.

### C. Excessive Fines

Plaintiffs bring claims under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution and the Excessive Fines Clause of Section 17 of Article I of the Florida Constitution. Plaintiffs and Defendants move for summary judgment on these claims.

Plaintiffs argue that daily files of $500 and a total fine of nearly $30,000 for tall grass is unconstitutional under the United States Constitution and the Florida Constitution. Doc. 43 at 22–29. In seeking summary judgment on the excessive fines claim under the United States Constitution, Plaintiffs emphasize the principle of proportionality to assert that the fines are grossly disproportional to the gravity of the offense. *Id.* at 22–26. According to Plaintiffs, Ficken does not fall into the class of

48

persons at whom the ordinance was principally directed, the existence of lesser penalties highlights the excessiveness of the imposed fines, and the tall grass at the Lady Marion Property did not cause any harm to neighbors or the government. *Id.* at 23–26. They also urge the Court to consider additional factors, such as Ficken's culpability and the City's conduct. *Id.* at 25–26. In seeking summary judgment on the excessive fines claim under the Florida Constitution, Plaintiffs argue that the fines and foreclosure are "patently and unreasonably harsh or oppressive because they work a drastic sanction" by forcing Ficken to "lose his home or pay an exorbitant fine to save it." *Id.* at 27. Plaintiffs also contend that the fines and foreclosure shock the conscience of reasonable men and exceed any reasonable requirements for redressing the wrong. *Id.* at 27–28.

Defendants argue that the fines fall within the range of fines that may be imposed for original or repeat violations under Chapter 162, Florida Statutes, and Chapter 22, DCO. Doc. 42 at 18–21. Defendants claim that any reliance upon cases concerning forfeiture, restitution, and other criminal fines are distinguishable because those concepts do not present any utility in noncriminal code enforcement matters. *Id.* at 18–19. Defendants also claim that foreclosure does not fall within the ambit of the Eighth Amendment because it serves to remediate, not punish. *Id.* at 21–22.  For the reasons set forth below, Defendants' Dispositive Motion for Summary Judgment will be granted as to the excessive fines claims.

      *i.  Relevant Law*

49

The Eighth Amendment to the United States Constitution provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Excessive Fines Clause is incorporated by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019). "The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" *Austin v. United States*, 509 U.S. 602, 610 (1993) (emphasis in original) (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)). Thus, the question is whether the fine or sanction is punitive and, therefore, constitutes a "fine" for Eighth Amendment purposes. *United States v. 817 N.E. 29th Drive, Wilton Manors, Fla.*, 175 F.3d 1304, 1309 (11th Cir. 1999). The fine or sanction must only serve "in part to punish." *Austin*, 509 U.S. at 610; *see Conley*, 2010 WL 146861, at *5 ("The Clause, however, only applies to assessments that can be considered 'fines' because the assessments are designed, in part, to punish.")

The "fine" under the Eighth Amendment also must be "excessive." *Wilton Manors*, 175 F.3d at 1309. "A fine is excessive 'if it is grossly disproportional to the gravity of a defendant's offense.'" *Wilton Manors*, 175 F.3d at 1309 (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). Indeed, "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality." *Bajakajian*, 524 U.S. at 334.

The Excessive Fines Clause of the Eighth Amendment was "intended as a limitation on courts, not legislatures." *Wilton Manors*, 175 F.3d at 1309 n.8; *see Bajakajian*, 524 U.S. at 336 (recognizing that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature" as "particularly relevant" to the constitutional excessiveness inquiry). In the context of examining a challenge to a cumulative fine imposed under Chapter 162, Florida Statutes, under the Excessive Fines Clause of the United States Constitution and the Excessive Fines Clause of the Florida Constitution, the Eleventh Circuit has emphasized that there "is a strong presumption that the amount of a fine is not unconstitutionally excessive if it lies within the range of fines prescribed by the legislature." *Moustakis v. City of Ft. Lauderdale*, 338 F. App'x 820, 821 (11th Cir. 2009) (internal quotation marks omitted) (quoting *Bajakajian*, 524 U.S. at 326). "[A]nalysis of Excessive Fines claims is a pure question of law." *United States v. One Parcel of Real Estate at 10380 SW 28th Street, Miami, Fla.*, 214 F.3d 1291, 1293 (11th Cir. 2000).

Finally, the Florida Constitution provides that "[e]xcessive fines . . . are forbidden." Fla. Const. art. I, § 17. "Well-settled Florida decisional authority provides that a statutorily authorized civil fine will not be deemed so excessive as to be cruel or unusual unless it is so great as to shock the conscience of reasonable men or is patently and unreasonably harsh or oppressive." *Locklear v. Fla. Fish & Wildlife Conservation Comm'n*, 886 So. 2d 326, 329 (Fla. 5th DCA 2004) (citing *Amos v. Gunn*, 94 So. 615 (1922)). "A fine within the permissible range otherwise authorized by the legislature is presumptively constitutional." *State v. Cotton*, 198 So. 3d 737, 743 (Fla. 2d DCA 2016).

### ii. Analysis

Based on the allegations in the Amended Complaint, the Court construes these excessive fines claims as raising both facial challenges and as-applied challenges.[18] "A facial challenge asserts that a law always operates unconstitutionally and an as-applied challenge asserts that a law is unconstitutional on the facts of the particular case or to a particular party." *Lindbloom*, 808 F. App'x at 745 (citing *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009)).

The Court first must determine whether the $500 repeat violation fines, the total fine of more than $29,000, and the foreclosure constitute "fines" under the Eighth Amendment. As such, the Court must determine whether they serve, at least in part, to punish. The Eleventh Circuit, in an unpublished opinion, has treated fines imposed under Chapter 162, Florida Statutes, as "fines" under the Eighth Amendment. *See Moustakis*, 338 F. App'x at 821–22. As such, the Court will assume, without deciding, that the $500 repeat violation fines and the resulting total fine of more than $29,000 constitute "fines" under the Eighth Amendment.[19] Defendants contend that the

---

[18] Indeed, the claims allege that: (1) as applied, the City's daily fines of $500 and total fines of over $29,000 are disproportionate to the "offense" of having tall grass; (2) as applied, the foreclosure of the Lady Marion Property is disproportionate to the offense of having tall grass; (3) on its face *and* as applied, the City's "system of limitless fines for all non-irreparable code violations," such as unlimited fines for tall grass, violates the Excessive Fines Clauses of the United States Constitution and the Florida Constitution; and (4) for the excessive fines claim under the Florida Constitution, the penalty of foreclosure for having tall grass, as applied, shocks the conscience. Doc. 77 ¶¶94–120.

[19] Although *Moustakis* did not involve Chapter 22, DCO, the Court's analysis above highlights the relationship between Chapter 162, Florida Statutes, and Chapter 22, DCO.

impending foreclosure is not subject to Eighth Amendment scrutiny because it is remedial.[20] Doc. 42 at 21. According to Defendants, the foreclosure "remediates the matter of an unsatisfied lien" by way of an *in rem* proceeding "and imposes *no penalty distinct from that of the fine* which created it." *Id.* at 21–22. In other words, because the foreclosure does not impose a penalty separate from the fines, it serves to remediate, rather than to punish. This argument is unpersuasive. Thus, for purposes of the analysis below, the Court will assume, without deciding, that the foreclosure constitutes a "fine."

The next question is whether the $500 repeat violation fines, the total fine of more than $29,000, and the foreclosure are "excessive" under the Eighth Amendment. Binding cases on this issue arise in the contexts of forfeiture, restitution, criminal fines, or comparable areas. *See, e.g.*, *Austin*, 509 U.S. at 604–605; *Bajakajian*, 524 U.S. at 324; *Wilton Manors*, 175 F.3d at 1306.

However, the Eleventh Circuit's analysis in *Moustakis* is persuasive and instructive for the present analysis. There, the City of Fort Lauderdale found the Moustakises' home in violation of the City's ordinances in 1993 and ordered the Moustakises to bring their home into compliance or pay a fine of $150 per day until the house was brought into compliance. 338 F. App'x at 821. As a result of the

---

[20] Because the Board authorized Trask to pursue foreclosure of the Lady Marion Property to collect on the liens, the challenge to the foreclosure here is ripe. *See Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1381 (11th Cir. 2019) ("Eighth Amendment challenges are generally not ripe until the imposition, or immediately impending imposition, of a challenged punishment or fine.").

Moustakises' failure to bring their home into compliance by 2002, the City of Fort Lauderdale filed a lien on the house. *Id.* Thereafter, the Moustakises sued the City of Fort Lauderdale in federal court, alleging that a lien of over $700,000 had been placed on the house. *Id.* The Moustakises sought to have the lien and the underlying fines reduced or abolished, arguing that they were excessive under the United States Constitution and the Florida Constitution. *Id.*

The Eleventh Circuit upheld the dismissal of the complaint, observing that there "is a strong presumption that the amount of a fine is not unconstitutionally excessive if it lies within the range of fines prescribed by the legislature." *Id.* (internal quotation marks omitted) (quoting *Bajakajian*, 524 U.S. at 336). Indeed, in *Bajakajian*, which involved a forfeiture, the Supreme Court emphasized that "judgments about the appropriate punishment for an offense belong in the first instance with the legislature." 524 U.S. at 336. And so, in reviewing the Moustakises' challenge to the aggregate fine, the *Moustakis* court held that the $150 per day fine that had accrued for fourteen years into approximately $700,000 was due "substantial deference" because it was within the range of fines prescribed by the Florida Legislature in Section 162.09, Florida Statutes. 338 F. App'x at 821. Further, the $700,000 total fine "was created by the Moustakises' failure to bring the house into compliance each day for 14 years." *Id.* at 822. The Eleventh Circuit explained that the $700,000 total fine was not grossly disproportionate, but, "literally, directly proportionate to the offense." *Id.*

Other courts have also rejected excessive fines challenges to fines within the range prescribed by Chapter 162, Florida Statutes. *See, e.g., Conley*, 2010 WL 146861,

at *5 ("Since the City's fines of $50 and $100 a day fall within the range permitted by the Legislature under Florida Statute § 162.09(2), which permits daily fines of $250, the Court cannot find that the fines here are 'grossly disproportional' to the offense."); *Marfut v. City of N. Port*, No. 8:08-cv-2006-T-27EAJ, 2009 WL 790111, at *7 (M.D. Fla. Mar. 25, 2009) (finding that the fines, which "were initially $50 per day or less" and accumulated to more than $47,000 "due to Plaintiff's failure to remedy the violations at her properties," were authorized by Florida and not grossly disproportional to remedy the violations); *Lindbloom*, 2019 WL 2503145, at *8 ("A fine of $50 per day to total less than $5,000—which is within the bounds set by the legislature—is not excessive.").

Therefore, there is a strong presumption that the amount of the fines here are not unconstitutionally excessive. The fine of $500 per day for a repeat violation and the total fine in excess of $29,000 fall within the range of legislatively authorized fines.[21] *See* Fla. Stat. § 162.09(2)(a); City of Dunedin, Fla., Code of Ordinances § 22-

---

[21] The aggregate fine of over $29,000 also includes costs and interest. Doc. 42-4 at 229. In the February 13, 2019 letter, Trask advised that the accrued fine for the first lien totaled $24,454.36, which, aside from the principal amount, included $721.36 in interest, $200.00 in attorney's fees, and $33.00 in recording costs. *Id.* The accrued fine for the second lien totaled $5,379.14, which, aside from the principal amount, included $136.14 in interest, $200.00 in attorney's fees, and $43.00 in recording costs. "[T]he local governing body shall be entitled to collect all costs incurred in recording and satisfying a valid lien." Fla. Stat. § 162.10. *See* City of Dunedin, Fla., Code of Ordinances § 22-82 (providing that the city commission may collect all costs that are incurred in recording and satisfying a valid lien). Further, under Chapter 162, an enforcement board may authorize a local governing body attorney "to foreclose on the lien or to sue to recover a money judgment for the amount of the lien plus accrued interest." Fla. Stat. § 162.09(3).

55

79(d). Further, Plaintiffs argue that the foreclosure is excessive only in the context of their claim under the Excessive Fines Clause of the Florida Constitution. Doc. 43 at 26–28.

In the context of forfeitures, the Eleventh Circuit has set forth the following considerations for determining whether a fine is "grossly disproportional" to the gravity of the offense by examining: "(1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the legislature (or the Sentencing Commission); and (3) the harm caused by the defendant." *United States v. Sperrazza*, 804 F.3d 1113, 1127 (11th Cir. 2015) (internal quotation marks omitted). Given the obvious distinctions between the facts of this case and a forfeiture, the Court is not persuaded that this test is applicable when examining fines imposed by a code enforcement board. Nonetheless, in an abundance of caution, the Court will apply the test. Application demonstrates that summary judgment is warranted for Defendants.

First, both Chapter 162, Florida Statutes, and Chapter 22, DCO, establish two classes of persons: violators and repeat violators. The evidence demonstrates that Lady Marion Property was in repeat violation. Indeed, Ficken admitted the repeat violation in his communications with the Board in 2018. Plaintiffs argue that $500 fines are reserved for vacant properties and properties owned by absentee landlords. Doc. 43 at 23. However, as Defendants point out, neither Chapter 162, Florida Statutes, nor Chapter 22, DCO, make this distinction. Doc. 49 at 7. Thus, Ficken falls within one

of the two classes of person at whom Chapter 162, Florida Statutes, and Chapter 22, DCO is principally directed.

Second, for other authorized penalties, Plaintiffs argue that the City could have imposed a lesser fine. Doc. 43 at 23. In support, Plaintiffs claim that the Board did not consider fines at $25 per day or $50 per day, but instead set "the maximum amount allowed by law." *Id.* at 23–24. According to Plaintiffs, "a verbal warning would have sufficed." *Id.* at 24. However, as detailed above, there is a strong presumption that the amount of the fines here are not unconstitutionally excessive. The fine of $500 per day falls within the range authorized by Chapter 162, Florida Statutes, and Chapter 22, DCO. The resulting aggregate fine is due "substantial deference." *Moustakis*, 338 F. App'x at 821. Neither Chapter 162, Florida Statutes, nor Chapter 22, DCO, require a prior fine before imposing the maximum fine allowed by law, gradually increasing fines, or a "verbal warning."

Third and finally, the intent behind Chapter 162, Florida Statutes, and Chapter 22, DCO, is to "promote, protect, and improve the health, safety, and welfare" of citizens of the City through the imposition of fines and administrative penalties to enforce the City's codes and ordinances. Fla. Stat. § 162.02; City of Dunedin, Fla., Code of Ordinances § 22-1. Here, there is harm through the repeated violations of the overgrowth ordinance. Further, the Court agrees with Defendants that the regular maintenance of residential property furthers the public health, safety, and welfare. Indeed, Kepto and Colbert testified that properties with overgrown grass draw snakes, rats, and other vermin. Doc. 42-5 at 32:1–18, 38:13–17; Doc. 42-7 at 76:18–25, 77:1–

5. Trask similarly testified that, in addition to leading to rats, mice, and other vermin, overgrown grass may impact property values or produce the appearance of abandoned property. Doc. 42-11 at 52:13–25. Colbert's notes from 2018 indicate that he received "several complaints of overgrowth" regarding the Lady Marion Property. Doc. 42-4 at 129. Plaintiffs seek to undercut any harm by pointing out, among other things, that Colbert did not observe any vermin at the Lady Marion Property, that Trask could not identify a study performed by the City linking tall grass to property values, and Colbert's personal opinion that tall grass did not constitute a "serious offense." Doc. 42-7 at 76:18–19, 104:8–11; Doc. 42-11 at 53:3–18. But, this analysis falls against a backdrop in which there is a strong presumption that the fines are not unconstitutionally excessive, and the evidence provided by Plaintiffs does not persuasively demonstrate that overgrowth at the Lady Marion Property presented "*zero* harm" to "neighbors or the government," as Plaintiffs claim. Doc. 43 at 24 (emphasis added). Therefore, the $500 fine and the total fine in excess of $29,000 are not grossly disproportional under the Eighth Amendment.

This analysis is also applicable to Plaintiffs' claim under the Excessive Fines Clause of the Florida Constitution. *See Moustakis*, 338 F. App'x at 821–22 (articulating the presumption afforded to fines falling within legislatively-set ranges and utilizing the "grossly disproportionate" standard in the context of claims under the Excessive Fines Clause of the United States Constitution and the Florida Constitution); *Ripoelle v. Dep't of Fin. Servs., Div. of Workers' Comp.*, 907 So. 2d 1220, 1223 (Fla. 1st DCA 2005) (articulating the "grossly disproportionate" analysis in examining a challenge under

the Excessive Fines Clause of the Florida Constitution). As such, for the reasons set forth above, the $500 daily fine and the total fine in excess of $29,000 are not grossly disproportional under the Florida Constitution. Despite alleging that, as applied, the foreclosure of the Lady Marion Property is disproportionate to having tall grass, Plaintiffs, in seeking summary judgment, argue that the foreclosure is excessive only in the context of their claim under the Excessive Fines Clause of the Florida Constitution, such as by arguing that the foreclosure shocks the conscience and is patently and unreasonably harsh or oppressive. Doc. 26–28. Under Chapter 162, Florida Statutes, and Chapter 22, DCO, the Board may authorize the foreclosure of a lien if the lien remains unpaid after three months. Fla. Stat. § 162.09(3); City of Dunedin, Fla., Code of Ordinances § 22-81. That is what occurred here. Again, assuming the foreclosure is a punishment, "judgments about the appropriate punishment for an offense belong in the first instance to the legislature." *Bajakajian*, 524 U.S. at 336. Thus, deference is due to these legislative enactments. And, while this deference does not bar an as-applied challenge, the foreclosure is not grossly disproportional, nor does it shock the conscience or otherwise serve as patently and unreasonable harsh or oppressive.

Finally, Plaintiffs' facial challenge as to the City's purported system of limitless fines for non-irreparable code violations fails. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenge must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). *See Cotton*, 198 So. 3d at 742 ("A

facial challenge to a statute . . . must establish that no set of circumstances exists under which the statute would be valid."). A party challenging the constitutional validity of a statute bears a "heavy burden" of demonstrating its invalidity. *Cotton*, 198 So. 3d at 741 (internal quotation marks omitted). One Florida court has rejected an argument that Chapter 162, Florida Statutes, is unconstitutional by establishing a "rogue" judicial system. *Michael D. Jones, P.A. v. Seminole Cnty.*, 670 So. 2d 95, 96 (Fla. 5th DCA 1996) (internal quotation marks omitted). Here, Plaintiffs have failed to demonstrate that there are *no* circumstances under which Chapter 162, Florida Statutes, or Chapter 22, DCO, would be valid. Plaintiffs instead focus on the application of Chapter 162, Florida Statutes, and Chapter 22, DCO, in this case. *See* Doc. 43 at 22–28. An as-applied challenge is distinct from a facial challenge.

Therefore, based on the foregoing analysis, Defendants have demonstrated that there is no genuine dispute of material fact as to the excessive fines claims and that they are entitled to summary judgment as to those claims. As such, Defendants' motion for summary judgment will be granted as to the excessive fines claims.

## IV.   CONCLUSION

Because there is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law on all claims, Defendants' Dispositive Motion for Summary Judgment will be granted.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendants' Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 42) is **GRANTED**.

2. Plaintiffs' Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 43) is **DENIED**.

3. The Clerk is directed to enter **JUDGMENT** in favor of Defendants City of Dunedin, Florida and Dunedin Code Enforcement Board and against Plaintiffs James Ficken and Suncoast First Trust.

4. The Clerk is further directed to terminate all pending motions and close this case.

   **DONE AND ORDERED** in Tampa, Florida on April 26, 2021.

   Charlene Edwards Honeywell
   United States District Judge


Copies to:
Counsel of Record and Unrepresented Parties, if any

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**JAMES FICKEN, Trustee, Suncoast First Trust and SUNCOAST FIRST TRUST,**

      **Plaintiffs,**

**v.**             **Case No:  8:19-cv-1210-T-36SPF**

**CITY OF DUNEDIN, FLORIDA, DUNEDIN CODE ENFORCEMENT BOARD**

      **Defendants.**

_____

## JUDGMENT IN A CIVIL CASE

**Decision by Court.** This action came before the Court and a decision has been rendered.

  **IT IS ORDERED AND ADJUDGED** that judgment is entered in favor of Defendants City of Dunedin, Florida and Dunedin Code Enforcement Board and against Plaintiffs James Ficken and Suncoast First Trust.

       ELIZABETH M. WARREN,
       CLERK

       s/C. Roberts, Deputy Clerk

2
# CIVIL APPEALS JURISDICTION CHECKLIST

1.    **Appealable Orders**: Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)    **Appeals from final orders pursuant to 28 U.S.C. Section 1291**: Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C. Section 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. V. Mestre, 701 F.2d 1365, 1368 (11th Cir. 1983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. Section 636(c).

    (b)    **In cases involving multiple parties or multiple claims**, a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b), Williams v. Bishop, 732 F.2d 885, 885-86 (11th Cir. 1984). A judgment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 201, 108 S. Ct. 1717, 1721-22, 100 L.Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)    **Appeals pursuant to 28 U.S.C. Section 1292(a)**: Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions..." and from "[i]nterlocutory decrees...determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)    **Appeals pursuant to 28 U.S.C. Section 1292(b) and Fed.R.App.P.5**: The certification specified in 28 U.S.C. Section 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)    **Appeals pursuant to judicially created exceptions to the finality rule**: Limited exceptions are discussed in cases including, but not limited to: Cohen V. Beneficial Indus. Loan Corp., 337 U.S. 541,546,69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F, 2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S. Ct. 308, 312, 13 L.Ed.2d 199 (1964).

2.    **Time for Filing:** The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P.4(a) and (c) set the following time limits:

    (a)    **Fed.R.App.P. 4(a)(1)**: A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD - no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

    (b)    **Fed.R.App.P. 4(a)(3)**: "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c)    **Fed.R.App.P.4(a)(4)**: If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d)    **Fed.R.App.P.4(a)(5) and 4(a)(6)**: Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e)    **Fed.R.App.P.4(c)**: If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. Section 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.    **Format of the notice of appeal**: Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. <u>See also</u> <u>Fed.R.App.P. 3(c)</u>. A <u>pro se</u> notice of appeal must be signed by the appellant.

4.    **Effect of a notice of appeal**: A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in <u>Fed.R.App.P. 4(a)(4)</u>.

- 3 -

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JAMES FICKEN, trustee,
SUNCOAST FIRST TRUST; and
SUNCOAST FIRST TRUST,

       Plaintiffs,

       vs.
                        Case No.: 8:19-cv-01210
                        State Court Case No.: 19-003181-CI

CITY OF DUNEDIN, FLORIDA;
DUNEDIN CODE ENFORCEMENT BOARD;
MICHAEL BOWMAN, in his official capacity as Code
Enforcement Board Chairman; LOWELL SUPLICKI,
in his official capacity as Code Enforcement Board
Vice-Chair; ARLENE GRAHAM, in her official
capacity as a member of the Code Enforcement Board;
KEN CARSON, in his official capacity as a member
of the Code Enforcement Board; WILLIAM
MOTLEY, in his official capacity as a member
of the Code Enforcement Board; DAVE PAULEY,
in his official capacity as a member of the Code
Enforcement Board; and BUNNY DUTTON, in
her official capacity as a member of the Code
Enforcement Board,

       Defendants.
_____/

## NOTICE OF APPEAL

    NOTICE IS GIVEN that Plaintiffs James Ficken, trustee, and Suncoast First Trust

hereby appeal to the United States Court of Appeals for the Eleventh Circuit from this

Court's Order and Judgment granting Summary Judgment for the Defendants, entered in

this action on April 26, 2021 (Docs. 88 & 89). The nature of the order is a final order

denying Plaintiffs' Motion for Summary Judgment and granting Defendants' Motion for

Summary Judgment. Plaintiffs also appeal the order denying in part Plaintiffs' Motion to Compel Production of Documents and Interrogatory Responses (Doc. 36) and Second Motion to Compel Production of Documents (Doc. 40), entered May 6, 2020 (Doc. 53)

Dated: May 24, 2021

By: /s/ Ari S. Bargil
Ari S. Bargil (FL Bar No. 71454)*
INSTITUTE FOR JUSTICE
2 S. Biscayne Boulevard, Suite 3180
Miami, FL 33131
Tel: (305) 721-1600
Fax: (305) 721-1601
Email: abargil@ij.org

*Trial Counsel

Andrew H. Ward (NY Bar No. 5364393)**
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: andrew.ward@ij.org

**Admitted Pro Hac Vice

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of May 2021, a true and correct copy

of the *Notice of Appeal* was filed with the Clerk of the Court using the CM/ECF system,

which will send a of electronic filing to the following CM/ECF participants:

>Jay Daigneault
>Randy Mora
>TRASK DAIGNEAULT, L.L.P.
>1001 S. Ft. Harrison Avenue, Suite 201
>Clearwater, FL 33756
>Email: jay@cityattorneys.legal
>        randy@cityattorneys.legal
>        jennifer@cityattorneys.legal

*Counsel for Defendants*


>/s/ Ari S. Bargil
>INSTITUTE FOR JUSTICE

3